**SKLAR KIRSH, LLP**
LOVEE D. SARENAS (SBN 204361)
Email: lsarenas@sklarkirsh.com
KELLY K. FRAZIER (SBN 212517)
Email: kfrazier@sklarkirsh.com
1880 Century Park East, Suite 300
Los Angeles, California 90067
Telephone: (310) 845-6416
Facsimile: (310) 929-4469

Attorneys to Robbin L. Itkin, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>BIKRAM'S YOGA COLLEGE OF INDIA, LP,<br><br>Debtor. | Case No. 9:17-bk-12045-DS<br><br>Chapter 7<br><br>Jointly Administered with:<br><br>9:17-bk-12046-DS<br>9:17-bk-12047-DS<br>9:17-bk-12048-DS<br>9:17-bk-12049-DS |
| In re:<br><br>BIKRAM CHOUDHURY YOGA, INC.,<br><br>Debtor. | |
| In re:<br><br>BIKRAM, INC.,<br><br>Debtor. | **TRUSTEE'S MOTION FOR AN ORDER: (I) APPROVING THE SALE OF CERTAIN ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) DETERMINING THAT THE BUYER IS A GOOD FAITH PURCHASER UNDER 11 U.S.C. § 363(m); AND (III) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF ROBBIN L. ITKIN, RICHELLE KALNIT AND DR. KALI P. CHAUDHURI** |
| In re:<br><br>YUZ, INC.,<br><br>Debtor. | |
| In re:<br><br>INTERNATIONAL TRADING REPRESENTATIVE, LLC,<br><br>Debtor. | |
| ☒ Affects Bikram's Yoga College of India, LP<br>☒ Affects Bikram Choudhury Yoga, Inc.<br>☒ Affects Bikram, Inc.<br>☐ Affects Yuz, Inc.<br>☒ Affects Int'l Trading Representative, LLC | [11 U.S.C. §§ 105(a), 363; Bankruptcy Rules 2002, 6004 and 9014; LBRs 6004-1 and 9013-1]<br><br>Date:     February 23, 2022<br>Time:     11:30 a.m.<br>Place:    Courtroom 201<br>            1415 State Street<br>            Santa Barbara, CA 93101<br>            (via Zoom for Government) |

Robbin L. Itkin, the duly-appointed Chapter 7 Trustee ("Trustee" or "Seller") for the bankruptcy estates (collectively, "Estates") of the above-captioned debtors ("Debtors"), respectfully moves this Court ("Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Sale Order"):

(i)     authorizing Trustee to enter into, and approving the terms of, the Asset Purchase Agreement ("APA"),[1] a copy of which is attached hereto as Exhibit B, with Dr. Kali P. Chaudhuri ("Buyer"), who bid the highest or otherwise best offer for the Assets generated through the marketing and sales process previously approved by order of the Court (the "Bid Procedures Order, Dkt. No. 570), at the aggregate Purchase Price of $700,000.00;

(ii)    approving the sale ("Sale") of Trustee's and any applicable Selling Debtors' respective right, title and interest in and to the Assets,[2] as identified and defined in the APA, which include, without limitation, Selling Debtors' intellectual properties (as identified and defined in the APA, the "IP") and specific estate claims (as identified and defined in the APA, the "Adversary Actions"), together with books and records related thereto held in storage (as identified and defined in the APA, the "Documents"), to Buyer free and clear of liens, claims, encumbrances and all other interests (collectively, "Interests") pursuant to 11 U.S.C. § 363(f), provided that the net proceeds of any IP Assets owned by BYCOI that Petra Starke ("Starke") purports to assert an Interest in will not be disbursed to either Starke or Minakshi Jaffa-Bodden ("Bodden") until such time as the validity and priority of Starke's Interest is determined based on the complaints filed against her on February 7, 2022 seeking to disallow her alleged secured claims;[3]

(iii)   authorizing Trustee to pay from the Sale proceeds at Closing or as soon as practicable thereafter: (i) the payments owing to American Express National Bank ("AmEx") and

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms in the APA.

[2] The Selling Debtors include Bikram Choudhury Yoga, Inc. ("BCYI"), International Trading Representative, LLC ("ITR"), Bikram, Inc. ("BI") and Bikram's Yoga College of India, LP ("BYCOI"), but do not include Debtor Yuz, Inc.

[3] As discussed in greater detail below, Trustee disputes that Starke has a valid lien on any of the Assets.

Bodden (together, the "Settlement Payments") pursuant to the prior Court-approved settlement and distribution agreements between Trustee and AmEx (Dkt. No. 566) (the "AmEx Settlement") and Trustee and Bodden (Dkt. No. 560) (the "Bodden Distribution Agreement"); and (ii) the other costs and expenses incurred in connection with the Sale (the "Sale Costs," as further itemized on Exhibit D attached hereto), which Settlement Payments and Sale Costs are discussed in greater detail in the attached Memorandum of Points and Authorities;[4]

(iv)    authorizing the Trustee to take any and all steps reasonably necessary to effectuate the Sale and related transactions;

(v)    finding that Buyer is a good faith purchaser under 11 U.S.C. § 363(m);

(vi)    approving a waiver of the stay provision under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"); and

(vii)    granting such related relief as the Court deems appropriate.

Trustee believes that only two creditors – AmEx and Bodden -- are entitled to any distribution from the Sale proceeds on account of their Interests in the Assets sold, which estimated distributions are as follows:

---

[4] The proposed payments set forth in Exhibit D are only estimates, and may change slightly based on the actual Sale Costs incurred, most notably, the final invoice for the court reporter and zoom auction coordinator, which invoice was only an estimate at the time that this Motion was filed.

| Creditor Name/Claim Amount | Valued Asset | Selling Debtor | Buyer's Allocated Purchase Price | Estimated Allowed Payment to Creditor from Sale Proceeds (Net of Exhibit D Sale Costs) |
|---|---|---|---|---|
| Bodden[5] $6,689,951.00 | Trademarks Identified in APA | BCYI | $100,000 | $26,346.15 |
| | Trademarks, Copyrights and Domain Name Identified in APA | ITR | $100,000 | $25,124.55 |
| | Domain Name: bikraminc.com | BI | $100,000 | $26,346.15 |
| | Copyright: Bikram Yoga dialogue[6] | BYCOI | $50,000 | $43,376.03 Reserved Pending Resolution of Disputed Priorities of Bodden/Starke |
| | Adversary Actions Identified in the APA | BYCOI | $300,000 | $27,797.84 |
| AmEx[7] $635,158.88 | Domain Name: purebikramyoga.net | BYCOI | $50,000 | AmEx Payment:  $21,688.02 Junior Interests of Bodden/Starke: $21,688.02 Reserved Pending Resolution of Disputed Priorities |

[5] Bodden is entitled to receive, after deducting all applicable Sale Costs and subject to any senior lien: (i) 30% of the net proceeds from the Sale of IP owned by the applicable Selling Debtors; and (ii) 10% of the net proceeds from the sale of the Adversary Actions.  Although Bodden's allowed claim of $6,689,951.00 has already been reduced by prior Court approved payments to her made from the proceeds of other sales of Estates' assets throughout the bankruptcy cases, her remaining allowed claim substantially still exceeds the aggregate amount of payments she will receive for the Sale of Assets approved by this Motion.

[6] Starke asserts a secured claim against the Estates of BYCOI, BCYI and BI in the amount of $5,174,557.30.  On February 7, 2022, BYCOI, BCYI and BI each filed a complaint against Starke seeking disallowance of her asserted secured claim and declaratory relief that Starke's proofs of claim are prima facie invalid because she failed to demonstrate a properly perfected and enforceable lien against any asset of the three Estates.  Even if Starke had a valid lien on any BCYI or BI Assets being sold (which she does not), such lien is behind Bodden's lien, and thus she is not entitled to receive any distributions on account of those liens.  With respect to the copyright Asset of BYCOI, because Starke's purported lien could be senior to Bodden's lien, until Starke's purported security interest in this IP Asset is resolved, Trustee will reserve on behalf of the BYCOI Estate the remaining Sale proceeds owing to the BYCOI Estate for this IP Asset in the amount of $43,376.03.

[7] AmEx is entitled to receive 50% of the net proceeds from the sale of this Asset after the payment of all Sale Costs allocated to this Asset in full and final satisfaction of its allowed senior secured claim, with any deficiency being treated as an allowed unsecured claim against the BYCOI Estate.  Bodden then is entitled to receive 30% of the remaining net proceeds on account of her junior interest after all other senior secured liens are paid in full.  Because Starke's purported lien, if valid (which Trustee disputes), in this domain name may be senior to Bodden's lien, until Starke's purported security interest in this IP Asset of BCYOI is resolved, Trustee will reserve on behalf of the BYCOI Estate the remaining Sale proceeds owing to the BYCOI Estate for this IP Asset in the amount of $21,688.02.

1    In accordance with the AmEx Settlement and the Bodden Distribution Agreement, Trustee seeks to

2  allocate the price paid for each of the Assets (based on the allocation provided by Buyer) and pay Amex

3  and Bodden the Settlement Payments in the estimated amounts identified above from the Sale proceeds at

4  Closing or as soon as practicable thereafter.

5    Based on the above estimated Settlement Payments (see infra, p. 13) and the estimated Sale Costs

6  set forth on Exhibit D, and as further set forth in the charts below, Trustee believes that the Estates will

7  receive the following distributions of net proceeds after payment of all Settlement Payments and Sale Costs,

8  and that such net proceeds will be allocated among the Estates of the Selling Debtor as follows:

| SUMMARY OF NET PROCEEDS FROM SALE | |
|---|---|
| Total Gross Sale Proceeds for Estates' Assets[8] | $700,000.00 |
| Minus Aggregate Estimated Sale Costs | ($75,880.00) |
| Minus Aggregate Payments to Bodden | ($105,614.69)[9] |
| Minus Payment to AmEx | ($21,688.02) |
| **Total Net Proceeds to Estates at Closing** | **$496,817.29** |
| BYCOI Reserve for Disputed Interests | ($65,064.05) |
| **Total Available Net Proceeds to Estates at Closing** | **$431,753.25** |

| ALLOCATION OF NET PROCEEDS TO ESTATES | | | |
|---|---|---|---|
| **Estate** | **Net Proceeds** | **Held in Reserve** | **Total** |
| BYCOI | $250,180.60 | $65,064.05 | $315,244.64 |
| BCYI | $61,474.35 | | $61,474.35 |
| ITR | $58,623.95 | | $58,623.95 |
| BI | $61,474.35 | | $61,474.35 |
| **TOTAL** | **$431,753.25** | **$65,064.05** | **$496,817.29** |

[8] As set forth in Exhibit 2.2 to the APA, Buyer has allocated $400,000 of the Purchase Price to the IP Assets and $300,000 of the Purchase Price to the Adversary Action Assets. The Purchase Price for the IP Assets was allocated by Buyer equally among the four Selling Debtors ($100,000 to each such Selling Debtor). Itkin Decl., ¶ 5. With respect to the purchase of the IP Assets of BYCOI, Buyer allocated 50% of the $100,000 allocated Purchase Price to each of the two IP Assets (i.e., $50,000 to the domain name being sold and $50,000 to the copyright being sold). Id.

[9] If Starke's lien is disallowed, Bodden will receive an additional $19,519.22 payable from the BYCOI reserve account, and the remaining $45,544.83 in reserve will go to the BYCOI Estate.

The bases for the relief requested herein are §§ 105(a) and 363 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 ("Bankruptcy Code"), Bankruptcy Rules 2002, 6004 and 9014, and Rules 6004-1 and 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

A hearing on this Motion (the "Sale Hearing") shall be held by video conference before the United States Bankruptcy Court for the Central District of California, Northern Division, located in Courtroom 201 at 1415 State Street, Santa Barbara, CA 93101, on **February 23, 2022 at 11:30 a.m. (PST)**. Video and audio connection information for the Sale Hearing will be provided on Judge Saltzman's publicly posted hearing calendar, which may be viewed online at: http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=DS.

Your rights may be affected by this Motion. Any response or objection to this Motion must be made in writing, in the form required by LBR 9013-1(f), be filed with the Clerk of the United States Bankruptcy Court and be served, **by email transmission**, **by no later than February 18, 2022** (the "Sale Objection Deadline"), on the following: (i) Office of the United States Trustee, Attn: Brian Fittipaldi, Email: brian.fittipaldi@usdoj.gov; (ii) Trustee, Attn: Robbin L. Itkin; Email: ritkin@sklarkirsh.com; (iii) Sklar Kirsh LLP, Attn: Lovee D. Sarenas; Email: lsarenas@sklarkirsh.com.

**ANY PARTY WHO FAILS TO MAKE A TIMELY OBJECTION TO THE SALE ON OR BEFORE THE SALE OBJECTION DEADLINE MAY BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS.**

Replies to objections, if any, must be filed with the Clerk of the United States Bankruptcy Court and be served **by no later than 12:00 p.m. on February 22, 2022.**

The Motion is supported by the accompanying Memorandum of Points and Authorities, the Declarations of Robbin L. Itkin ("Itkin Decl."), Richelle Kalnit (the "Kalnit Decl.") and Dr. Kali P. Chaudhuri (the "Chaudhuri Decl.") filed concurrently herewith, the exhibits attached hereto, all the

pleadings filed and the record in these cases, all matters of which this Court may take judicial notice and such other evidence and argument as may be presented at the Sale Hearing.

DATED: February 14, 2022                    SKLAR KIRSH, LLP


                                            By:    _____/s/ Lovee D. Sarenas_____
                                                   Lovee Devela Sarenas
                                                   Attorneys for Chapter 7 Trustee Robbin L. Itkin

1

2

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    STATUS OF THE CASE AND JURISDICTION..................................................1

III.   FACTUAL BACKGROUND ...................................................................................2

     A.     The Need for the Sale of the Assets.............................................................2

     B.     Marketing Efforts.........................................................................................3

     C.     Summary of the Key Terms of the APA .....................................................5

     D.     Secured Claims Asserted Against the Assets Being Sold.......................8

     E.     Sales Costs .................................................................................................11

     F.     Allocation of Purchase Price and Proposed Distributions ......................12

     G.    Notice of the Sale and this Motion ...........................................................14

     A.     The Proposed Sale of Assets Is Proper Under Applicable Law...............14

          1.     Sound business judgment supports the Sale here. ....................15

          2.     The proposed Purchase Price is fair and reasonable. ...............16

          3.     Notice is proper........................................................................17

          4.     The Sale was negotiated at arms' length...................................17

          5.     The Sale is not subject to Bankruptcy Code § 363(b) and excludes personally identifiable information..............................................18

     B.     The Sale Should be Approved Free and Clear of All Interests.............19

     C.     Buyer Should be Afforded § 363(m) Protection......................................22

     D.     There are No Tax Consequences that Should Preclude the Sale. ...........23

     E.     Waiver of Bankruptcy Rule 6004(h) is Appropriate Here......................23

VII.  CONCLUSION .....................................................................................................26

# TABLE OF AUTHORITIES

**Page**

**CASES**

Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),
    722 F.2d 1063 (2d Cir. 1983)............................................................. 15

FutureSource LLC v. Reuters Ltd.,
    312 F.3d 281 (7th Cir. 2002) ........................................................... 22

Matter of Phoenix Steel Corp.,
    82 B.R. 334 (Bankr. D. Del. 1987) .................................................. 16

In re Abbotts Dairies of Pennsylvania, Inc.,
    788 F.2d 143 (3rd Cir. 1986) ........................................................... 23

In re Chrisman,
    27 B.R. 648 (Bankr. S.D. Ohio 1982)………………………………….………..19

In re Christ Hosp.,
    No. CIV.A. 14-472 ES, 2014 WL 4613316 (D.N.J. Sept. 12, 2014)............................ 22

In re Continental Air Lines, Inc.,
    780 F.2d 1223 (5th Cir. 1986) ......................................................... 15

In re Curlew Valley Assocs.,
    14 B.R. 506 (Bankr. D. Utah 1981) ................................................. 15

In re Ewell,
    958 F.2d 276 (9th Cir. 1992) ........................................................... 23

In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.,
    77 B.R. 15 (Bankr. E.D. Pa. 1987) .................................................. 23

In re Lahijani,
    325 B.R. 282 (B.A.P. 9th Cir. 2005)................................................ 15

In re Octagon Roofing,
    123 B.R. 583 (Bankr. N.D. Ill. 1991) .............................................. 22

In re Slates,
    No. BAP EC-12-1168-KIDJU, 2012 WL 5359489 (B.A.P. 9th Cir. Oct. 31, 2012) ....... 15

In re Suchy,
    786 F.2d 900 (9th Cir. 1985) ........................................................... 23

In re Wilde Horse Enters., Inc.,
     136 B.R. 830 (Bankr. C.D. Cal. 1991)................................................................. 15, 16, 18

In re Walter,
     83 B.R. 14 (B.A.P. 9th Cir. 1988).....................................................................15

**STATUTES**

11 U.S.C. § 105(a) ............................................................................................... 5

11 U.S.C. § 363(b)(1) ............................................................................... 15, 17, 19

11 U.S.C. § 363(f) ....................................................................................... 8, 11, 20, 26

11 U.S.C. § 363(f)(2)......................................................................................22

11 U.S.C. § 363(f)(4) .......................................................................................... 22

11 U.S.C.§ 363(f)(5) ........................................................................................ 20

11 U.S.C § 363(m) ........................................................................ 18, 23, 24, 26

28 U.S.C. § 1334 ................................................................................................ 1

28 U.S.C. § 157(b) ............................................................................................. 1

28 U.S.C. § 1408 ................................................................................................ 1

28 U.S.C. § 1409 ................................................................................................ 1

LBR 2002.................................................................................... 2,5, 14, 17, 21

LBR 2002(c)...............................................................................................14, 17

LBR 6004-1 ............................................................................. 2, 5, 14, 17

LBR 6004-1(c) .................................................................................... 14, 17

LBR 6004(a) .................................................................................... 14, 17

LBR 6004(h)................................................................3, 8, 24, 25, 26

LBR 9013..........................................................................................2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

After a robust marketing process, a successful auction was conducted on February 10, 2022 where ten (10) qualified bidders participated, resulting in a high bid of $700,000 by Buyer.  Trustee has expended significant efforts in these cases to recover properties of the Estates, resolve claims and reach settlements with creditors that have asserted Interests in the Assets.  With these compromises, Trustee is able to move forward with consummation of the Sale of the remaining Assets of the Estates to Buyer and address any other issues that may arise.  The Assets, comprised primarily of the Selling Debtors' IP rights, the pending Adversary Actions filed in these cases, and related Documents, are the Estate's remaining assets that have value and can be monetized for the benefit of creditors.  Trustee, with the assistance of her advisors, has undergone an extensive marketing and sales process, and believes that the Sale to Buyer at the Purchase Price reached at Auction represents the highest and best price that could be obtained for the Assets.  Not only will the Sale bring in much-needed funds to pay claims, but it will foster the conclusion of the administration of these cases.  Accordingly, Trustee seeks approval of the Sale to Buyer on the terms and conditions set forth in the APA.

### II.   STATUS OF THE CASE AND JURISDICTION

On November 9, 2017 ("Petition Date"), Debtors commenced their respective chapter 11 bankruptcy cases.  The Estates are administered jointly under BYCOI's bankruptcy case pursuant to this Court's order [Dkt. No. 11].  On April 4, 2018, Robbin L. Itkin was appointed to serve as the chapter 11 trustee for the Estates.  On September 28, 2020, the bankruptcy cases were converted from chapter 11 to chapter 7 [Dkt. No. 436].  Subsequently, Robbin L. Itkin was appointed to serve as the chapter 7 trustee for the aforementioned cases [Dkt. No. 441].  She continues to serve in this capacity at the time of this Motion.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are Bankruptcy Code §§ 105(a) and 363, Bankruptcy Rules 2002, 6004 and 9013, and LBR 6004-1 and 9013-1.

## III.    FACTUAL BACKGROUND

### A.    The Need for the Sale of the Assets

This Sale is the culmination of years of efforts taken to marshal assets of the Estates, to analyze and resolve the many claims and interests affecting such Assets, and to monetize the value of such Assets for the benefit of the Estates and their creditors.   To date, Trustee has achieved considerable progress in resolving disputes and lining up what is necessary to accomplish the Sale and resolve these cases by taking, *inter alia*, the following actions in these cases:

- Trustee settled three of the pending adversary proceedings against the Rajashree Choudhury Family Trust Dated March 1, 2016, Rajashree Choudhury (both individually and as trustee of the Trust), and her adult children, Anurag Choudhury and Lajwanti Choudhury (collectively, "Choudhury Defendants").  In connection therewith, Trustee sold the Choudhury Defendants' residence, which sale was approved by the Court on April 5, 2021 [Dkt. No. 492]. Itkin Decl., ¶ 18(a).

- Trustee recovered and sold various luxury vehicles owned by the Estates and negotiated a distribution agreement with various lienholders to permit an orderly sale of those assets.  Id. at ¶ 18(b).

- Trustee also entered into the Bodden Distribution Agreement with Bodden with respect to her judgment lien against the Estates.  This compromise is crucial as it enables the Estates to move forward with the sale of the remaining assets, resolves the parties' issues with respect to the treatment of Bodden's claims (including the validity and extent of her asserted secured claims), and provides for an orderly distribution of any Sale proceeds from the Assets.  Trustee estimates that the aggregate payment to Bodden from the proceeds of the Sale pursuant to the Court approved Bodden Distribution Agreement is $105,614.69, and could be as high as $125,133.91 if Starke's purported lien on the IP Assets owned by BYCOI is disallowed.  Id. at ¶ 18(c).

- On August 10, 2021, Trustee filed a Motion for Default Judgment ("DJ Motion") in the adversary case entitled *Robbin L. Itkin v. Bikram Choudhury* (Adv. No. 9:19-ap-01075 DS).  The DJ Motion establishes Bikram Choudhury's liability and reduces to judgment Trustee's claims arising from a multitude of fraudulent transfers of assets of the BYCOI estate.  No opposition was received with respect to the DJ Motion.  On January 7, 2022, the Trustee submitted a Supplemental Brief in support of the DJ Motion pursuant to the Court's order.  The entry of the default judgment is pending.  Id. at ¶ 18(d).

- Trustee also reached the AmEx Settlement with AmEx, which has asserted a senior secured lien on the domain name owned by BYCOI that is part of the Assets being sold.  The AmEx Settlement provides, in relevant part, that the parties will divide the proceeds from the Sale of the domain name equally after payment of all applicable Sale Costs allocated to the sale of the domain name.  Any deficiency claim is treated as an unsecured claim against the BYCOI Estate.

Trustee estimates that the aggregate payment to AmEx from the proceeds of the Sale pursuant to the Court approved AmEx Settlement is $21,688.02. Id. at ¶ 18(e).

- On February 7, 2022, the Trustee commenced adversary proceedings in each of the bankruptcy cases of BYCOI, BCYI and BI against Starke pursuant to Bankruptcy Rules 3001(c), 3007, 7001(2) and (9) and Bankruptcy Code §§ 502(b)(7), 506(d), 724(a) and 726(a)(4), seeking disallowance of her asserted secured claim against the three Selling Debtors and declaratory relief that Starke's proofs of claim are *prima facie* invalid in that Starke failed to demonstrate a properly perfected and enforceable lien against any asset of the three Estates on account of the judgment she obtained against Bikram Choudhury, individually and the Selling Debtors BYCOI, BCYI and BI. Absent a viable secured claim against the BYCOI, BCYI and BI Estates, Starke does not have a lien on any of the Assets. Id. at ¶ 18(f).

- On or about February 11, 2022, Trustee reached a settlement agreement with Monica Shigenaga CocoJor Hawaii, LLC and Jadoo, LLC that provides for the dismissal of adversary proceeding number 9:19-ap-01070-DS (the "Shigenaga Adversary Action"), including dismissal of the counterclaim asserted against the Estates in that action. Trustee will file a motion seeking Court approval of the parties' proposed settlement. Id. at ¶ 18(g).

With the foregoing progress made to date in the chapter 7 cases, Trustee is in a position to sell the Assets to Buyer and bring the administration of these Estates to its conclusion.

## B.  **Marketing Efforts**

Although Trustee had engaged in discussions with potential buyers for some of the Assets during the pendency of the Chapter 7 cases and prior to the start of the Court approved sales process for the Assets, none of those efforts resulted in consummation of a sale. Itkin Decl., ¶ 20. In October 2021, Trustee retained Hilco IP Services, LLC d/b/a Hilco Streambank ("Hilco") as the Estates' sale consultant and agent to identify additional potential buyers for some or all of the Assets, and to otherwise facilitate the marketing and sale of the Assets to third parties. Id. at ¶ 21. Hilco's retention was approved by order of the Court entered on November 9, 2021 [Dkt. No. 548]. Kalnit Decl., ¶ 3.

On December 27, 2021, the Court entered the Bid Procedures Order [Dkt. No. 570] approving, among other things, certain bid procedures (the "Bid Procedures") that established key dates, times and a process for the Sale of the Assets. Notwithstanding the limited universe of potential acquirers for these types of Assets, Trustee believes that the Bid Procedures and sales process approved in the Bid Procedures Order has allowed her and her advisors to fully market, evaluate and select the highest and best price for the Assets.

As part of the marketing efforts, Hilco worked with Trustee and her professionals to identify and assemble relevant data concerning the Assets, and to market the Assets to potential buyers.  Hilco's activities included (see Kalnit Decl., ¶ 6):

      a.    identifying the Assets and assisting Trustee in preserving the Assets;

      b.    developing marketing materials including a "teaser" describing the Assets, the history of their use and their availability for sale;

      c.    reviewing, with Trustee and her counsel the contents of the storage locker containing approximately 246 boxes of documents related to the Assets, and supplementing the inventory spreadsheet of such documents based on the review;

      d.    working with Trustee and her various counsel to advise Trustee with respect to gaining control of the BikramYoga.com domain name and other domain names;

      e.    drafting and disseminating a press release via PR Newswire describing the Assets and their availability for sale;

      f.    developing a contact list of potential buyers of the Assets;

      g.    having direct contact by phone or email with approximately 285 potential buyers of the Assets;

      h.    disseminating email marketing materials that were sent to over 6,000 potential buyers of the Assets culled from Hilco's proprietary contact database;[10]

      i.    advertising the Assets on Hilco's LinkedIn and Twitter pages;

      j.    establishing and populating a virtual data room (the "Data Room") and arranging for the admission of 19 parties to the Data Room who executed a form of non-disclosure agreement acceptable to Trustee;

      k.    developing an Auction format for the Assets, including a bid form and bidder qualification guidelines;

      l.    managing the auction of the Assets (the "Auction"); and

      m.    working with Trustee and Buyer to document deliverables and terms of the sale.

---

[10] In addition, Trustee mailed notices of the sale, together with copies of the Bid Procedures Order and Hilco's marketing teaser, to over 700 creditors and other interested parties in the cases, including current and former Bikram related studio owners.  Itkin Decl., ¶ 20.

Hilco and Trustee notified potential bidders that any offers to acquire the Assets were required to be submitted in writing on or before February 8, 2022 at 12:00 p.m. PT (the "Bid Deadline"), together with a good-faith deposit equal to 10% of the amount of the potential buyer's bid, along with the other requirements as set forth in the Bid Procedures Order.  Prior to the Bid Deadline, Hilco engaged with multiple interested parties.  Ultimately, the Trustee received bids and initial deposits from ten (10) bidders.  Hilco, together with Trustee and her counsel, worked to qualify the bids received from these bidders.  As a result of those efforts, the modified bids of all of the bidders were deemed qualified as contemplated by the Bid Procedures (the "Qualified Bidders").  Kalnit Decl., ¶¶ 7-8.

On February 10, 2022, Trustee convened the Auction among the ten (10) Qualified Bidders utilizing a video conferencing platform that also allowed participants with only a listening role to participate telephonically.  At the auction, Trustee solicited sealed bids from each Qualified Bidder through one round of best and final sealed bids.  The highest and/or otherwise best bid of $700,000 for all of the Assets was submitted by Buyer.  On or about February 11, 2022, Buyer wired an additional deposit of $40,000, thereby increasing the total deposit held by Trustee to $70,000, or 10% of the Purchase Price.  Kalnit Decl., ¶¶ 9-11.  The deposit is refundable to Buyer except where the APA is terminated as a result of a material breach by Buyer, or a Sale does not close by March 11, 2022 through no fault of Trustee.

## C.    Summary of the Key Terms of the APA

A true and correct copy of the final APA agreed to by Trustee and Buyer is attached hereto as Exhibit B.[11]    Attached hereto as Exhibit C is a redlined version of the APA showing changes to the final APA agreed to by Trustee and Buyer compared to the form APA that was approved by the Court for use in the marketing and Sale process and attached to the "*Motion for an Order (a) Approving Bid Procedures for the Sale of the Estates' Remaining Assets, Including Authorization of a Discretionary Break-Up Fee Payment; (b) Approving Related Notice Procedures; (c) Approving the Form Asset Purchase Agreement;*

---

[11] Given the expediency of finalizing documents after the February 10th Auction and the required filing date of February 14th for the Sale Motion, Buyer confirmed in writing his approval of the final terms and conditions of APA attached hereto as Exhibit B, but indicated that a signature would not be forthcoming until February 15, 2022.

*(d) Authorizing the Payment of Sales Costs; (e) Scheduling a Sale Hearing; and (f) Granting Related Relief*" (the "Bid Procedures Motion") (Dkt. 553).

The Assets that are the subject of the proposed Sale are specifically identified in the APA, but generally consist of IP assets comprised of specific trademarks, copyrights and domain names developed and utilized by certain Selling Debtors (as specifically identified in the Exhibits attached to the APA) in connection with BYCOI's yoga teacher training business.  In addition, Trustee commenced the following Adversary Actions against various defendants on November 8, 2019, all of which are part of the Assets being sold to Buyer:[12] (i) *Itkin v. Organizacion Ideal dba Princess Mundo Imperial Hotel, et al.* (19-ap-01066-DS); (ii) *Itkin v. Smana Hotel Al Raffa and Rajesh Baheti* (9:19-ap-01067-DS); (iii) *Itkin v. Zen Co., Ltd.* (9:19-ap-01068-DS); (iv) *Itkin v. Elo, et al.* (9:19-ap-01069-DS); (v) *Itkin v. Shigenaga, et al.* (9:19-ap-01070-DS);[13] (vi) *Itkin v. Sumanta Bhattachriya, et al.* (9:19-ap-01071-DS) ; and (vii) *Itkin v. Bikram Choudhury* (9:19-ap-01075-DS).  Trustee also is transferring to Buyer all Documents related to the Assets that are currently located in a storage unit maintained by Trustee.

As set forth in the APA, Trustee seeks to sell the Assets on an "as-is, where-is" basis with all faults and with no representations or warranties of any kind.  Buyer was solely responsible for conducting its own, independent due diligence with respect to the Assets, including, without limitation, the existence and validity of any of the IP and the potential recoveries from the Adversary Actions.  Chaudhuri Decl., ¶¶ 5-6.  The other salient terms of the APA are as follows[14]:

---

[12] This list of Adversary Actions, which constitutes the Adversary Actions that are part of the Assets, excludes the adversary actions previously settled with the Choudhury Defendants.

[13] Pursuant to Section 2.1(b) of the APA, Trustee may, in her sole discretion, remove the Shigenaga Adversary Action from the Assets being sold and designate it as an Excluded Adversary Action at or prior to Closing.  Subject to Court approval of the settlement agreement dismissing the Shigenaga Adversary Action, Trustee will designate the Shigenaga Adversary Action as an Excluded Adversary Action.  Itkin Decl., ¶ 9.

[14] The following is intended only as a summary.  Parties should refer to the actual APA for a complete understanding of all terms and conditions of the Sale to Buyer.  The terms and conditions of the APA are incorporated herein in their entirety by this reference, and failure to include any specific term or condition in this summary shall not be deemed a waiver of such provision.  In the event of any inconsistencies between the summary provided herein and the APA, the terms of the APA shall govern.

| **PROVISION** | **SUMMARY** |
|---|---|
| Purchase Price (APA, §2.2, Exhibit 2.2 to the APA) | $700,000, which Buyer allocated $400,000 of the Purchase Price to the IP Assets and $300,000 of the Purchase Price to the Adversary Actions, as further set forth in Exhibit 2.2 to the APA |
| Sale to Insider | No. See Chaudhuri Decl., ¶¶ 10-11 |
| Contingencies to Closing (APA, §4.1) | None. Buyer waives any and all contingencies to consummation of the Sale transaction, including, without limitation, all due diligence and financing contingencies. |
| Releases | None |
| Closing and Other Deadlines (APA, §4.2) | The Closing shall occur on or before two (2) business days following the date on which all the closing conditions set forth in Sections 4.3 and 4.4 of the APA have been satisfied, but in any event, by no later than March 11, 2022 or a later date agreed upon in writing by the Parties. |
| Deposit (APA, §§1.3, 2.3, 5.1, 5.2 and 5.3) | $70,000.00 (10% of the Purchase Price). The Deposit is non-refundable if the APA is terminated as a result of a material breach by Buyer pursuant to Section 5.1(ii) of the APA, or the Closing fails to occur on or before March 11, 2022 (or a later date agreed upon in writing by the Parties) through no fault of Seller. |
| Interim Agreement with Buyer | None |
| Tax Exemption (APA, §7.3) | N/A. Buyer shall pay, to the extent applicable: (i) all applicable document recording charges, if any; (ii) all transfer taxes and other fees, if any, arising from or resulting from the transactions contemplated hereby; and (iii) all costs and expenses related to Buyer's investigation, transfer and assignment of the Assets. |
| Record Retention (APA, §2.1(c)) | N/A. The Assets include all Documents relating to the Assets being sold, and Buyer is solely responsible for any and all storage costs after Closing and for the removal or disposal of such Documents, at Buyer's sole cost and expense, and Trustee shall have no further liability with respect thereto on and after Closing.[15] Trustee has, or prior to Closing will, remove all Documents from the storage facility that are needed to administer the Estates, any items |

---

[15] Notwithstanding the foregoing, if, after the Closing, Buyer discovers any books, records, documents and other files being held in storage that do not relate to the Assets (the "Other Documents"), Buyer shall immediately notify the Seller and arrange for the prompt return of such Other Documents, or at the Trustee's direction, the prompt destruction of the Other Documents, all at the Buyer's sole cost and expense. In the event Seller inadvertently turns over any Documents in storage that contain personal or confidential information of any employee or other person affiliated with the Bikram Yoga facilities and program to Buyer, Buyer agrees not to utilize or disclose such information to any third-parties and to destroy such information upon its discovery.

| | |
|---|---|
| | or other memorabilia (including, without limitation, photographs, letters and other correspondence), and all Documents or any part thereof that contain confidential or personal identifiable information. Any such items or Documents removed from storage in advance of the Closing are not included as part of the Assets being sold. |
| Sale of Avoidance Actions (APA, §2.1(b)) | Yes, the Adversary Actions are part of the Assets being sold; provided, however, that Trustee may, in her sole discretion, remove the Shigenaga Adversary Action from the Assets being sold and designate it as an Excluded Adversary Action on or prior to Closing. |
| Requested Findings as to Successor Liability | N/A |
| Sale Free and Clear of Liens (APA, §2.4) | Except with respect to obligations and liabilities relating to and arising on and after the Closing, Buyer is not assuming any liability, debt or obligations of Seller, Selling Debtors, or their bankruptcy Estates attributable to the Assets prior to Closing, and Buyer shall have no obligation or responsibility therefor.  All of the Assets being sold shall be sold and assigned by Seller to Buyer free and clear of all liens and interests, in accordance with 11 U.S.C. § 363(f). |
| Credit Bid | None |
| Relief from Bankruptcy Rule 6004(h) | Yes (see legal discussion below). |

### D.    Secured Claims Asserted Against the Assets Being Sold

The following liens and security interests (in order of purported priority) have been asserted against

the Selling Debtors' Estates as of the Petition Date (see Itkin Decl., ¶ 28):

| Selling Debtor | Creditor | Recording Date | Amount | Nature of Lien | Proof of Claim[16] |
|---|---|---|---|---|---|
| BYCOI | AmEx | 11/25/2015 | $635,158.88 | Recorded UCC-1 Financing Statement | POC 3-1 |
| | Starke | None, but Writ of Attachment Filed 2/16/2016[17] | $370,011.21[18] | Disputed Judgment Lien | POC 10-1 |

---

[16] Trustee requests that the Court to take judicial notice of proofs of claim filed in these cases.

[17] The writ of attachment was not submitted with any of the proofs of claim filed by Starke.  A notice of attachment must be levied or a notice of judicial lien recorded against BYCOI in order to create a judicial lien on the personal properties of BYCOI. Cal. Civ. Proc. Code §§ 488.500(a) and 697.510(a).  Starke failed to do that here.

[18] The claim amount is based on the Writ of Attachment that mentions BYCOI but was not recorded against it.

| | Bodden | 7/5/2016 | $6,767,519.44 | Judgment Lien | POC 6-2 |
|---|---|---|---|---|---|
| | Bodden | 7/5/2016 | $6,689,951.00 | Judgment Lien | POC 3-1 |
| BCYI | Starke | None[19] | $5,174,557.30 | Disputed Judgment Lien | POC 4-1 |
| | Bodden | 7/5/2016 | $6,689,951.00 | Judgment Lien | POC 4-1 |
| BI | Starke | None | $5,174,557.30 | Disputed Judgment Lien | POC 5-1 |
| ITR | Bodden | N/A | $6,689,951.00 | Judgment Lien | POC 2-1 |

### 1.    *AmEx's Secured Interest*

AmEx has a first priority security interest in a domain name owned by BYCOI that is part of the Assets being sold.  AmEx's secured claim arises from a Business Loan and Security Agreement ("Security Agreement") signed by Bikram Choudhury on behalf of BYCOI dated November 23, 2015.  The Security Agreement granted a security interest to AmEx in, among other things,

> "all trademarks, trade names, service marks, logos and other source of business identifiers, and all registrations, recordings and applications with the USPTO and all renewals, reissues and extensions thereof . . . and any and all proceeds of [ ] the foregoing, including insurance proceeds or other proceeds from the sale. . . ." ("Collateral").

The Security Agreement excluded from the Collateral "any real estate, motor vehicles, household furniture and fixtures, and any other goods for personal, family or household use" and omitted any copyrights of BYCOI.  AmEx recorded a UCC-1 Financing Statement on November 25, 2015 asserting a lien on assets of BYCOI.

Pursuant to the Amex Settlement [Dkt. No. 566], the Court approved the parties' compromise with respect to the treatment of AmEx's claim against the Assets owned by BYCOI.  In accordance with the AmEx Settlement, AmEx agreed to carve-out a portion of its allowed recovery from the sale of the Estates' Assets to pay over to Trustee for the benefit of the Estates, and agreed to take a partial distribution equal to 50% of the net sale proceeds of the Sale of the BYCOI domain name after payment of Sale Costs incurred in marketing, selling and consummating the sale of the BYCOI domain name in full and final satisfaction

---

[19] To the best of Trustee's knowledge, Starke did not file a writ of attachment against BCYI or BI, much less any form of lien on their Assets, nor did she attach any such documents to her proofs of claim.  As such, Bodden's security interests are senior to Starke's (if any) and Starke is not entitled to any distributions from the Sale proceeds allocated to BCYI and BI. Itkin Decl., ¶ 9.

of its allowed secured claim against the BYCOI Estate.  Any deficiency claim is treated as an unsecured claim to share pro rata with other unsecured creditors of the BYCOI Estate.

### 2.    Bodden's Secured Interest

Bodden asserts a secured judgment lien against the Selling Debtors BYCOI, BCYI, BI and ITR. Although Trustee initially disputed Bodden's asserted liens on certain of the Assets, the parties resolved their disputes and entered into the Bodden Distribution Agreement, which the Court approved pursuant to an order entered on December 7, 2021 [Dkt. No. 560].  In accordance with the Bodden Distribution Agreement, Trustee and Bodden agreed to carve-out Bodden's asserted secured claim on the IP Assets for the benefit of the Estates, and Bodden agreed to take a partial distribution from the Sale proceeds, after payment of applicable Sale Costs and any senior liens, as follows: (i) 30% of the net proceeds from the sale of any IP Assets owned by the Selling Debtors; and (ii) 10% of the net proceeds from the sale of the Adversary Actions.[20]   These agreed payments to Bodden, in addition to the funds that Bodden has previously received from the Estates pursuant to prior agreements between Bodden and Trustee, are in full and final satisfaction of Bodden's secured claim, and any deficiency claim is treated as one aggregate unsecured claim against the Estates.

### 3.    Starke's Purported Lien

Starke filed proofs of claim erroneously asserting a secured claim in the amount of $5,174,557.30 against the BYCOI, BCYI and BI Estates purportedly arising from a state court judgment she obtained against the following judgment debtors: Bikram Choudhury, individually, and the Selling Debtors BYCOI, BCYI and BI (collectively, "Judgment Debtors"), who allegedly are jointly and severally liable under a wrongful termination lawsuit.[21]  On February 7, 2022, the Trustee commenced three adversary proceedings

---

[20] No creditor, other than Bodden, is entitled to share in any proceeds from the Sale of the Adversary Actions.

[21] The proofs of claim filed by Starke are identical in amount, assert the same judgment against the Judgment Debtors as the underlying basis for the claim, and seek 10% interest from the date of judgment to the Petition Date.

against Starke objecting to Starke's asserted secured claim.[22]   The complaints seek disallowance of her

asserted secured claim against the three Selling Debtors and declaratory relief that Starke's proofs of claim

are *prima facie* invalid in that (1) Starke failed to submit and show evidence of an enforceable lien against

any asset of the three Estates on account of the judgment particularly against the IP of the three Selling

Debtors; and (2) her claim, which is based on damages arising from the termination of her employment

with BYCOI, must be reduced to an unsecured claim for $350,000.00 pursuant to Bankruptcy Code §

502(b)(7).   Absent a *prima facie* valid secured claim, Trustee believes Starke does not have a lien for

purposes of Bankruptcy Code § 363(f).

### E.    Sales Costs

The summary of the estimated Sale Costs on amounts obtained to date are attached hereto as Exhibit
D, which Sales Costs, in the aggregate, are approximately $75,880.00, and include:[23]

    a.   $60,000 in the aggregate on account of Hilco's commission and reasonable and verified
out-of-pocket costs and expenses incurred by Hilco (capped at $5,000), all as authorized
pursuant to the Hilco Retention Order.

    b.   $4,055 in the aggregate on account of IP counsel's flat fee and costs incurred in
connection with the successful prosecution of the UDRP action on behalf of the ITR
Estate as authorized by the Court pursuant to SBG&B' retention order.

    c.   Other costs of sale in the aggregate amount of $11,825 incurred in connection with the
marketing of the Assets and the Sale process, including, without limitation, court
reporter and zoom operator expenses for the Auction, retrieval and reproduction of

---

[22] Trustee respectfully requests that the Court to take judicial notice of the complaints filed against Starke
in the bankruptcy cases of BCYI (Adv. No. 9:22-ap-01009 DS), BYCOI (Adv. No. 9:22-ap-01010 DS),
and BI (Adv. No.9:22-ap-01011 DS).

[23] These Sale Costs are estimates and are subject to Trustee's receipt of final invoices.  In addition, there
may be additional Sale Costs incurred prior to Closing, including costs associated with removal of
Documents prior to the Closing from the storage unit.

documents for the Data Room, copying and postage costs relating to service of the Sale related pleadings, and preservation of IP rights.[24]

In allocating the Sale Costs among the various Selling Debtors, to the extent that a certain expense is attributable to a particular Asset of a Selling Debtor being sold, such expense is allocated in whole to that Selling Debtor and, where necessary for determination of Sale proceeds per Asset for lien purposes, to the particular relevant Asset of such Selling Debtor being sold.  To the extent that an expense is attributable to the Assets of all four Selling Debtors, each Selling Debtor is responsible for its ¼ share of the cost incurred.  Because the Sales Costs are actual and necessary expenses incurred for an effective and orderly Sale of the Assets and the efficient administration of the Estates, Trustee seeks approval of any Sale Costs incurred not already authorized in the Bid Procedures Order.

**F.    Allocation of Purchase Price and Proposed Distributions**

The following is a summary of the aggregate net proceeds expected to be received by the Estates from the Sale:

| SUMMARY OF NET PROCEEDS TO ESTATES FROM SALE | |
| --- | --- |
| Total Gross Sale Proceeds for Estates' Assets[25] | $700,000.00 |
| Minus Aggregate Estimated Sale Costs | ($75,880.00) |
| Minus Aggregate Payments to Bodden | ($105,614.69)[26] |
| Minus Payment to AmEx | ($21,688.02) |
| **Total Net Proceeds to Estates at Closing** | **$496,817.29** |
| BYCOI Reserve for Disputed Interests | ($65,064.05) |

[24] Pursuant to the Bid Procedures Order, Trustee was approved to pay some or all of these costs of sale. These costs of sale, some of which have already been paid, but most of which remain unpaid, are to be deducted from the Sale proceeds before making any distributions under the AmEx Settlement and the Bodden Distribution Agreement.

[25] As set forth in Exhibit 2.2 to the APA, Buyer has allocated $400,000 of the Purchase Price to the IP Assets and $300,000 of the Purchase Price to the Adversary Action Assets. The Purchase Price for the IP Assets was allocated by Buyer equally among the four Selling Debtors ($100,000 to each such Selling Debtor).  With respect to the purchase of the IP Assets of BYCOI, Buyer allocated 50% of the $100,000 allocated Purchase Price to each of the two IP Assets (*i.e.*, $50,000 to the domain name being sold and $50,000 to the copyright being sold).

[26] If Starke's lien is disallowed, Bodden will receive an additional $19,519.22 payable from the BYCOI reserve account, and the remaining $45,544.83 in reserve will go to the BYCOI Estate.

Trustee proposes to pay the Sale Costs (see Exhibit D) in the estimated amount of $75,880.00, plus any additional actual and reasonable costs incurred in connection with the Sale prior to Closing, to the applicable vendor from the Sale proceeds at Closing or as soon as reasonably practicable thereafter, without further application to or approval of the Court.

In addition, Trustee proposes to make the Settlement Payments from the Sale proceeds, after deducting the applicable Sale Costs from the appropriate Selling Debtor (subject to a final calculation of the Sale Costs), to AmEx and Bodden (subject to the BYCOI reserves referenced below) in accordance with this Court's prior orders approving the AmEx Settlement and Bodden Distribution Agreement, without further application to or approval of the Court as follows:

| Type of Asset Sold | Selling Debtors | Creditors | Allocated Net Proceeds of Sale (after Sale Costs) | Allocated Net Proceeds to Creditors | Allocated Net Proceeds to Estates |
|---|---|---|---|---|---|
| Adversary Actions | BYCOI | Bodden | $277,978.44 | $27,797.84 | $250,180.60 |
| IP | | | | | |
| | BCYI | Bodden | $87,820.50 | $26,346.15 | $61,474.35 |
| | ITR | Bodden | $83,748.50 | $25,124.55 | $58,623.95 |
| | BI | Bodden | $87,820.50 | $26,346.15 | $61,474.35 |
| | BYCOI (domain name Asset) | Amex | $ 43,376.03 | $21,688.02 | |
| | | Starke/Bodden | $21,688.02 | Disputed/Reserved | |
| | BYCOI (copyright Asset) | Starke/Bodden | $43,376.03 | Disputed/Reserved | |
| **Total BYCOI Reserves** | | | **$ 65,064.05** | | |
| **Total (Excluding BYCOI Reserves)** | | | **$431,753.25** | | |

After the payment of the Sale Costs and Settlement Payments, the net proceeds will be allocated to the Selling Debtors' Estates as follows (again, subject to the final calculation of the actual Sale Costs):

| ALLOCATION OF NET PROCEEDS TO ESTATES | | | |
|---|---|---|---|
| **Estate** | **Net Proceeds** | **Held in Reserve** | **Total** |
| BYCOI | $250,180.60 | $65,064.05 | $315,244.64 |
| BCYI | $61,474.35 | | $61,474.35 |
| ITR | $58,623.95 | | $58,623.95 |
| BI | $61,474.35 | | $61,474.35 |
| **TOTAL** | **$431,753.25** | **$65,064.05** | **$496,817.29** |

### G.    Notice of the Sale and this Motion

All of the applicable notice requirements of Bankruptcy Rules 2002(c) and 6004(a), (c), and LBR 6004-1(c) pertaining to this Motion and the request herein to approve the Sale have been satisfied.  First, in connection with the Bid Procedures Motion that was filed in late November 2021, Trustee served notice of the proposed Bid Procedures, including a copy of the form APA, to over 700 creditors and other parties in interest in the bankruptcy cases.  Second, upon entry of the Bid Procedures Order, on December 29, 2021, Trustee filed with the Court and served the "*Notice of Sale, Bidding Procedures, Auction, Sale Hearing and Related Deadlines*" (the "Sale and Auction Notice") (Dkt. 571).[27]  The Sale and Auction Notice, which also was served on over 700 creditors and other parties in interest in the bankruptcy cases, described, among other things, the proposed terms and conditions of the Sale transaction, Bid Procedures and related deadlines, and also included a copy of the Bid Procedures Order and the acquisition "teaser" prepared by Hilco.

Third, on January 4, 2022, Trustee filed Form 6004-2.Notice.Sale, which notice was published on the Court's website under "Current Notice Sales" and served on the ECF list, Bikram Choudhury and his counsel, and all potential secured creditors.  Finally, a copy of this Motion, including the Memorandum of Points and Authorities and all exhibits and declarations filed in connection thereto, together with an amended Form 6004-2.Notice.Sale, are being served in accordance with the Bid Procedures Order on the limited notice list set forth in the Bid Procedures Order.  A copy of this Motion also is available to all qualified bidders in the data room.

## V.    LEGAL ARGUMENT

### A.    The Proposed Sale of Assets Is Proper Under Applicable Law.

A trustee may, pursuant to court order, "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  "The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances."  In re Lahijani, 325 B.R. 282, 288 (B.A.P. 9th Cir. 2005).  To sell property of the estate outside of the ordinary course of business, "there

---

[27] Docket No. 572 is the proof of service filed in connection with Sale and Auction Notice.

must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business… [w]hether the proffered business justification is sufficient depends on the case." In re Walter, 83 B.R. 14, 19–20 (B.A.P. 9th Cir. 1988) (adopting the language of In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986)).

"To confirm a sale, the trustee must establish that: (1) a sound business purpose exists for the sale; (2) the sale is in the best interest of the estate, i.e., the sale price is fair and reasonable; (3) notice to creditors was proper; and (4) the sale is made in good faith." In re Slates, No. BAP EC-12-1168-KIDJU, 2012 WL 5359489, at *11 (B.A.P. 9th Cir. Oct. 31, 2012) (unpublished) (citing In re Wilde Horse Enters., Inc., 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1069 (2d Cir. 1983)). As discussed more fully below, Trustee's proposed sale of the Assets meets each of these requirements.

### 1. Sound business judgment supports the Sale here.

In determining whether the business purpose is justified under § 363(b)(1), bankruptcy courts apply a flexible, case-by-case approach. See Walter, 83 B.R. at 20 ("[T]he bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike."). "Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection." Lahijani, 325 B.R. at 289. See also In re Curlew Valley Assocs., 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) ("[T]he court will not entertain objections to a trustee's conduct of the estate where that conduct involves a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code.").

Here, the facts reflect that Trustee's decision to sell the Assets is supported by sound business judgment. The Assets are the principal assets of the Estates that remain to be administered – resulting in a $700,000 Purchase Price. Itkin Decl., ¶ 63. In addition to the prior sales of real properties and certain collector cars, the Sale of the Assets is important in realizing value for the Estates and its secured creditors, and in paving the way for the conclusion of the administration of the cases that has been pending for a significant amount of time. In addition, Trustee has considered the interest of stakeholders regarding the

Sale and is addressing the issues relating to the distribution of the gross proceeds to claimants with competing interests against the collateral.  To delay closing the Sale would diminish the relevance of such agreements.  Itkin Decl., ¶¶ 64-65.

The Sale also is a culmination of a thorough and exhaustive marketing process.  Buyer has stepped forward and executed the APA to purchase the Assets with a relatively quick closing.  The consummation of the Sale of the Assets within the proposed time frame will maximize the value of the Assets under the circumstances.  Conversely, any further delay would only increase the administrative costs.   Itkin Decl., ¶¶ 67-68.

Based on the foregoing, Trustee submits that a strong business justification exists for the Sale.

### 2. *The proposed Purchase Price is fair and reasonable.*

Whether the sale is in the best interest of the bankruptcy estate requires that the terms of the sale be fair and reasonable, that the property be adequately marketed, and that the sale terms be negotiated in good faith and in an arm's length transaction.  See In re Wilde Horse Enters., Inc., 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); Matter of Phoenix Steel Corp., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987).  Based on these factors, Trustee submits the Sale, in accordance with the Court approved Bid Procedures, meets the foregoing factors.

The Bid Procedures approved by the Court have guarded against invalid offers for the Assets, and has ensured that, in conjunction with the AmEx Settlement and Bodden Distribution Agreement, the Purchase Price being paid is and will generate cash proceeds the Selling Debtors' Estates.  See Itkin Decl., ¶ 70.   Designed to maximize the value of the Assets, the Bid Procedures ensured that the ultimate Purchase Price is an accurate reflection of the Assets' true value based on the best possible price that could be obtained.  Trustee is confident that the marketing and sales process conducted by Hilco has generated the best value for the Assets because not only has Hilco actively marketed the Assets to all known and likely potential purchasers, but the potential bidders were provided an opportunity to submit competitive bids through which the highest or otherwise best bid from all competing qualified bids was selected.  As assurance of value, the bids received were tested through the Auction – with ten (10) bidders participating in the Auction -- consistent with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and

pursuant to the Bid Procedures approved by the Court.  Itkin Decl., ¶¶ 72-73; Kalnit Decl., ¶ 7.  The $700,000.00 Purchase Price is fair based upon the marketing efforts of Hilco and the arm's length negotiation between Trustee and Buyer.  See Itkin Decl., ¶¶ 69, 72 and 74.  Moreover, Buyer is purchasing the Assets "as is," "where is."  See Itkin Decl., Ex. B, pg. 7.

In light of Hilco's robust marketing efforts and the results of those efforts culminating in the APA with Buyer, Trustee believes that proceeding with the Sale is in the best interests of the Estates.

### 3.    Notice is proper.

Trustee must give notice of any sale of property of the Estates. 11 U.S.C. § 363(b)(1).  In the instant matter, Trustee has provided adequate and reasonable notice of the proposed Sale transaction as required by the applicable Bankruptcy Rules 2002(c) and 6004(a), (c), and LBR 6004-1(c).  Not only were all of the Estates' creditors and other parties in interest – over 700 entities – provided over three (3) months' advanced notice of the Sale transaction, including the pertinent terms of the proposed sale via the form APA attached to the Bid Procedures Motion, but the same creditors and parties in interest also were served with a copy of the Bid Procedures Order, the Sale and Auction Notice, and the acquisition opportunity "teaser" prepared by Hilco on December 29, 2021.  Likewise, Trustee published a notice of the Sale via the Court's website on January 4, 2022 by filing Form 6004-2.Notice.Sale with the Court.  Finally, this Motion (including the Memorandum of Points and Authorities and all exhibits and declarations filed in connection therewith) and an amended Form 6004-2.Notice.Sale are being served in accordance with the Bid Procedures Order.  A copy of this Motion also is available to all qualified bidders in the data room.

Based on the foregoing service of the Sale related pleadings, Trustee submits that notice of the Sale Transaction, and all pertinent information relating thereto, is proper and constitutes adequate and reasonable notice.  As a result, Trustee asserts that notice has been properly given.

### 4.    The Sale was negotiated at arms' length.

"Good faith encompasses fair value, and further speaks to the integrity of the transaction," whereas "[t]ypical bad faith or misconduct, would include collusion between the seller and buyer, or any attempt to take unfair advantage of other potential purchasers."  Wilde Horse Enters., Inc., 136 B.R. at 842 (internal quotation marks omitted).  The Sale of the Assets here was negotiated at arms' length utilizing Hilco as

Trustee's sales agent and consultant.  Other than being members in the same community in India, Buyer

has represented under penalty of perjury that he does not have any connection or relationship with Trustee

or with Bikram Choudhury or any of his family members or affiliated entities, or any entities in which any

of the foregoing are invested or serve as officers, directors, managers or consultants.[28]  See Chaudhuri

Decl., ¶¶ 10-11.  The source of funds for the purchase of the Assets is not derived, directly or indirectly,

from any assets or properties of the Estates or proceeds therefrom.  See id., ¶¶ 9-10.  As a result, the Sale

is made in good faith and, as further discussed below, Trustee requests that the Court make a finding that

Buyer is entitled to the protections of § 363(m).

### 5.    The Sale is not subject to Bankruptcy Code § 363(b) and excludes personally identifiable information.

To the extent that the Sale of the Assets includes the sale of certain Documents, the Sale does not

contemplate the sale of personal identifiable information ("PII") and will exclude records that may contain

PII of former students or studio owners.  In this instance, Trustee believes that the requirement of § 363(b)

is not invoked by the Sale on two grounds: (1) Trustee is informed and believes that the Debtors did not

have any form of privacy policy in effect as of the Petition Date; and (2) the information concerning the

Debtors' former students and studio owners stored among the Debtors' books and records do not constitute

PII.  Trustee confirmed with the Debtors' former general counsel that at the time the bankruptcy cases were

commenced, the Debtors did not have a privacy policy in place, let alone one that informs individuals about

prohibitions on the transfer of PII.  Itkin Decl., ¶ 82.  By the plain language of Bankruptcy Code § 363(b),

the absence of a privacy policy negates the requirement for the appointment of a consumer privacy

ombudsman to oversee the Sale.  11 U.S.C. § 363(b)(1).

Second, the records on file concerning the Debtors' former students and studio owners cannot be

considered PII.  For personal information to be considered PII pursuant to § 101(41A), it must be provided

"by an individual to the debtor in connection with obtaining a product or a service from the debtor primarily

for personal, family, or household purposes. . . ."  The definition excludes employee information or

---

[28] Buyer has served as the purchaser of certain vehicles of BYCOI and of the residence of the Choudhury Defendants during this Chapter 7 bankruptcy case.

information shared between businesses and is limited to consumer transactions.[29]  Here, the personal information provided was made primarily for business purposes in order to be certified as a yoga instructor or start a Bikram yoga studio and not to obtain consumer goods or services.  Training for a business opportunity does not change the business purpose of the transaction.  See In re Chrisman, 27 B.R. 648, 649 (Bankr. S.D. Ohio 1982) (obligation to the bank was not a consumer debt even if loan proceeds were actually used for training purposes); Zolg v. Kelly (In re Kelly), 841 F.2d 908, 913 (9th Cir. 1988) (debt incurred for a business venture or with a profit motive does not fall into the category of debt incurred for "personal, family, or household purposes").

Even though there is no PII being sold in this Sale transaction, Trustee will use her best efforts to exclude records that may contain personal information by removing such documents from the storage unit before Closing.  Moreover, if any personal records remain in storage at Closing and are inadvertently transferred to Buyer, the APA provides that Buyer will be responsible for destroying such records and will not use or transfer such private information.  See APA, § 2.1(c).  Based on the foregoing, the Sale is consistent with the Bankruptcy Code's privacy provisions.

**B.    The Sale Should be Approved Free and Clear of All Interests.**

The Sale also meets the requirements for a sale free and clear of Interests.  Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

---

[29] See e.g., Bankruptcy Code § 101(8) definition of "consumer debt" as debt primarily for personal, family or household purposes.

11 U.S.C. § 363(f).  Although only one of the five conditions of § 363(f) needs to be satisfied, Trustee believes she is able to satisfy the second, fourth and fifth requirements of § 363(f).

Here, both Bodden and AmEx have settled with Trustee regarding their secured claims and have consented to the Sale of the Assets as part of their respective settlement agreements.  Even absent such consent (which is not the case with respect to Bodden and AmEx), Trustee may sell free and clear of liens against the Assets pursuant to § 363(f)(5) because the secured creditors could be compelled to be paid from the Sale proceeds to the extent of their secured claims if the Sale proceeds are, in fact, sufficient to render all or part of their claims secured.  Pursuant to the AmEx Settlement and the Bodden Distribution Agreement, both AmEx and Bodden have agreed to payment from the Sale proceeds in full and final satisfaction of their secured claims, with the remaining balance of their claims treated as unsecured claims.

Trustee believes that only AmEx and Bodden have allowed secured interests in the Assets. Although Starke purports to have filed a writ of attachment on the IP Assets of BYCOI, such purported security interest is flawed and invalid because Starke failed to levy against the assets of BYCOI under her writ of attachment pursuant to CCP § 488.500, *et seq.*, in order to establish an attachment lien.  With respect to BCYI and BI, Starke didn't even file a writ of attachment, much less have an attachment lien.

Property held by a corporation is subject to attachment only if there is a statutory method of levy available for the property as required by CCP § 487.010(a) and (b).  See Senate Legislative Comment to CCP § 487.010 (1974) ("These subdivisions have been revised in part to make clear that property for which a method of levy is not provided is not subject to attachment, e.g., copyrights and patents.").  Indeed, none of the provisions of CCP § 488.300 *et seq.*, provides a method of levy for intellectual property—may it be for copyrights, patents or trademarks.  Accordingly, Starke does not have an attachment lien against any IP owned by BYCOI by virtue of the writ of attachment.

Likewise, CCP § 697.530, which creates a judgment lien on personal property through a notice of judgment lien, excludes intellectual property rights from the list of properties for which a judgment lien can attach.  Having no means of levying against the Selling Debtors' intellectual property under state law

1  and failing to record such lien with the appropriate federal agency such as the Copyright Office,[30] Starke

2  does not have an enforceable lien against any of the Selling Debtors' intellectual property, and as such,

3  Starke's claim, if any, is unsecured.  Given the foregoing deficiencies, Trustee has commenced three

4  adversary proceedings against Starke seeking a disallowance of her secured claim against the BYCOI,

5  BCYI and BI Estates.

6      Trustee needs only to show that there is an objective basis for either a factual or legal dispute as to

7  the validity of the interest without the court resolving the underlying dispute.  In re Octagon Roofing, 123

8  B.R. 583, 590 (Bankr. N.D. Ill. 1991).  "Under this standard, a court need not determine the probable

9  outcome of the dispute, but merely whether one exists." Id.  Accordingly, Trustee believes that AmEx and

10  Bodden are the only creditors with valid security interests in the Assets.  At best, there is a "bona fide"

11  dispute as to the validity, extent, and priority of Starke's security interest to allow a sale free and clear of

12  her purported lien pursuant to 11 U.S.C. § 363(f)(4).  However, out of an abundance of caution, Trustee

13  will not disburse to either Starke or Bodden any Sale proceeds of any IP Assets owned by BYCOI that

14  Starke purports to assert an Interest in until such time as the validity and priority of Starke's Interest is

15  determined by further Court order.  Rather, Trustee shall place any such disputed proceeds in reserve

16  pending resolution of Starke's disputed lien.

17      Finally, parties who do not object to the sale of estate property free and clear of their interests also

18  are deemed to have consented to such relief provided that adequate and proper notice is given.

19  FutureSource LLC v. Reuters Ltd., 312 F.3d 281, 285 (7th Cir. 2002) ("It is true that the Bankruptcy Code

20  limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those

21  conditions is the consent of the interest holder, and lack of objection (provided of course there is notice)

22  counts as consent.").  All parties asserting claims against the Assets have been provided notice of, and an

23  opportunity to object to, the Sale.  Absent objection, each such party will be deemed to have consented to

24  the Sale. Id.; In re Christ Hosp., No. CIV.A. 14-472 ES, 2014 WL 4613316, at *14 (D.N.J. Sept. 12, 2014)

25  ("Silence by affected claim holders may constitute consent for purposes of section 363(f)(2).").  Here,

26

27  [30] See In re World Auxiliary Power Co., 303 F.3d 1120, 1128 (9th Cir. 2002) (When a copyright has been registered, a security interest can be perfected only by recording the transfer in the Copyright Office.)

28

AmEx and Bodden have already consented to the Sale transaction as part of their respective settlement agreements, and to the extent that Starke does not raise an objection to the Sale free and clear of her Interests, the requirements of Bankruptcy Code §363(f)(2) have been satisfied.

### C.    Buyer Should be Afforded § 363(m) Protection.

Section 363(m) of the Bankruptcy Code protects the validity of a sale from the "reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property" so long as the buyer "purchased or leased such property in good faith" and the appellant fails to obtain a stay of the sale.  11 U.S.C § 363(m).  "Though the Bankruptcy Code and Rules do not provide a definition of good faith, courts generally have followed traditional equitable principles in holding that a good faith purchaser is one who buys 'in good faith' and 'for value.'"  In re Ewell, 958 F.2d 276, 281 (9th Cir. 1992) (citing In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 147 (3rd Cir. 1986).  Lack of good faith may be shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  Id. (quoting In re Suchy, 786 F.2d 900, 902 (9th Cir. 1985)); see also In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc., 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987) (good faith requirement "focuses principally on the element of special treatment of the debtor's insiders in the sale transaction").

Here, Buyer is a good faith purchaser entitled to the protections of 11 U.S.C. §363(m).  Trustee and Buyer have entered into the APA without collusion, in good faith and through extensive arm's length negotiations.  Itkin Decl., ¶ 77.  The proposed sale is not predicated on fraud or collusion.  Chaudhuri Decl., ¶¶ 15-18.  Buyer has not received any special treatment or consideration.  Itkin Decl., ¶¶ 77-78.  Indeed, Buyer and Trustee have engaged separate counsel and other professional advisors to represent their respective interests in the negotiation of the APA and in the sale process generally.  In addition, Hilco is an independent professional retained by Trustee for the purpose of exploring strategic alternatives for and marketing of the Assets.  Itkin Decl., ¶ 79.  The Bid Procedures further avoided any party from exerting undue influence over the process or manipulating the sale price.  Itkin Decl., ¶ 80.

To the best of Trustee's knowledge, information and belief, no party has engaged in any conduct that would cause or permit Buyer's bid to be set aside under section 363(m) of the Bankruptcy Code.  Based

1  upon the foregoing, Trustee submits that the Motion satisfies the standards for approval of a sale of Assets

2  outside of the ordinary course of business pursuant to 11 U.S.C. § 363(b), and good cause exists to make a

3  finding that Buyer is purchasing the Assets in "good faith" pursuant to 11 U.S.C. § 363(m). Accordingly,

4  Trustee seeks a good faith determination for Buyer at the Sale Hearing.

5       **D.     There are No Tax Consequences that Should Preclude the Sale.**

6       Because of the financial condition of the Estates and the nature of the Assets being sold, Trustee

7  does not believe, based on consultations with her accountants, that there will be adverse tax consequences

8  as a result of the Sale, but rather some nominal taxes at most; however, Trustee will update the Court if

9  there is any change in this analysis.  Itkin Decl., ¶ 89.

10      **E.     Waiver of Bankruptcy Rule 6004(h) is Appropriate Here.**

11      Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property …

12  is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Trustee

13  requests that Sale Order be effective immediately upon entry by providing that the 14-day stay under

14  Bankruptcy Rule 6004(h) is waived.

15      The purpose of Bankruptcy Rules 6004(h) is to provide sufficient time for an objecting party to

16  appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

17  Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should

18  "order otherwise" and eliminate or reduce the 14-day stay period, Collier suggests that the 14-day stay

19  period should be eliminated to allow a sale or other transaction to close immediately "where there has been

20  no objection to the procedure."  Collier on Bankruptcy, ¶ 6004.11 (Alan N. Resnick & Henry J. Sommer

21  eds., 16th ed.).  Furthermore, Collier provides that if an objection is filed and overruled, and the objecting

22  party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually

23  necessary to file such appeal.  Id.

24      To preserve the value of the Assets and limit the costs of administering and preserving such Assets,

25  it is critical that Trustee close the Sale as soon as possible after all closing conditions have been achieved

26  or waived.  Trustee needs to have the ability to move as expeditiously as possible in order to avoid incurring

27

28

additional administrative expenses. It is in the interest of the Estates' creditors that the sale be consummated without delay upon the entry of an order granting the Motion and the Sale.

Trustee is likewise not aware of any prejudice that would be caused by the Court's waiver of Bankruptcy Rule 6004(h). Trustee has caused a notice of the Sale to be served upon all of the lienholders and those claiming an interest in the Assets known to Trustee, all creditors and other parties in interest affected by the Sale; and all governmental units, including taxing authorities who have, or as a result of the Sale of the Assets may have, claims against the Estates in connection with the Sale. Any person having any objection to the Motion has been afforded a reasonable opportunity to raise any objections or concerns.

**VII.    CONCLUSION**

Trustee respectfully requests that the Court enter the Sale Order, substantially in the form attached hereto as <u>Exhibit A</u>: (i) authorizing Trustee to enter into, and approving the terms of, the APA attached hereto as <u>Exhibit B</u>; (ii) approving the Sale of the Trustee's and any applicable Selling Debtors' respective right, title and interest in the Assets to Buyer free and clear of all Interests pursuant to 11 U.S.C. § 363(f), provided that the net proceeds of any IP Assets owned by BYCOI that Starke purports to assert an Interest in will not be disbursed to either Starke or Bodden until such time as the validity and priority of Starke's Interest is determined by further order of the Court; (iii) authorizing Trustee to pay the Settlement Payments and Sale Costs from the Sale proceeds at Closing or as soon as practicable thereafter; (v) authorizing Trustee to take any and all steps reasonably necessary to effectuate the Sale and related transactions; (vi) finding that Buyer is a good faith purchaser under 11 U.S.C. § 363(m); (vii) approving a waiver of the stay provision under Bankruptcy Rule 6004(h); and (viii) and granting all other appropriate relief as the Court deems just and proper.

DATED:  February 14, 2022                    SKLAR KIRSH, LLP


                                             By:    ___/s/ Lovee D. Sarenas_____
                                                    Lovee Devela Sarenas
                                                    Attorneys for Chapter 7 Trustee Robbin L. Itkin

1

## DECLARATION OF ROBBIN L. ITKIN, AS TRUSTEE

2      I, Robbin L. Itkin, hereby declare as follows:

3      1.      I am the duly appointed, qualified and acting Chapter 7 Trustee for the bankruptcy

4 estates ("Estates") of Debtor Bikram's Yoga College of India, LP ("BYCOI") and its related debtor

5 affiliates (collectively, "Debtors").

6      2.      I have personal knowledge of the matters discussed below, and if called as a witness,

7 I could and would competently testify thereto.

8      3.      This declaration is being submitted in support of *Trustee's Motion for an Order: (I)*

9 *Approving the Sale of Certain Assets Outside the Ordinary Course of Business Free and Clear of*

10 *All Liens, Claims, Interests and Encumbrances; (II) Determining that Buyer is a Good Faith*

11 *Purchaser Under 11 U.S.C. § 363(m); and (III) Granting Related Relief* (the "Sale Motion"), to

12 which this declaration is attached.[7]

13      **A.      Overview of the Proposed Sale to the Successful Bidder at Auction**

14      4.      By the Sale Motion, I seek Court approval of the terms and conditions of the APA to

15 Dr. Kali P. Chaudhuri ("Buyer"), who bid the highest and otherwise best offer for the Assets (at the

16 aggregate Purchase Price of $700,000.00) generated through the marketing and sales process

17 previously approved pursuant to this Court's Bid Procedures Order.

18      5.      As set forth in Exhibit 2.2 to the APA, Buyer allocated $400,000 of the Purchase

19 Price to the IP Assets and $300,000 of the Purchase Price to the Adversary Action Assets.  The

20 Purchase Price for the IP Assets was  allocated by Buyer equally among the four Selling Debtors

21 ($100,000 to each such Selling Debtor).  With respect to the purchase of the IP Assets of BYCOI,

22 Buyer allocated 50% of the $100,000 allocated Purchase Price to each of the two IP Assets (*i.e.*,

23 $50,000 to the domain name being sold and $50,000 to the copyright being sold).

24      6.      The Assets that are the subject of the proposed Sale are specifically identified in the

25 APA, but generally consist of the Selling Debtors' rights and interests in and to certain IP, Adversary

26 Actions and Documents related thereto.  Specifically, the IP assets are comprised of specific

27 _____

28 [7] Capitalized terms used that are not defined in this declaration shall have the same meaning ascribed to them in the Sale Motion.

trademarks, copyrights and domain names developed and utilized by certain Selling Debtors (as specifically identified in the Exhibits attached to the APA) in connection with BYCOI's yoga teacher training business.

7.    In addition, I commenced the following Adversary Actions against various defendants on November 8, 2019, all of which are part of the Assets being sold to Buyer: (i) *Itkin v. Organizacion Ideal dba Princess Mundo Imperial Hotel, et al.* (19-ap-01066-DS); (ii) *Itkin v. Smana Hotel Al Raffa and Rajesh Baheti* (9:19-ap-01067-DS); (iii) *Itkin v. Zen Co., Ltd.* (9:19-ap-01068-DS); (iv) *Itkin v. Elo, et al.* (9:19-ap-01069-DS); (v) *Itkin v. Shigenaga, et al.* (9:19-ap-01070-DS); (vi) *Itkin v. Sumanta Bhattachriya, et al.* (9:19-ap-01071-DS) ; and (vii) *Itkin v. Bikram Choudhury* (9:19-ap-01075-DS).

8.    The Adversary Actions being sold exclude the adversary actions previously settled with the Choudhury Defendants.

9.    In addition,  pursuant to Section 2.1(b) of the APA, I may, in my sole discretion, remove the Shigenaga Adversary Action from the Assets being sold and designate it as an Excluded Adversary Action at or prior to Closing.  Subject to Court approval of the settlement agreement dismissing the Shigenaga Adversary Action, I plan to designate the Shigenaga Adversary Action as an Excluded Adversary Action.

10.    I am also transferring to Buyer all Documents related to the Assets that are currently located in a storage unit maintained by me on behalf of the Estates.

11.    As set forth in the APA, the proposed Sale transaction to Buyer is on an "as-is, where-is" basis with all faults and with no representations or warranties of any kind.  Buyer was solely responsible for conducting his own, independent due diligence with respect to the Assets, including, without limitation, the existence and validity of any of the IP and the potential recoveries from the Adversary Actions.

12.    The other salient terms of the APA are as follows:[8]

---

[8] The following is intended only as a summary.  Parties should refer to the actual APA for a complete understanding of all terms and conditions of the Sale to Buyer.  The terms and conditions of the APA are incorporated herein in their entirety by this reference, and failure to

| **PROVISION** | **SUMMARY** |
|---|---|
| Purchase Price (APA, §2.2, Exhibit 2.2 to the APA) | $700,000, which Buyer allocated $400,000 of the Purchase Price to the IP Assets and $300,000 of the Purchase Price to the Adversary Actions, as further set forth in Exhibit 2.2 to the APA |
| Sale to Insider | No. See Chaudhuri Decl., ¶¶ 10-11 |
| Contingencies to Closing (APA, §4.1) | None.  Buyer waives any and all contingencies to consummation of the Sale transaction, including, without limitation, all due diligence and financing contingencies. |
| Releases | None |
| Closing and Other Deadlines (APA, §4.2) | The Closing shall occur on or before two (2) business days following the date on which all the closing conditions set forth in Sections 4.3 and 4.4 of the APA have been satisfied, but in any event, by no later than March 11, 2022 or a later date agreed upon in writing by the Parties. |
| Deposit (APA, §§1.3, 2.3, 5.1, 5.2 and 5.3) | $70,000.00 (10% of the Purchase Price).  The Deposit is non-refundable if the APA is terminated as a result of a material breach by Buyer pursuant to Section 5.1(ii) of the APA, or the Closing fails to occur on or before March 11, 2022 (or a later date agreed upon in writing by the Parties) through no fault of Seller. |
| Interim Agreement with Buyer | None |
| Tax Exemption (APA, §7.3) | N/A.  Buyer shall pay, to the extent applicable: (i) all applicable document recording charges, if any; (ii) all transfer taxes and other fees, if any, arising from or resulting from the transactions contemplated hereby; and (iii) all costs and expenses related to Buyer's investigation, transfer and assignment of the Assets. |
| Record Retention (APA, §2.1(c)) | N/A.  The Assets include all Documents relating to the Assets being sold, and Buyer is solely responsible for any and all storage costs after Closing and for the removal or disposal of such Documents, at Buyer's sole cost and expense, and Trustee shall have no further liability with respect thereto on and after Closing.[9]  Trustee has, or prior to Closing will, remove all Documents from the storage |

include any specific term or condition in this summary shall not be deemed a waiver of such provision.  In the event of any inconsistencies between the summary provided herein and the APA, the terms of the APA shall govern.

[9] Notwithstanding the foregoing, if, after the Closing, Buyer discovers any books, records, documents and other files being held in storage that do not relate to the Assets (the "Other Documents"), Buyer shall immediately notify the Seller and arrange for the prompt return of such Other Documents, or at the Trustee's direction, the prompt destruction of the Other Documents, all at the Buyer's sole cost and expense.  In the event Seller inadvertently turns over any Documents in storage that contain personal or confidential information of any employee or other person affiliated with the Bikram Yoga facilities and program to Buyer, Buyer agrees not to utilize or disclose such information to any third-parties and to destroy such information upon its discovery.

| | facility that are needed to administer the Estates, any items or other memorabilia (including, without limitation, photographs, letters and other correspondence), and all Documents or any part thereof that contain confidential or personal identifiable information. Any such items or Documents removed from storage in advance of the Closing are not included as part of the Assets being sold. |
|---|---|
| Sale of Avoidance Actions (APA, §2.1(b)) | Yes, the Adversary Actions are part of the Assets being sold; provided, however, that Trustee may, in her sole discretion, remove the Shigenaga Adversary Action from the Assets being sold and designate it as an Excluded Adversary Action on or prior to Closing. |
| Requested Findings as to Successor Liability | N/A |
| Sale Free and Clear of Liens (APA, §2.4) | Except with respect to obligations and liabilities relating to and arising on and after the Closing, Buyer is not assuming any liability, debt or obligations of Seller, Selling Debtors, or their bankruptcy Estates attributable to the Assets prior to Closing, and Buyer shall have no obligation or responsibility therefor.  All of the Assets being sold shall be sold and assigned by Seller to Buyer free and clear of all liens and interests, in accordance with 11 U.S.C. § 363(f). |
| Credit Bid | None |
| Relief from Bankruptcy Rule 6004(h) | Yes (see legal discussion below). |

**B.    The Debtors' Bankruptcy Cases**

13.    Debtors commenced their respective chapter 11 bankruptcy cases on or about November 9, 2017.

14.    The Estates are administered jointly under BYCOI's bankruptcy case pursuant to this Court's order [see Dkt. No. 11].

15.    On April 4, 2018, I was appointed to serve as the chapter 11 trustee for the Estates.

16.    On September 28, 2020, the bankruptcy cases were converted from chapter 11 to chapter 7 [see Dkt. No. 436].  Thereafter, I was appointed to serve as the chapter 7 trustee for the Debtors' cases and continue to serve in such capacity as this time [see Dkt. No. 441].

17.    My administration of these chapter 7 cases continues as I prosecute the pending avoidance actions for fraudulent transfers and other causes of action, marshal and monetize assets of the Estates, analyze claims against the Debtors, and negotiate with creditors and defendants in order to resolve the many issues involving the Estates and the Estates' assets.

18.     To date, I believe that I have achieved considerable progress in resolving disputes and lining up what is necessary to accomplish the Sale contemplated in the Sale Motion and resolve these cases by taking, inter alia, the following actions in these cases:

a.  I have settled three of the pending adversary proceedings, specifically, those against the Choudhury Defendants.  In connection therewith, I sold the Choudhury Defendants' residence, which sale was approved by the Court on April 5, 2021 [Dkt. No. 492].

b.  I recovered and sold various luxury vehicles owned by the Estates and negotiated a distribution agreement with various lienholders to permit an orderly sale of those assets.

c.  I entered into the Bodden Distribution Agreement with Bodden with respect to her judgment lien against the Estates.  This compromise is crucial as it enables the Estates to move forward with the sale of the remaining assets, resolves the parties' issues with respect to the treatment of Bodden's claims (including the validity and extent of her asserted secured claims), and provides for an orderly distribution of any Sale proceeds from the Assets.

d.  On August 10, 2021, I filed the DJ Motion in the adversary case entitled *Robbin L. Itkin v. Bikram Choudhury* (Adv. No. 9:19-ap-01075 DS).  The DJ Motion establishes Bikram Choudhury's liability and reduces to judgment Trustee's claims arising from a multitude of fraudulent transfers of assets of the BYCOI Estate.  No opposition was received with respect to the DJ Motion.  On January 7, 2022, I submitted a Supplemental Brief in support of the DJ Motion pursuant to the Court's order.  The entry of the default judgment is pending.

e.  I reached the AmEx Settlement with AmEx, which has asserted a senior secured lien on the domain name owned by BYCOI that is part of the Assets being sold pursuant to the Sale Motion.  The AmEx Settlement provides, in relevant part, that the parties will divide the proceeds from the Sale of the domain name equally after payment of all applicable Sale Costs allocated to the sale of the domain

name.  Any deficiency claim is treated as an unsecured claim against the BYCOI Estate.

f. On February 7, 2022, I commenced adversary proceedings in each of the bankruptcy cases of BYCOI, BCYI and BI against Starke pursuant to Bankruptcy Rules 3001(c), 3007, 7001(2) and (9) and Bankruptcy Code §§ 502(b)(7), 506(d), 724(a) and 726(a)(4), seeking disallowance of her asserted secured claim against the three Selling Debtors and declaratory relief that Starke's proofs of claim are *prima facie* invalid because Starke failed to demonstrate a properly perfected and enforceable lien against any asset of the three Estates on account of the judgment she obtained against Bikram Choudhury, individually, and the Selling Debtors BYCOI, BCYI and BI.  Absent a viable secured claim against the BYCOI, BCYI and BI Estates, Starke does not have a lien on any of the Assets.

g. On or about February 11, 2022, I reached a settlement agreement with Monica Shigenaga, CocoJor Hawaii, LLC and Jadoo, LLC that provides for the dismissal of the Shigenaga Adversary Action, including dismissal of the counterclaim asserted against the Estates in that action.  I plan to shortly file a motion seeking Court approval of the parties' proposed settlement.

19.    With the foregoing progress made to date in the chapter 7 cases, I believe that I am in a position to sell the Assets to Buyer and bring the administration of these Estates to its conclusion.

**C.    Marketing Efforts to Sell the Assets**

20.    I had engaged in discussions with potential buyers for some of the Assets during the pendency of the Chapter 7 cases and prior to the start of the Court approved sales process for the Assets.  None of those efforts, however, resulted in consummation of a sale.

21.    In October 2021, I retained Hilco as the Estates' sale consultant and agent to identify additional potential buyers for some or all of the Assets, and to otherwise facilitate the marketing and sale of the Assets to third parties.

22.    Hilco's retention was approved by order of the Court entered on November 9, 2021 [Dkt. No. 548].

23.    On December 27, 2021, the Court entered the Bid Procedures Order [Dkt. No. 570] approving, among other things, certain Bid Procedures that established key dates, times and a process for the Sale of the Assets.

24.    Notwithstanding the limited universe of potential acquirers for these types of Assets, I believe that the Bid Procedures and sales process approved in the Bid Procedures Order has allowed my advisors and me to fully market, evaluate and select the highest and best price for the Assets.

25.    On or about December 29, 2021, I caused the notice of the Sale, the Bid Procedures Order and a copy of Hilco's marketing teaser to be mailed to over 700 creditors and other interested parties in the cases, including current and former Bikram related studio owners.

26.    A true and correct copy of the APA entered into between Buyer and me is attached to the Sale Motion Exhibit B.

27.    A true and correct copy of the redlined version of the APA showing changes made for the sale to Buyer to the form APA that was approved by the Court for use in the marketing and Sale process and attached to the Bid Procedures Motion (Dkt. 553) is attached to the Sale Motion as Exhibit C.

**D.**    **Secured Claims Asserted Against the Assets Being Sold**

28.    To the best of my knowledge, the follow chart summarizes the liens and security interests (in order of purported priority) that have been asserted against the Selling Debtors' Estates as of the Petition Date:

| Selling Debtor | Creditor | Recording Date | Amount | Nature of Lien | Proof of Claim |
|---|---|---|---|---|---|
| BYCOI | AmEx | 11/25/2015 | $635,158.88 | Recorded UCC-1 Financing Statement | POC 3-1 |
| | Starke | None, but Writ of Attachment Filed 2/16/2016 | $370,011.21[10] | Disputed Judgment Lien | POC 10-1 |
| | Bodden | 7/5/2016 | $6,767,519.44 | Judgment Lien | POC 6-2 |
| BCYI | Bodden | 7/5/2016 | $6,689,951.00 | Judgment Lien | POC 3-1 |
| | Starke | None | $5,174,557.30 | Disputed Judgment Lien | POC 4-1 |
| BI | Bodden | 7/5/2016 | $6,689,951.00 | Judgment Lien | POC 4-1 |
| | Starke | None | $5,174,557.30 | Disputed Judgment Lien | POC 5-1 |
| ITR | Bodden | N/A | $6,689,951.00 | Judgment Lien | POC 2-1 |

29.     To the best of my knowledge, Starke did not file a writ of attachment against BCYI or BI, much less any form of lien on their Assets, nor did she attach any such documents to her proofs of claim. As such, I believe that Bodden's security interests are senior to Starke's (if any) and Starke is not entitled to any distributions from the Sale proceeds allocated to BCYI and BI.

30.     AmEx has a first priority security interest in a domain name owned by BYCOI that is part of the Assets being sold.

31.     AmEx's secured claim arises from a Security Agreement signed by Bikram Choudhury on behalf of BYCOI dated November 23, 2015. The Security Agreement granted a security interest to AmEx in, among other things,

> "all trademarks, trade names, service marks, logos and other source of business identifiers, and all registrations, recordings and applications with the USPTO and all renewals, reissues and extensions thereof . . . and any and all proceeds of [ ] the foregoing, including insurance proceeds or other proceeds from the sale. . . ."

32.     The Security Agreement excluded from the Collateral "any real estate, motor vehicles, household furniture and fixtures, and any other goods for personal, family or household use" and omitted any copyrights of BYCOI.

---

[10] The claim amount is based on the Writ of Attachment that mentions BYCOI but was not recorded against it.

4894-1136-9230.5

33.     AmEx recorded a UCC-1 Financing Statement on November 25, 2015 asserting a lien on assets of BYCOI.

34.     Pursuant to the Amex Settlement [Dkt. No. 566], the Court approved the parties' compromise with respect to the treatment of AmEx's claim against the Assets owned by BYCOI. In accordance with the AmEx Settlement, AmEx agreed to carve-out a portion of its allowed recovery from the sale of the Estates' Assets to pay over to me for the benefit of the Estates, and agreed to take a partial distribution equal to 50% of the net sale proceeds of the Sale of the BYCOI domain name after payment of Sale Costs incurred in marketing, selling and consummating the sale of the BYCOI domain name in full and final satisfaction of its allowed secured claim against the BYCOI Estate.  Any deficiency claim is treated as an unsecured claim to share pro rata with other unsecured creditors of the BYCOI Estate.

35.     Bodden asserts a secured judgment lien against the Selling Debtors BYCOI, BCYI, BI and ITR.

36.     Although I initially disputed Bodden's asserted liens on certain of the Assets, we resolved our disputes and entered into the Bodden Distribution Agreement, which the Court approved pursuant to an order entered on December 7, 2021 [Dkt. No. 560].

37.     In accordance with the Bodden Distribution Agreement, there is a carve-out of Bodden's asserted secured claim on the IP Assets for the benefit of the Estates, and Bodden agreed to take a partial distribution from the Sale proceeds, after payment of applicable Sale Costs and any senior liens, as follows: (i) 30% of the net proceeds from the sale of any IP Assets owned by the Selling Debtors; and (ii) 10% of the net proceeds from the sale of the Adversary Actions.

38.     These agreed payments to Bodden, in addition to the funds that Bodden has previously received from the Estates pursuant to prior Court-approved agreements I entered into with Bodden, are in full and final satisfaction of Bodden's secured claim, and any deficiency claim is treated as one aggregate unsecured claim against the Estates.

39.     No creditor, other than Bodden,  is entitled to share in any proceeds from the Sale of the Adversary Actions.

40.     Starke filed proofs of claim erroneously asserting a secured claim in the amount of $5,174,557.30 against the BYCOI, BCYI and BI Estates purportedly arising from a state court judgment she obtained against the following judgment debtors: Bikram Choudhury, individually, and the Selling Debtors BYCOI, BCYI and BI (collectively, "Judgment Debtors"), who allegedly are jointly and severally liable under a wrongful termination lawsuit.

41.     The proofs of claim filed by Starke are identical in amount, assert the same judgment against the Judgment Debtors as the underlying basis for the claim, and seek 10% interest from the date of judgment to the Petition Date.

42.     On February 7, 2022, the Trustee commenced three adversary proceedings against Starke objecting to Starke's asserted secured claim against BYCOI, BCYI and BI.

43.     The complaints seek disallowance of Starke's asserted secured claims against the three Selling Debtors and declaratory relief that Starke's proofs of claim are *prima facie* invalid in that (1) Starke failed to submit and show evidence of an enforceable lien against any asset of the three Estates on account of the judgment, particularly against the IP of the three Selling Debtors; and (2) her claim, which is based on damages arising from the termination of her employment with BYCOI, must be reduced to an unsecured claim for $350,000.00 pursuant to Bankruptcy Code § 502(b)(7).

44.     Absent a *prima facie* valid secured claim, I believe that Starke does not have a lien for purposes of Bankruptcy Code § 363(f).

**E.     The Sale Costs Incurred**

45.     A true and correct summary of the estimated Sale Costs are attached to the Motion as Exhibit D.

46.     The Sale Costs are estimates based on amounts obtained to date and are subject to my receipt of final invoices.  In addition, there may be additional Sale Costs incurred prior to Closing, including costs associated with removal of Documents prior to the Closing from the storage unit.

47.     The estimated Sales Costs, in the aggregate to date, are approximately $75,880.00, and include:

a.  $60,000 in the aggregate on account of Hilco's commission and reasonable and verified out-of-pocket costs and expenses incurred by Hilco (capped at $5,000), all as authorized pursuant to the Hilco Retention Order.

b.  $4,055 in the aggregate on account of IP counsel's flat fee and costs incurred in connection with the successful prosecution of the UDRP action on behalf of the ITR Estate as authorized by the Court pursuant to SBG&B' retention order.

c.  Other costs of sale in the aggregate amount of $11,825 incurred in connection with the marketing of the Assets and the Sale process, including, without limitation, court reporter and zoom operator expenses for the Auction, retrieval and reproduction of documents for the Data Room, copying (which was charged at $0.06 per page) and postage costs relating to service of the Sale related pleadings, and preservation of IP rights.

48.    These Sale Costs, some of which have already been paid, but most of which remain unpaid, are to be deducted from the Sale proceeds before making any distributions under the AmEx Settlement and the Bodden Distribution Agreement.

49.    In allocating the Sale Costs among the various Selling Debtors, to the extent that a certain expense is attributable to a particular Asset of a Selling Debtor being sold, such expense is allocated in whole to that Selling Debtor and, where necessary for determination of sale proceeds per Asset for lien purposes, to the particular relevant Asset of such Selling Debtor being sold.  To the extent that an expense is attributable to the Assets of all four Selling Debtors, each Selling Debtor is responsible for its ¼ share of the cost incurred.

50.    By the Sale Motion, I propose to pay the Sale Costs set forth in Exhibit D to the Motion, all of which were actual and necessary expenses incurred for an effective and orderly Sale of the Assets and the efficient administration of the Estates, in the estimated amount of $75,880.00, to the applicable vendor from the Sale proceeds at Closing or as soon as reasonably practicable thereafter, without further application to or approval of the Court.

**F.**    **Allocation of the Purchase Price and Proposed Distributions to AmEx and Bodden**

51.    The following is a summary of the aggregate net proceeds expected to be received by the Estates from the Sale:

| SUMMARY OF NET PROCEEDS TO ESTATES FROM SALE | |
| --- | --- |
| Total Gross Sale Proceeds for Estates' Assets | $700,000.00 |
| Minus Aggregate Estimated Sale Costs | ($75,880.00) |
| Minus Aggregate Payments to Bodden | ($105,614.69) |
| Minus Payment to AmEx | ($21,688.02) |
| **Total Net Proceeds to Estates at Closing** | **$496,817.29** |
| BYCOI Reserve for Disputed Interests | ($65,064.05) |

52.    I estimate that the aggregate payment to Bodden from the proceeds of the Sale at Closing pursuant to the Court approved Bodden Distribution Agreement is $105,614.69, and could be as high as $125,133.91 (*i.e.*, increased by an additional $19,519.22 payable from the BYCOI reserve account with the remaining $45,544.83 in reserve released to the BYCOI Estate) if Starke's purported lien on the IP Assets owned by BYCOI is disallowed.

53.    I estimate that the aggregate payment to AmEx from the proceeds of the Sale at Closing pursuant to the Court approved AmEx Settlement is $21,688.02.

54.    I propose to make the Settlement Payments from the Sale proceeds, after deducting the applicable Sale Costs from the appropriate Selling Debtor, to AmEx and Bodden (subject to the reserves referenced above)  in accordance with this Court's prior orders approving the AmEx Settlement and Bodden Distribution Agreement, without further application to or approval of the Court as follows (subject to the final Sale Costs):

| Type of Asset Sold | Selling Debtors | Creditors | Allocated Net Proceeds of Sale (after Sale Costs) | Allocated Net Proceeds to Creditors | Allocated Net Proceeds to Estates |
|---|---|---|---|---|---|
| Adversary Actions | BYCOI | Bodden | $277,978.44 | $27,797.84 | $250,180.60 |
| IP | | | | | |
| | BCYI | Bodden | $87,820.50 | $26,346.15 | $61,474.35 |
| | ITR | Bodden | $83,748.50 | $25,124.55 | $58,623.95 |
| | BI | Bodden | $87,820.50 | $26,346.15 | $61,474.35 |
| | BYCOI (domain name Asset) | Amex | $ 43,376.03 | $21,688.02 | |
| | | Starke/Bodden | $21,688.02 | Disputed/Reserved | |
| | BYCOI (copyright Asset) | Starke/Bodden | $43,376.03 | Disputed/Reserved | |
| **Total BYCOI Reserves** | | | **$ 65,064.05** | | |
| **Total (Excluding the BYCOI Reserves)** | | | | | **$431,753.25** |

56.     After the payment of the Sale Costs and Settlement Payments, the net proceeds will be allocated to the Selling Debtors' Estates as follow (again subject to the actual Sale Costs):

| ALLOCATION OF NET PROCEEDS TO ESTATES | | |
|---|---|---|
| **Estate** | **Net Proceeds** | **Held in Reserve** | **Total** |
| BYCOI | $250,180.60 | $65,064.05 | $315,244.64 |
| BCYI | $61,474.35 | | $61,474.35 |
| ITR | $58,623.95 | | $58,623.95 |
| BI | $61,474.35 | | $61,474.35 |
| **TOTAL** | **$431,753.25** | **$65,064.05** | **$496,817.29** |

**G.     Notice of the Sale and the Sale Motion**

57.     In connection with the Bid Procedures Motion that was filed in late November 2021, I caused to be served notice of the proposed Bid Procedures, including a copy of the form APA, to over 700 creditors and other parties in interest in the bankruptcy cases.

58.     Upon entry of the Bid Procedures Order, on December 29, 2021, and in accordance therewith, I caused to be filed with the Court and served the Sale and Auction Notice [Dkt. 571].

59.     The Sale and Auction Notice, which also was served on over 700 creditors and other parties in interest in the bankruptcy cases, described, among other things, the proposed terms and

4894-1136-9230.5

conditions of the Sale transaction, Bid Procedures and related deadlines, and also included a copy of the Bid Procedures Order and the acquisition "teaser" prepared by Hilco.

60.      On January 4, 2022, I caused to be filed Form 6004-2.Notice.Sale, which notice was published on the Court's website under "Current Notice Sales" and served on the ECF list, Bikram Choudhury and his counsel, and all potential secured creditors.

61.      A copy of the Sale Motion, including the Memorandum of Points and Authorities and all exhibits and declarations filed in connection thereto, together with an amended Form 6004-2.Notice.Sale, will be served in accordance with the Bid Procedures Order on the limited notice list set forth in the Bid Procedures Order.

**H.      Additional Factual Support for the Sale Transaction**

62.      I believe that a strong business justification exists for the Sale to Buyer.

63.      The Assets are the principal assets of the Estates that remain to be administered – resulting in a $700,000 Purchase Price.

64.      In addition to the prior sales of real properties and certain collector cars, the Sale of the Assets is important in realizing value for the Estates and its secured creditors, and in paving the way for the conclusion of the administration of the cases that has been pending for a significant amount of time.

65.      I have considered the interest of stakeholders regarding the Sale and I am addressing any issues relating to the distribution of the gross proceeds to claimants with competing interests against the collateral.  In my opinion, to delay closing of the Sale would diminish the relevance of such agreements.

66.      The Sale also is a culmination of a thorough and exhaustive marketing process.

67.      Buyer has stepped forward and executed the APA to purchase the Assets with a relatively quick closing.

68.      The consummation of the Sale of the Assets within the proposed time frame will maximize the value of the Assets under the circumstances.  Conversely, any further delay would only increase the administrative costs.

69.     I also believe that proceeding with the Sale is in the best interests of the Estates in light of Hilco's robust marketing efforts and the results of those efforts culminating in the APA with Buyer.

70.     In my opinion, the Bid Procedures have guarded against invalid offers for the Assets, and has ensured that, in conjunction with the AmEx Settlement and Bodden Distribution Agreement, the Purchase Price being paid is and will generate cash proceeds for the Selling Debtors' Estates.

71.     Designed to maximize the value of the Assets, the Bid Procedures ensured that the ultimate Purchase Price is an accurate reflection of the Assets' true value based on the best possible price that could be obtained.

72.     I am confident that the marketing and sales process conducted by Hilco has generated the best value for the Assets because not only has Hilco actively marketed the Assets to all known and likely potential purchasers, but the potential bidders were provided an opportunity to submit competitive bids through which the highest or otherwise best bid from all competing qualified bids was selected.

73.     As assurance of value, the bids received were tested through the Auction – with ten (10) bidders participating in the Auction -- consistent with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and pursuant to the Bid Procedures approved by the Court.

74.     The Sale of the Assets also was negotiated at arms' length utilizing Hilco as my sales agent and consultant.

75.     The declaration made under penalty of perjury by Buyer states that other than being members in the same community in India, Buyer does not have any connection or relationship with Bikram Choudhury or any of his family members or affiliated entities, or any entities in which any of the foregoing are invested or serve as officers, directors, managers or consultants.  I do not have any relationship with the Buyer, other than he has served as the buyer of certain vehicles of BYCOI and of the residence of the Choudhury Defendants during this Chapter 7 bankruptcy case.

76.     Based on the declaration made under penalty of perjury by Buyer, the source of funds for the purchase of the Assets is not derived, directly or indirectly, from any assets or properties of the Estates or proceeds therefrom.

4894-1136-9230.5

77.     To the best of my knowledge and belief, the APA has been entered into by Buyer without collusion or fraud and in good faith, and certainly through extensive arm's length negotiations.

78.     Buyer has not received any special treatment or consideration.  Rather, both Buyer and I have engaged separate counsel and other professional advisors to represent our respective interests in the negotiation of the APA and in the sale process generally.

79.     Hilco, my sales agent and consultant, is an independent professional retained by me for the purpose of exploring strategic alternatives for and marketing of the Assets.

80.     The Bid Procedures further avoided any party from exerting undue influence over the process or manipulating the sale price.

81.     To the best of my knowledge, information and belief, no party has engaged in any conduct that would cause or permit Buyer's bid to be set aside under section 363(m) of the Bankruptcy Code.

82.     I have been informed and believe that the Debtors did not have any form of privacy policy in effect as of the Petition Date.  I confirmed with the Debtors' former general counsel that at the time the bankruptcy cases were commenced, the Debtors did not have a privacy policy in place, let alone one that informs individuals about prohibitions on the transfer of PII.

83.     Even though there is no PII being sold in this Sale transaction, I will attempt to have Documents that may contain personal information removed from the storage unit before Documents are physically transferred to Buyer.  Moreover, if any personal records remain in storage at Closing and are inadvertently transferred to Buyer, Section 2.1(c) of the APA provides that Buyer will be responsible for destroying such records and will not use or transfer such private information.

84.     I believe that only AmEx and Bodden have allowed secured interests in the Assets.

85.     Although Starke purports to have filed a writ of attachment on the IP Assets of BYCOI, such purported security interest is flawed and invalid because Starke failed to levy against the assets of BYCOI under her writ of attachment pursuant to CCP § 488.500, et seq., in order to establish an attachment lien.

86.    With respect to BCYI and BI, Starke did not even file a writ of attachment, so there is absolutely no basis for an attachment lien.

87.    Notwithstanding the foregoing, out of an abundance of caution, I agree not to disburse to either Starke or Bodden any Sale proceeds of any IP Assets owned by BYCOI that Starke purports to assert an Interest in until such time as the validity and priority of Starke's Interest is determined by further Court order.  Rather, I will place any such disputed proceeds in reserve, as set forth above,  pending resolution of Starke's disputed lien.

88.    I estimate that the amount placed in reserve with the BYCOI Estate pending resolution of Starke's disputed lien will be  $ 65,064.05 in the aggregate, as set forth in the above charts.

89.    Because of the financial condition of the Estates and the nature of the Assets being sold, I do not believe, based on consultations with my accountants, that there will be adverse tax consequences as a result of the Sale, but rather some nominal taxes at most.  I will update the Court if there is any change in this analysis.

90.    To preserve the value of the Assets and limit the costs of administering and preserving such Assets, it is critical that the Sale closes as soon as possible after all closing conditions have been achieved or waived.

91.    I need the ability to move as expeditiously as possible in order to avoid incurring additional administrative expenses, and thus it is in the interest of the Estates' creditors that the sale be consummated without delay upon the entry of an order granting the Sale Motion.

92.    I am not aware of any prejudice that would be caused by the Court's waiver of Bankruptcy Rule 6004(h).

93.    I have caused a notice of the Sale to be served upon all of the lienholders and those claiming an interest in the Assets known to me, all creditors and other parties in interest affected by the Sale, and all governmental units, including taxing authorities who have, or as a result of the Sale of the Assets may have, claims against the Estates in connection with the Sale.  Thus, any person having any objection to the Sale Motion has been afforded a reasonable opportunity to raise any objections or concerns.

1       I declare under penalty of perjury under the laws of the United States of America that the

2  foregoing is true and correct to the best of my knowledge, information and belief.

3       Executed this 14th day of February, 2022 in Los Angeles, California.

4

5

6                           ROBBIN L. ITKIN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF RICHELLE KALNIT

I, Richelle Kalnit, state as follows:

1. I am a Senior Vice President of Hilco IP Services, LLC d/b/a Hilco Streambank ("Hilco Streambank"), which has been retained as the Trustee's consultant and sales agent in connection with the sale or disposition of the intellectual property and certain adversary actions (collectively, the "Assets") of the Estates as set forth in the *Application to Employ Hilco IP Services, LLC d/b/a Hilco Streambank as Consultant and Sales Agent for Debtors' Intellectual Property Rights and Estate Claims* [Docket No. 536] (the "Hilco Retention Application"), which application, with changes made by the Court, was granted by the Court on November 9, 2021 [Docket No. 548] (the "Hilco Retention Order").

2. I submit this declaration (this "Declaration") in support of the *Trustee's Motion for an Order: (I) Approving the Sale of Certain Assets Outside the Ordinary Course of Business Free and Clear of All Liens, Claims, Interests and Encumbrances; (II) Determining that Buyer is a Good Faith Purchaser Under 11 U.S.C. § 363(m); and (III) Granting Related Relief* (the "Sale Motion").

3. On November 23, 2021, the Trustee filed the *Motion for Order (A) Approving Bid Procedures for the Sale of the Estates' Remaining Assets, Including Authorization of a Discretionary Break-Up Fee Payment; (B) Approving Related Notice Procedures; (C) Approving the Form Asset Purchase Agreement; (D) Authorizing the Payment of Sales Costs; (E) Scheduling a Sale Hearing; and (F) Granting Related Relief* [Docket No. 553], which motion, with changes made by the Court, was granted by the Court on December 27, 2021 [Docket No. 570] (the "Bid Procedures Order").[1]

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion and Bid Procedures Motion, as applicable.

4. Except as otherwise stated, all statements in this Declaration are based upon my review of relevant documents, my discussions with the Trustee and her professionals, including other members of Hilco Streambank, and my personal knowledge and experience.

5. Hilco Streambank is an expert in the valuation, preservation, and monetization of intangible assets such as the Assets. Hilco Streambank has provided intangible asset advisory and brokerage services for dozens of retail and consumer companies. Many of those companies were debtors in chapter 11 or chapter 7 bankruptcy cases.

6. In connection with its engagement by the Trustee, Hilco Streambank worked with the Trustee and her professionals to identify and assemble relevant data concerning the Assets, and to market the Assets to potential buyers. Hilco Streambank's activities included:

    a.   identifying the Assets and assisting the Trustee in preserving the Assets;

    b.   developing marketing materials including a "teaser" describing the Assets, the history of their use and their availability for sale;

    c.   reviewing, with the Trustee and her counsel, the contents of the storage locker containing approximately 246 boxes of documents related to the Assets, and supplementing the inventory spreadsheet of such documents based on the review;

    d.   working with the Trustee and her various counsel to advise the Trustee with respect to gaining control of the BikramYoga.com domain name and other domain names;

    e.   drafting and disseminating a press release via PR Newswire describing the Assets and their availability for sale;

    f.   developing a contact list of potential buyers of the Assets;

    g.   having direct contact by phone or email with approximately 285 potential buyers of the Assets;

    h.   disseminating email marketing materials that were sent to over 6,000 potential buyers of the Assets culled from Hilco Streambank's proprietary contact database;

    i.   advertising the Assets on Hilco Streambank's LinkedIn and Twitter pages;

j.  establishing and populating a virtual data room (the "Data Room") and arranging for the admission of 19 parties to the Data Room who executed a form of non-disclosure agreement acceptable to the Trustee;

k.  developing an Auction format for the Assets, including a bid form and bidder qualification guidelines;

l.  managing the auction of the Assets (the "Auction");

m. working with the Trustee and the buyer of the Assets to document deliverables and terms of the sale; and

n.  continuing to work with the Trustee and her professionals to close the sale of the Assets.

7.  Hilco Streambank and the Trustee notified potential buyers that any offers to acquire the Assets were required to be submitted in writing on or before February 8, 2022 at 12:00 p.m. PT (the "Bid Deadline"), together with a good-faith deposit equal to ten percent (10%) of the amount of the potential buyer's bid, along with the other requirements as set forth in the Bid Procedures Order.

8.  Prior to the Bid Deadline, Hilco Streambank engaged with multiple interested parties. Ultimately, the Trustee received bids from ten (10) bidders. I and my team, along with the Trustee and her counsel, worked to qualify the bids received from these bidders. As a result of those efforts, the modified bids of all of the bidders were deemed qualified as contemplated by the Bid Procedures (the "Qualified Bidders").

9.  On February 10, 2022, the Trustee convened the Auction among the ten (10) Qualified Bidders utilizing a video conferencing platform. Non-speaking participants were also able to appear telephonically. At the auction, the Trustee solicited sealed bids from each Qualified Bidder through one round of best and final sealed bids.

10. The highest and/or otherwise best bid for the Assets was submitted by Dr. Kali P. Chaudhuri (the "Successful Bidder"). The Successful Bid was for $700,000 for all of the Assets.

11. On or about February 11, 2022, the Successful Bidder wired an additional deposit of $40,000, thereby increasing the total deposit held by the Trustee to $70,000, or 10% of the Successful Bid.

12. The Sale was negotiated, proposed, and entered into by the Trustee and the Successful Bidder without collusion and in good faith, and resulted from arm's-length bargaining positions. Moreover, to the best of my knowledge, no common identity of directors or controlling shareholders exists between the Debtors and the Successful Bidder.

13. I believe that the Successful Bid represents the highest and best offer available for the Assets after the reasonable and thorough marketing process conducted by Hilco Streambank and the Trustee. Accordingly, in my opinion, granting the relief requested in the Sale Motion is in the best interests of the Trustee, the Debtors' estates, and creditors.

14. A hearing to consider entry of an order approving the Sale Motion is scheduled before the Court on February 23, 2022. Subject to Court approval of the Sale Motion and the Purchase Agreement, the Trustee and the Successful Bidder intend to move expeditiously to consummate the Sale of the Assets to the Successful Bidder.

15. _Commission Pertaining to Successful Bid_.[2] Pursuant to the Hilco Retention Order, for its services as consultant and sales agent to the Trustee, Hilco Streambank was entitled to a commission (the "Commission") equal to:

    a. A percentage of the aggregate IP Gross Proceeds as follows:
        i. 10% of the amount of aggregate IP Gross Proceeds up to and including $500,000; plus
        ii. 20% of the amount of aggregate IP Gross Proceeds greater than $500,000; plus
    b. A percentage of the aggregate Estate Claims Gross Proceeds as follows:
        i. 5% of the amount of aggregate Estate Claims Gross Proceeds up to and including $1,000,000; plus

---

[2] Capitalized terms used but not defined in paragraphs 15-18 hereof shall have the respective meanings ascribed to them in the Hilco Retention Application.

ii.    10% of the amount of aggregate Estate Claims Gross Proceeds greater than $1,000,000.

16. The sale process concluded with the highest and best bid submitted by the Successful Bidder in the amount of $700,000.  Of that amount, $400,000 is attributable to IP Gross Proceeds, and $300,000 is attributable to Estate Claims Gross Proceeds.  Accordingly, the Commission attributable to such amounts is $55,000 ([10% x $400,000 = $40,000] plus [5% x $300,000 = $15,000]).

17. *Out of Pocket Expenses*.  Pursuant to the Hilco Retention Order, Hilco Streambank shall be reimbursed for its reasonable, customary and documented expenses up to a maximum amount of $5,000. The receipts showing expenses incurred by Hilco Streambank are annexed hereto as **Exhibit A**.  In connection with the engagement, Hilco Streambank incurred reasonable out-of-pocket expenses of $5,524.66, which reflects:

a.    $18.44 in connection with the registration of domain names PureBikramYoga.net and BikramInc.com.

b.    $500.00 in connection with maintenance of an online data room,[3] plus

c.    $1,921.21 in connection with travel to review the materials in the Debtor's storage locker, plus

d.    $3,085.01 in connection with travel to participate in the Auction for the Assets.

18. Separate and apart from the expenses incurred by Hilco Streambank, the Trustee incurred certain Sales Costs in connection with the Sale, which Sale Costs were facilitated by Hilco Streambank but were not part of Hilco Streambank's capped expenses, including:

a.    $1,695.60 for costs associated with retrieving, copying and restocking the materials in two of the boxes in the Debtors' storage locker, plus

b.    An amount estimated to be $2,000 for court reporter and Zoom operator services at the Auction.

---

[3] Hilco Streambank's engagement letter provides that data room expenses will be charged at a flat fee of $500.00.

1         Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

2  and correct to the best of my knowledge, information and belief.

3         Executed this 14th day of February, 2022 at Westport, Connecticut.

4

5                                 *Richelle Kalnit*

6                                   Richelle Kalnit

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A  TO KALNIT DECLARATION**

**INVOICES RE: OUT OF POCKET EXPENSES**

**Trustee has reviewed and verified the receipts submitted by Hilco.  Due to the voluminous nature of the receipts, such receipts are not attached hereto but are available for review by the Court or any other creditor or party in interest upon request.**

## DECLARATION OF DR. KALI P. CHAUDHURI

I, Dr. Kali P. Chaudhuri, hereby declare as follows:

1.      I am an individual over the age of 18 and I am the proposed purchaser (the "Buyer") of certain assets under the Asset Purchase Agreement, dated February 4, 2022 (as amended and modified from time to time, the "APA"),[1] by and among the Buyer and the Selling Debtors, by and through Robbin L. Itkin, Chapter 7 Trustee ("Seller"), solely in her role as chapter 7 trustee for the jointly administered bankruptcy Estates of the Selling Debtors and debtor Yuz, Inc.

2.      This declaration is made in connection with the APA and the sale transaction for the contemplated sale of the Assets ("Sale").

3.      I have personal knowledge of the matters discussed below, and if called as a witness I could and would competently testify thereto.

4.      The negotiation and execution of the APA and the related Sale was at arm's-length and in good faith, and at all times I was represented by competent counsel of my choosing.

5.      I have had the opportunity to conduct any and all due diligence regarding the Sale and I am relying solely upon my own independent review, evaluation, investigation and inspection of documents and the Assets to be purchased in making my bid and participating in the Sale. I have not relied on any of Trustee's or any of her professionals' written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets, the Debtors' businesses or the completeness of any information provided in connection therewith.

6.      Neither the Trustee nor her professionals made any representations or warranties regarding the existence, validity, or completeness of any of the Assets, the strength of the Estates' claims or the recoveries under the Adversary Actions and any documents or materials provided or that will be provided do not constitute an opinion with respect to the nature, extent, or validity of such Assets or claims.

7.      I acknowledge that the Estates are entering into the Sale based on my representations that I have made an independent evaluation of the Assets purchased and that in no event shall Trustee be liable to me for claims arising from, or related to, the due diligence documents and materials provided.

8.      It is my understanding that the sale of the Assets is "as is, where is" with all faults.

9.      All payments to be made by me in connection with the Sale and the source of such funds have been disclosed in the APA and this Declaration, or have been or will be disclosed on the record at the auction.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the APA.

1

10.     The source of funds for the purchase of the Assets, including any portion thereof, is not derived, directly or indirectly, from any assets or properties of the Estates or proceeds therefrom, Bikram Choudhury or any of his family members or affiliated entities, or any entities in which any of the foregoing are invested or serve as officers, directors, managers, or consultants (collectively, the "Bikram Parties"). Notwithstanding the following, I do have a relationship with one or more of the Bikram Parties as members of the same community in India.

11.     I do not have a relationship with the Seller or her counsel, nor did I know either the Trustee or her counsel before this Sale transaction, except that I was the Court approved buyer of (i) the real property located at 3172 Toppington Drive, Beverly Hills, California 90210 through a private sale and (ii) the lot of six (6) vehicles/vehicle parts sold at an auction conducted by Braunco, Inc.

12.     I am informed, and acknowledge, that the APA is conditioned upon Bankruptcy Court approval.

13.     My consummation of the Sale is not subject to any contingencies (including, without limitation, any financing and due diligence contingencies) and I am prepared to consummate the Sale contemplated in the APA by no later than two (2) business days following the date on which all of the closing conditions set forth in Sections 4.3 and 4.4 of the APA have been satisfied.

14.     My bid is irrevocable until the consummation of the Sale with the Successful Bidder(s) or until the date set forth in Section 3.3 of the APA.

15.     I recognize that the Seller and the Selling Debtors were free to deal with any other party interested in purchasing the Assets, and to the best of my knowledge, I complied in all respects with the provisions in the Bid Procedures Order, including agreeing to subject my offer to the competitive bidding procedures set forth in the Bid Procedures Order.

16.     I did not in any way induce or cause the chapter 11 filing of the Selling Debtors.

17.     To the best of my knowledge, I have not acted in a collusive manner with any person in connection with this Sale, and I will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the APA.

18.     I have not nor will I (i) engage in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any bid or the Sale; or (ii) agree with any other bidders to control the price with respect to any of the Assets being sold.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 7 day of February 2022, in Corona, California.

Dr. Kali P. Chaudhuri

# **EXHIBIT A**

## **PROPOSED SALE ORDER**

**SKLAR KIRSH, LLP**
LOVEE D. SARENAS (SBN 204361)
Email: lsarenas@sklarkirsh.com
1880 Century Park East, Suite 300
Los Angeles, California 90067
Telephone: (310) 845-6416
Facsimile: (310) 929-4469

Attorneys to Robbin L. Itkin, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>BIKRAM'S YOGA COLLEGE OF INDIA, LP,<br><br>        Debtor. | Case No. 9:17-bk-12045-DS<br><br>Chapter 7<br><br>Jointly Administered with:<br><br>9:17-bk-12046-DS<br>9:17-bk-12047-DS<br>9:17-bk-12048-DS<br>9:17-bk-12049-DS |
| In re:<br><br>BIKRAM CHOUDHURY YOGA, INC.,<br><br>        Debtor. | |
| In re:<br><br>BIKRAM, INC.,<br><br>        Debtor. | **ORDER GRANTING TRUSTEE'S MOTION FOR AN ORDER: (I) APPROVING THE SALE OF CERTAIN ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) DETERMINING THAT BUYER IS A GOOD FAITH PURCHASER UNDER 11 U.S.C. § 363(m); AND (III) GRANTING RELATED RELIEF** |
| In re:<br><br>YUZ, INC.,<br><br>        Debtor. | |
| In re:<br><br>INTERNATIONAL TRADING REPRESENTATIVE, LLC,<br><br>        Debtor. | [11 U.S.C. §§ 105(a), 363; Bankruptcy Rules 2002, 6004 & 9014; LBRs 6004-1 & 9013-1]<br><br>Date:     February 23, 2022<br>Time:    11:30 a.m.<br>Place:   Courtroom 201<br>           1415 State Street<br>           Santa Barbara, CA 93101<br>           (via Zoom for Government) |
| ☒ Affects Bikram's Yoga College of India, LP<br>☒ Affects Bikram Choudhury Yoga, Inc.<br>☒ Affects Bikram, Inc.<br>☐ Affects Yuz, Inc.<br>☒ Affects Int'l Trading Representative, LLC | |

A hearing was held at the above time and place on the Motion for an Order: (I) Approving the Sale of Certain Assets Outside the Ordinary Course of Business Free and Clear of All Liens, Claims, Interests and Encumbrances; (II) For a Determination of Good Faith Purchaser Under 11 U.S.C. § 363(m); And (III) Granting Related Relief (the Motion, Docket No. ____)[1] filed by Robbin L. Itkin, the chapter 7 trustee (the Trustee). Appearances were noted on the record.

The court has reviewed and considered the Motion, the record in these cases, and the statements of counsel on the record at the hearing, and further finding that notice of the hearing on the Motion served on all parties entitled thereto was appropriate, timely and proper under the circumstances, and no other notice need be given in accordance with the Bankruptcy Code § 363(b), Bankruptcy Rules 2002, 6004, 9007, and 9014, and LBRs 6004-1 and 9013-1. A reasonable opportunity to object or to be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities.  For the reasons stated on the record, and good cause appearing,

IT IS HEREBY ORDERED that:

1.    The Motion is granted.

2.    The APA, a copy of which is attached to the Motion as Exhibit B, is approved.

3.    Trustee is authorized to sell the Assets, all of which are further identified in the APA, to Buyer on an "as-is, where-is" basis, with no representations or warranties whatsoever and without contingency on the terms as set forth in the APA.

4.    Trustee is authorized to amend Exhibit 2.1(b)(ii) of the APA, in her sole discretion, at or prior to Closing to add adversary proceeding no. 9:19-ap-01070-DS filed against Monica Shigenaga, CocoJor Hawaii, LLC and Jadoo, LLC, so that such adversary action is not part of the Assets being sold to Buyer at Closing.

5.    Pursuant to 11 U.S.C. § 363(f), the sale of the Assets to the Buyer will be free and clear of any liens, claims, liabilities, encumbrances, and interests in, of, on or against the Assets.

6.    In the event Seller inadvertently turns over any Documents in storage that contain personal or confidential information of any employee or other person affiliated with the Bikram Yoga

---

[1] Terms used but not defined herein have the meaning given to them in the Motion.

facilities and program to Buyer, Buyer agrees not to utilize or disclose such information to any third-parties and to destroy such information upon its discovery.

7.      Upon consummation of the transactions contemplated in the APA, Seller, the Selling Debtors and their Estates shall be allowed to continue to use the name or marks included in the Assets transferred pursuant the APA, or any derivatives thereof, as needed, to fully administer the bankruptcy Estates.

8.      Trustee is authorized to take any and all actions necessary or appropriate to effectuate the transactions and consummation of the Sale contemplated by the Motion and the APA.

9.      The omission to include any particular provision of the APA in this order will not diminish or impair the effectiveness of such provision, it being the intent of the court that the APA be authorized and approved in its entirety.

10.     Trustee is authorized, at closing or as soon as practicable thereafter, to make payments from the sale proceeds received at closing for the Sale Costs identified on <u>Exhibit D</u> to the Motion and the Settlement Payments to AmEx and Bodden as described in the Motion (including establishing a reserve for proceeds received on account of the BYCOI IP Assets as described in the Motion pending resolution of Starke's disputed lien).

11.     At closing, Trustee is authorized to pay Hilco IP Services, LLC d/b/a Hilco Streambank a commission equal to $55,000 (calculated in accordance with its engagement agreement as ([10% x $400,000 = $40,000] plus [5% x $300,000 = $15,000]) and reimbursable out-of-pocket expenses equal to $5,000 (consistent with its engagement agreement and consisting of the costs set forth in the Declaration of Richelle Kalnit attached to the Motion) in accordance with the Order Approving Application to Employ Hilco IP Services, LLC d/b/a Hilco Streambank as Consultant and Sales Agent for Debtors' Intellectual Property Rights and Estate Claims (Docket No. 548).

12.     The court finds that Buyer is a good faith purchaser for value and, as such, will be entitled to all of the protections afforded under Bankruptcy Code § 363(m) following Closing.

13.     In the event that Buyer materially breaches the APA or fails to close the sale by March 11, 2022 through no fault of Trustee, Buyer will forfeit its deposit as liquidated damages.

1       14.    Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this order will

2    be immediately effective and enforceable upon its entry.

3       15.    The court retains jurisdiction with respect to all matters arising from or related to the

4    interpretation or implementation of this order.

5                 ###

# **EXHIBIT B**

## **ASSET PURCHASE AGREEMENT**

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "**APA**") is entered into as of February 11, 2022 (the "**Execution Date**"), by and between Bikram's Yoga College of India, LP, Bikram, Inc. International Trading Representative, LLC and Bikram Choudhury Yoga, Inc. (collectively, the "Selling Debtors"), by and through Robbin L. Itkin, Chapter 7 Trustee ("**Seller**"), solely in her role as chapter 7 trustee for the jointly administered bankruptcy estates ("**Estates**") of the Selling Debtors and debtor Yuz, Inc., and Dr. Kali P. Chaudhuri, an individual, or his designee ("**Buyer**").

## RECITALS

A.     The following entities (collectively, the "**Debtors**") commenced their respective voluntary bankruptcy cases (the "**Bankruptcy Cases**") in the United States Bankruptcy Court for the Central District of California (the "**Court**") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. 101 *et seq.* (the "**Bankruptcy Code**") on November 9, 2017 ("**Petition Date**") under the following case number designations: Bikram's Yoga College of India, LP (17-bk-12045 DS); Bikram, Inc. (17- bk-12047 DS); Yuz, Inc. (17-bk-12048 DS); International Trading Representative, LLC (17-bk-12049 DS); and Bikram Choudhury Yoga, Inc. (17-bk-12046 DS). The Bankruptcy Cases are administered jointly pursuant to the Court's order of November 17, 2017 under the lead case 9:17-bk-12045 DS. [Dkt. No. 11]

B.     Pursuant to the order entered on March 23, 2018, the Court ordered the appointment of a chapter 11 trustee and on April 4, 2018, the United States Trustee appointed Seller to serve as the chapter 11 trustee for the Estates. [Dkt. Nos. 107 & 108] On September 28, 2020, the Court entered an order converting the chapter 11 case to one under chapter 7. [Dkt. No. 436] The United States Trustee appointed the Seller as the chapter 7 trustee on October 1, 2020. [Dkt. No. 441]

C.     Pursuant to the Bid Procedures Order (defined below), the Buyer submitted a bid by the bid deadline of February 8, 2022. The Buyer's bid was considered a qualified bid and at the auction held on February 10, 2022, the Buyer was selected as the successful bidder on the terms provided for in this APA.

D.     Seller has agreed to sell and Buyer has agreed to purchase the Assets (defined below) in accordance with the terms and conditions of this APA, and subject to the Bid Procedures Order (as defined below), as well as pursuant to an order of the Court under § 363 of the Bankruptcy Code approving the APA and the transactions contemplated herein (the "**Sale Order**").

NOW, THEREFORE, in consideration of Purchase Price (defined below) and the mutual covenants and agreements of each party to the other hereinafter set forth, the adequacy and sufficiency of which are hereby acknowledged, the parties do hereby mutually covenant and agree as follows:

1

# ARTICLE I

## DEFINED TERMS

The following terms shall have the meanings ascribed to them below when used in this APA:

1.1    <u>Bid Procedures Order</u>:  The order entered by the Court approving, *inter alia*, the bidding procedures and auction process for the Assets, entered in Debtors' lead bankruptcy case as Docket No. 570.

1.2    <u>Closing</u>: The consummation of the transaction contemplated hereby.

1.3    <u>Deposit</u>: An amount equal to ten percent (10%) of the Purchase Price payable in readily available funds in United States currency.

# ARTICLE II

## PURCHASE AND SALE; PURCHASE PRICE; DEPOSIT

2.1    <u>Assets</u>.  Subject to the terms and conditions herein contained, Seller agrees to sell, transfer, assign and deliver to Buyer, and Buyer agrees to purchase and accept from Seller on the Closing Date (as hereinafter defined) free and clear of all claims, liens, interests and encumbrances, all of Seller's and any and all of applicable Selling Debtors' right, title and interest in and to the following assets (collectively, the "**Assets**"):

(a)    the trademarks, domain names and copyrights identified and set forth in **Exhibit 2.1(a)** (collectively, the "**IP**"), including, to the extent applicable, any related service marks, tradenames, brand names, logos, trade dress and other similar designations of source or origin, registrations, applications, and/or common law rights for the IP, together with passwords and all of the goodwill of the applicable Selling Debtors' businesses symbolized by or associated with the IP,  any contracts related to such IP, and any and all income, royalties, damages and payments now or hereafter due and/or payable with respect thereto including without limitation, damages and payments for past, present or future infringements;

(b)    each of the adversary actions pending in the Court identified on **Exhibit 2.1(b)(i)** (collectively, the "**Adversary Actions**"); provided, however, that the Assets shall not include any rights, claims or other interests in the adversary actions identified on **Exhibit 2.1(b)(ii)** (the "**Excluded Adversary Actions**"), which Exhibit 2.1(b)(ii) may be amended and modified by Seller, in her sole discretion, at or prior to Closing to add the Adversary Proceeding No. 9:10-ap-01070-DS filed against Monica Shigenaga and other affiliated defendants; and

2

(c)     all of the Debtors' books and records, documents and other files being held in storage related to the Assets (the "<u>Documents</u>"), for which Buyer shall be solely responsible for any and all storage costs after Closing and for the removal or disposal of such Documents, at Buyer's sole cost and expense, and Seller shall have no further liability with respect thereto on and after Closing. Notwithstanding the foregoing, if, after the Closing, Buyer discovers any books, records, documents and other files being held in storage that do not relate to the Assets (the "Other Documents"), Buyer shall immediately notify the Seller and arrange for the prompt return of such Other Documents, or at the Trustee's direction, the prompt destruction of the Other Documents, all at the Buyer's sole cost and expense.  In the event Seller inadvertently turns over any Documents in storage that contain personal or confidential information of any employee or other person affiliated with the Bikram Yoga facilities and program to Buyer, Buyer agrees not to utilize or disclose such information to any third-parties and to destroy such information upon its discovery.

2.2     <u>Purchase Price</u>.  The purchase price for the Assets shall be payable in cash or other readily available funds by Buyer to Seller at Closing in the aggregate amount of Seven Hundred Thousand Dollars ($700,000.00) (the "Purchase Price").  The Purchase Price shall be paid by Buyer to Seller at the Closing by wire transfer of immediately available funds to the account or accounts designated in writing by Seller.  Buyer's allocation of the Purchase Price is set forth on **Exhibit 2.2**.

2.3     <u>Deposit</u>.  On or before the Execution Date, Buyer shall deposit with the Seller the Deposit by wire transfer of immediately available funds to the account or accounts designated in writing by Seller.  Upon Closing, the Deposit shall be applied against the Purchase Price, or, if the transaction contemplated hereby is not consummated, delivered to Seller or Buyer as provided herein.

2.4     <u>Free and Clear</u>.  Except with respect to obligations and liabilities relating to and arising on and after the Closing, Buyer is not assuming any liability, debt or obligations of Seller, Selling Debtors, or their bankruptcy Estates attributable to the Assets prior to Closing, and Buyer shall have no obligation or responsibility therefor.  All of the Assets being sold hereunder shall be sold and assigned by Seller to Buyer free and clear of all liens and interests, in accordance with 11 U.S.C. § 363(f).

ARTICLE III

<u>COURT APPROVAL</u>

3.1     <u>Court Approval Required</u>.  Buyer acknowledges that the sale of the Assets may be made, at the Seller's discretion and exercising her business judgment, as a private sale or subject to overbid at auction in accordance with the Bid Procedures Order and agrees to be bound by the terms and conditions of the Bid Procedures Order.  Buyer further acknowledges and agrees that this APA is subject to the approval of the Court, the hearing on which shall be in accordance with the Bid Procedures Order.  In the event that Seller accepts this APA, the Parties will in good faith exercise all reasonable efforts required to obtain the entry of the Sale Order, including executing

and delivering any motions, declarations or other items of support reasonably required in connection therewith.

3.2    <u>Effect of Non-Approval</u>.  In the event that the Seller does not accept this APA and/or the Court does not approve this APA, this APA shall be deemed null and void and of no further force and effect, and the Seller shall return the Deposit to Buyer within ten (10) business days following Seller's rejection of, or the Court's denial of a motion to approve, the APA.

3.3    <u>Backup Bidder</u>.  In the event that Buyer is designated as the "Backup Bidder" in accordance with and as defined in the Bid Procedures Order, Buyer agrees that it will keep the Backup Bid (as defined in the Bid Procedures Order) open and irrevocable until the earlier of 5:00 p.m. (prevailing Pacific Time) on the date that is thirty (30) days after the date of entry of the Sale Order or the closing of a sale transaction of the Assets with another buyer.

3.4    <u>Bid Procedures Order</u>.  Buyer agrees to comply with and be bound by the terms of the Bid Procedures Order.

ARTICLE IV

<u>WAIVER OF CONTINGENCIES, CLOSING; CONDITIONS PRECEDENT</u>

4.1    <u>Waiver of Contingencies</u>.  Buyer's due diligence has been completed prior to Buyer's execution of this APA, and Buyer hereby waives any and all contingencies to consummation of the transactions contemplated herein, including, without limitation, all due diligence and financing contingencies.  Buyer expressly disclaims, and this transaction shall not be conditioned on, any right of Buyer to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, unless expressly agreed to by Seller in writing in accordance with the Bid Procedures Order.

4.2    <u>Closing</u>.  Provided that this APA has not been terminated, the Closing shall occur on or before two (2) business days following the date on which all the closing conditions set forth in Sections 4.3 and 4.4 of this APA have been satisfied, but in any event, by no later than March 11, 2022 or a later date agreed upon in writing by the Parties.  The date on which this Closing occurs shall be the "**Closing Date**."  The Closing shall occur at the offices of Sklar Kirsh, LLP, 1880 Century Park East, Ste. 300, Los Angeles, California 90067, or such other place or other method, including electronically, as may be determined by Seller, with notice to Buyer at least one (1) business day prior to Closing.

4.3    <u>Closing Conditions of Buyer</u>.  The obligation of Buyer to consummate the transactions contemplated hereunder is subject to the satisfaction or written waiver of each of the following conditions precedent (except that the condition in Section 4.3(b) cannot be waived):

(a)    Seller shall not be in default under this APA in any material respect.

(b)    The Court shall have entered the Sale Order, which shall be final and non-appealable.

4

(c)     Seller shall have delivered the Seller's Deliverables to Buyer.

4.4     <u>Closing Conditions of Seller</u>.    The obligation of Seller to consummate the conveyance of the Assets hereunder is subject to the satisfaction or written waiver of each of the following conditions precedent (except that the condition in Section 4.4(c) cannot be waived):

(a)     Buyer's representations and warranties contained herein shall be true and correct in all material respects as of the Closing Date and any qualification as to Buyer's knowledge shall not apply for purposes of this Section.

(b)     Buyer shall not be in default under this APA in any material respect.

(c)     The Court shall have entered the Sale Order, which shall be final and non-appealable.

(d)     Buyer shall have delivered Buyer's Deliverables to Seller.

4.5     <u>Post-Closing Use</u>.    Buyer hereby acknowledges and agrees that upon consummation of the transactions contemplated hereby, Seller, the Selling Debtors and their Estates shall be allowed to continue to use the name or marks included in the Assets transferred pursuant to this APA, or any derivatives thereof, as needed, to fully administer the Estates.

ARTICLE V

TERMINATION

5.1     <u>Termination</u>.    This APA may be terminated at any time prior to Closing by (i) mutual written consent of Buyer and Seller; (ii) Seller or Buyer, in the event of material breach by the other that has not been cured within five (5) days of receipt of written notice thereof or not waived by the non-breaching party; (iii) by Seller, if the Closing does not occur on or before March 11, 2022 (or a later date agreed upon in writing by the Parties) through no fault of Seller; or (iv) Seller or Buyer if there is any law, regulation or court order that makes consummation of the transactions illegal or otherwise prohibited, including the Court's refusal to enter the Sale Order. In the event of termination, written notice thereof shall forthwith be given to the other party and this APA shall terminate without further action by Buyer or Seller.

5.2     <u>Effect of Termination</u>.    If this APA is terminated pursuant to Section 5.1, this APA shall terminate and be of no further force or effect (with the exception of those provisions that expressly survive termination), the Deposit shall be paid to Buyer (except where termination is a result of a material breach by Buyer pursuant to Section 5.1(ii) or the Closing fails to occur as per Section 5.1(iii)), and each party shall pay the costs and expenses incurred by it in connection with this APA; provided, however, that in the event this APA is terminated as result of a material breach by Buyer pursuant to Section 5.1(ii), pursuant to Section 5.1(iii), or in accordance with Section 5.3, the Deposit shall be paid to Seller.

5

5.3 <u>Liquidated Damages</u>.  If Buyer fails to complete this purchase because of Buyer's default or breach of this APA, including the failure to close on or before March 11, 2022  or a later date agreed upon in writing by the Parties (through no fault of Seller), Seller shall retain, as liquidated damages, the Deposit actually paid.  **SELLER AND BUYER AGREE THAT IT WOULD BE IMPRACTICAL AND EXTREMELY DIFFICULT TO ESTIMATE THE DAMAGES WHICH SELLER MAY SUFFER UPON A BUYER DEFAULT AND THAT THE DEPOSIT AND ANY INTEREST EARNED THEREON, AS THE CASE MAY BE, REPRESENTS A REASONABLE ESTIMATE OF THE TOTAL NET DETRIMENT THAT SELLER WOULD SUFFER UPON A BUYER DEFAULT. SUCH LIQUIDATED AND AGREED DAMAGES ARE NOT INTENDED AS A FORFEITURE OR A PENALTY WITHIN THE MEANING OF APPLICABLE LAW, BUT ARE INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671, 1676, AND 1677. BY PLACING ITS INITIALS BELOW, EACH PARTY SPECIFICALLY CONFIRMS THE ACCURACY OF THE STATEMENTS MADE ABOVE AND THE FACT THAT EACH PARTY WAS REPRESENTED BY LEGAL COUNSEL WHO EXPLAINED, AT THE TIME THIS APA WAS MADE, THE MEANING, THE EFFECT, AND THE CONSEQUENCES OF THIS LIQUIDATED DAMAGES PROVISION.**

Buyer's Initials: _____  Seller's Initials: _____

ARTICLE VI

REPRESENTATIONS AND WARRANTIES

6.1 <u>As-Is, Where-Is</u>.

(a) IT IS UNDERSTOOD AND AGREED THAT SELLER (INCLUDING ANY OF SELLER'S PROFESSIONALS) IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, AT LAW OR IN EQUITY, WITH RESPECT TO THE ASSETS, INCLUDING BUT NOT LIMITED TO ANY WARRANTIES OR REPRESENTATIONS AS TO: (I) MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE; (II) THE EXISTENCE, VALIDITY OR COMPLETENESS OF ANY OF THE IP ASSETS, THE STRENGTH OF THE ESTATES' CLAIMS OR THE RECOVERIES UNDER THE ADVERSARY ACTIONS; OR (III) OPERATING HISTORY OR PROJECTIONS, VALUATION, RECOVERIES, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE ASSETS WITH GOVERNMENTAL OR OTHER APPLICABLE LAWS, THE TRUTH, ACCURACY, OR COMPLETENESS OF ANY DOCUMENT RELATED TO THE ASSETS, OR ANY OTHER INFORMATION PROVIDED BY OR ON BEHALF OF SELLER TO BUYER, OR ANY OTHER MATTER OR THING REGARDING THE ASSETS.  NONE OF DOCUMENTS OR MATERIALS PROVIDED TO BUYER IN CONNECTION WITH THE SALE TRANSACTION CONSTITUTE AN OPINION WITH RESPECT TO THE NATURE, EXTENT, OR VALIDITY OF SUCH IP ASSETS OR CLAIMS.

(b)     BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER SHALL SELL AND CONVEY TO BUYER AND BUYER SHALL ACCEPT THE ASSETS "**AS IS, WHERE IS, WITH ALL FAULTS**."  BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND NEITHER SELLER NOR THE DEBTORS ARE LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTEES, STATEMENTS, REPRESENTATION OR INFORMATION PERTAINING TO THE ASSETS OR RELATING THERETO MADE OR FURNISHED BY SELLER OR ITS REPRESENTATIVES, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, EXCEPT AS EXPRESSLY STATED HEREIN.   BUYER ALSO ACKNOWLEDGES THAT THE PURCHASE PRICE REFLECTS AND TAKES INTO ACCOUNT THAT THE ASSETS ARE BEING SOLD "AS IS, WHERE IS, WITH ALL FAULTS."

(c)     BUYER ACKNOWLEDGES TO SELLER THAT BUYER HAD AN OPPORTUNITY PRIOR TO EXECUTING THIS APA TO CONDUCT SUCH DUE DILIGENCE, INSPECTIONS AND INVESTIGATIONS OF THE ASSETS AS BUYER DEEMS NECESSARY OR DESIRABLE TO SATISFY ITSELF AS TO THE ASSETS AND ITS ACQUISITION THEREOF, AND THAT BUYER DID NOT RELY ON ANY OF SELLER'S OR ANY OF HER PROFESSIONALS' WRITTEN OR ORAL STATEMENTS, REPRESENTATIONS, PROMISES, WARRANTIES, OR GUARANTIES WHATSOEVER, WHETHER EXPRESS OR IMPLIED, BY OPERATION OF LAW OR OTHERWISE, REGARDING THE ASSETS, THE DEBTORS' BUSINESSES OR THE COMPLETENESS OF ANY INFORMATION PROVIDED IN CONNECTION THEREWITH.  BUYER HEREBY ASSUMES THE RISK THAT ADVERSE MATTERS MAY NOT HAVE BEEN REVEALED BY BUYER'S REVIEW AND INSPECTIONS AND INVESTIGATIONS, AND SELLER AND HER PROFESSIONALS SHALL HAVE NO LIABILITY WHATSOEVER TO BUYER, ITS RELATED ENTITIES OR ANY OTHER PARTY FOR CLAIMS ARISING FROM, OR RELATED TO, THE DUE DILIGENCE DOCUMENTS AND MATERIALS PROVIDED.

6.2    <u>Buyer's Representations</u>.  Buyer hereby represents that Buyer has the power, authority, and ability to carry out the obligations assumed and promised hereunder.  Without limiting the foregoing, Buyer specifically represents that Buyer has sufficient liquid funds to consummate the purchase of the Assets and to perform Buyer's obligations under this APA.

ARTICLE VII

<u>CLOSING DOCUMENTS; CLOSING STATEMENT</u>

7.1    <u>Buyer's Deliverables at Closing</u>.  On or before the Closing Date, Buyer shall deliver: (a) the balance of the Purchase Price to Seller and (b) all other documents reasonably necessary to consummate the transactions contemplated by this APA (collectively, "**Buyer's Deliverables**").

7.2     Seller's Deliverables at Closing.  On or before the Closing Date, Seller shall deliver to Buyer (collectively, the "**Seller's Deliverables**"): (a) one or more assignment agreements, in form and substance reasonably agreed to by the parties and duly executed by Seller, transferring to Buyer all of Seller's right, title, and interest in and to the Assets, including an Intellectual Property Bill of Sale and Assignment Agreement in substantially similar form as Exhibit 7.2; (b) a copy of the Sale Order entered in the Bankruptcy Cases; and (c) all other documents reasonably necessary to consummate the transactions contemplated by this APA.

7.3     Closing Costs and Fees.  Buyer and Seller shall each be responsible for their own legal and professional fees and costs of attorneys and other consultants and agents retained by them, which costs and fees shall be paid by Seller and Buyer, respectively.  Notwithstanding the foregoing, Buyer shall pay, to the extent applicable: (i) all applicable document recording charges, if any; (ii) all transfer taxes and other fees, if any, arising from or resulting from the transactions contemplated hereby; and (iii) all costs and expenses related to the Buyer's investigation, transfer and assignment of the Assets.

ARTICLE VIII

MISCELLANEOUS

8.1     Entire Agreement.  This APA and the schedules and exhibits attached hereto embody the entire agreement between the parties in connection with this transaction and there are no oral or parole agreements existing between the parties relating to this transaction which are not expressly set forth herein and covered hereby.  This APA may not be modified except in writing signed by Seller and Buyer.

8.2     No Waiver.  Failure of either party to complain of any act or omission on the part of the other party, no matter how long the same may continue, shall not be deemed to be a waiver by such party to any of its rights hereunder.  No waiver by any party at any time, expressed or implied, of any breach of any provision of this APA shall be deemed a waiver or a breach of any other provision of this APA or a consent to any subsequent breach of the same or any other provision.  If any action by any party shall require the consent or approval of another party, such consent or approval of such action on any one occasion shall not be deemed a consent to or approval of said action on any subsequent occasion or a consent to or approval of any action on the same or any subsequent occasion.

8.3     Captions.  The captions, section numbers and article numbers appearing in this APA are inserted only as a matter of convenience, and do not define, limit, construe or describe the scope or intent of such sections or articles of this APA nor in any way affect this APA.

8.4     No Third-Party Beneficiaries.  No party other than Seller and Buyer and their successors and assigns, shall have any rights to enforce or rely upon this APA, which is binding upon and made solely for the benefit of Seller and Buyer and their successors and assigns, and not for the benefit of any other party.

8.5    <u>Notices</u>.  All notices provided for or permitted to be given pursuant to this APA must be in writing.  All notices to be sent hereunder shall be deemed to have been properly given or served: if hand delivered by courier, in hand when received; if mailed, on the third business day following the date upon which the same is deposited in the United States mail, addressed to the recipient of the notice, certified with return receipt requested; if by telecopy, on the date sent (or the next business day after the date of transmission if the transmission day is not a business day) provided that the facsimile was properly addressed and disclosed the number of pages transmitted on its front sheet and that the transmission report produced indicates that each of the pages of the telecopy was received at the correct telecopy number; if by electronic mail, on the date sent (or the next business day after the date of transmission if the transmission day is not a business day) provided that the electronic mail was properly addressed and that a duplicate notice was forwarded via nationally recognized overnight courier guarantying next day delivery; and, if by nationally recognized overnight courier guarantying overnight delivery, on the business day following the day such notice was deposited with such a courier, so long as the day of deposit was on a service day of such courier and prior to the last pick up for such day.

| | |
|---|---|
| If to Seller: | SKLAR KIRSH, LLP<br>1880 Century Park East, Ste. 300<br>Los Angeles, California 90067<br>Facsimile:  (310) 929-4469<br>Attn:  Lovee Sarenas, Esq.<br>Email: lsarenas@sklarkirsh.com |
| With a copy to: | SKLAR KIRSH, LLP<br>1880 Century Park East, Ste. 300<br>Los Angeles, California 90067<br>Facsimile:  (310) 929-4469<br>Attn:  Robbin L. Itkin, as Trustee<br>Email: ritkin@sklarkirsh.com |
| If to Buyer: | SHULMAN BASTIAN FRIEDMAN & BUI LLP<br>100 Spectrum Center Drive, Suite 600<br>Irvine, California 92618<br>Facsimile: (949) 340-3000<br>Attn: Leonard M. Shulman, Esq.<br>Email: lshulman@shulmanbastian.com |

8.6    <u>Governing Law and Jurisdiction</u>.  This APA and the rights and obligations of the parties hereunder shall be construed, interpreted and enforced in accordance with the laws of the State of California.  The parties consent to the exclusive jurisdiction of, and venue in, the Court, for the purpose of resolving any claim, controversy or disagreement which may arise among the parties with regard to this APA and waive any objection that they may now or hereafter have to the laying of venue in such forum and agree not to plead or claim that any action in such forum would be inconvenient; provided, however, that: (a) if the Court declines to exercise such jurisdiction, then the courts of the State of California will have such jurisdiction; and (b) nothing

in this Section will constitute a waiver by any party of the right to appeal any decision or action of the Court or any such state court.  THE PARTIES HEREBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR CLAIM BROUGHT IN CONNECTION WITH THIS APA.

8.7    <u>Counterparts and Electronic Delivery</u>.  This APA may be executed in any number of counterparts, each of which, when taken together, shall be deemed to be one and the same instrument.  Executed copies of this APA may be delivered between the parties via telecopy or electronic mail.

8.8    <u>Brokers</u>.  Buyer represents and warrants to Seller that it dealt with no broker in connection with, nor has any broker had any part in bringing about, this transaction.  Buyer shall indemnify, defend, and hold harmless the Seller from and against any claim of any broker, or any other person for any brokerage commissions, finder's fees, or other compensation in connection with this transaction if such claim is based in whole or in part by, through or on account of, any acts of Buyer or its agents, employees, or representatives and from all losses, liabilities, costs, and expenses in connection with such claim, including without limitation, reasonable attorneys' fees, court costs, and interest. The provisions of this Section shall survive the Closing, or the termination of this APA prior to the Closing.

8.9    <u>Severability</u>.  If any term or provision of this APA is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect, invalidate, or render unenforceable any other term or provision of this APA. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the parties hereto shall negotiate in good faith to modify this APA so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated by this APA be consummated as originally contemplated to the greatest extent possible.

8.10    <u>Further Assurances</u>.  Each of the parties hereto shall execute and deliver such additional documents, instruments, conveyances, and assurances and take such further actions as may be reasonably required to carry out the provisions of this APA and give effect to the transactions contemplated hereby, provided such documents are customarily delivered such transactions in the State of California and do not impose any material cost or obligation upon any party hereunder except as set forth in this APA.

8.11    <u>Time Is Of The Essence</u>.  Seller and Buyer acknowledge and agree that TIME IS OF THE ESSENCE with respect to each and every term, condition, obligation, and provision hereof and that failure to timely perform any of the terms, conditions, obligations, or provisions hereof by either party shall constitute a material breach of the APA by the party so failing to perform.

8.12    <u>Business Days</u>.  Wherever in this APA a time period shall end on a day which is a Saturday, Sunday or legal holiday, said time period shall automatically extend to the next date which is not a Saturday, Sunday or legal holiday.

8.13   <u>Advice of Counsel</u>.  Buyer and Seller represent and warrant that they each acted pursuant to the advice of independent legal counsel of their own choosing in connection with the negotiation, preparation and execution of this APA, or that they were advised to obtain the advice of such legal counsel, had ample opportunity to obtain the advice of such legal counsel, and willfully declined to obtain the advice of such legal counsel.

IN WITNESS WHEREOF, the parties hereto have executed this APA.

**SELLER:**

_____
ROBBIN L. ITKIN
Solely in her capacity as Chapter 7 Trustee for the Debtors' Estates

**BUYER:**

_____
DR. KALI P. CHAUDHURI

<u>Exhibit List</u>

| | |
|---|---|
| 2.1(a) | Schedule of IP |
| 2.1(b)(i) | Schedule of Adversary Actions |
| 2.1(b)(ii) | Schedule of Excluded Adversary Actions |
| 2.2 | Buyer's Allocation of Purchase Price |
| 7.2 | Form of Intellectual Property Bill of Sale and Assignment Agreement |

**EXHIBIT 2.1(a)**

**IP**

**Trademarks:**

| Debtor | Trademark | Application No. | Registration No. | Registration Date |
|--------|-----------|----------------|------------------|-------------------|
| Bikram Choudhury Yoga, Inc. | BIKRAM YOGA HAWAII | 79-401481 | HI 4147206 | 27-Jul-2015 |
| Bikram Choudhury Yoga, Inc. | BIKRAM YOGA-EAST OAHU | 79-401482 | HI 4147207 | 27-Jul-2015 |
| Bikram Choudhury Yoga, Inc. | BIKRAM YOGA-HAWAII KAI | 79-401480 | HI 4147205 | 27-Jul-2015 |
| International Trading Representative, LLC | BIKRAM | 85/406940 | 4236199 | 06-Nov-2012 |
| International Trading Representative, LLC | BIKRAM YOGA | 86/212110 | 4613771 | 30-Sep-2014 |
| International Trading Representative, LLC | BIKRAM'S BEGINNING YOGA CLASS | 76/378922 | 2829135 | 06-Apr-2004 |
| International Trading Representative, LLC | Design of Man | 76/975275 | 2775407 | 21-Oct-2003 |

**Domain Names:**

| Domain Name | Creation Date | Last Known Registrar | Registrant(s) |
|-------------|---------------|----------------------|---------------|
| bikraminc.com | 4/15/2021 | Epik, Inc. | Bikram, Inc. |
| bikramyoga.com | 5/21/1996 Updated on 12/19/2016 | ZNet Technologies Pvt Ltd. | Bikram Yoga[1] |
| purebikramyoga.net | 4/15/2021 | Epik, Inc. | Bikram's Yoga College of India, LP |

---

[1] The non-debtor entity "Bikram Yoga" is the last known registrant of the domain name "Bikram Yoga" that is a trademark owned by the Debtor ITR.  Seller is selling any right to, claim, title or interest in the domain name that the ITR Estate may have to the extent such right, claim, title and interest exist, including, without limitation, whatever rights ITR may have in a UDRP action to gain control over the domain.

**Copyrights:**

| Debtor | Copyright Description/<br>Registration No. | Registration Date |
|---|---|---|
| Bikram's Yoga College of India, LP | Bikram Yoga dialogue which was originally copyrighted in 1979 NUMBER EOR 599 and supplemented in 2002 EOR 631-33 and EOR 212.1[2] | |
| International Trading Representative, LLC | "Bikram's Beginning Yoga Class" (Registration No. TX179160)<br><br>Supplemented by Reg. No. TX5624003 | 1979-01-17 |
| International Trading Representative, LLC | "Bikram's Beginning Yoga Class" (Registration No. TX5259325) | 2000-09-01 |
| International Trading Representative, LLC | "Bikram's Yoga College of India Beginning Yoga Dialog" (Registration No. TXu1022657) | 2002-03-04 |
| International Trading Representative, LLC | "Bikram's Yoga College of India: Yoga Teacher Training Course: Curriculum Outline" (Registration No. TXu934417) | 2002-03-25 |
| International Trading Representative, LLC | "Bikram's Beginning Yoga Class" (Registration No. TX5499662 | 2002-04-18 |
| International Trading Representative, LLC | "Bikram's Advanced Yoga Class" (Registration No. TXu1323218) | 2006-10-25 |
| International Trading Representative, LLC | "Bikram's Beginning Yoga Class" (Registration No. TX5624003)<br><br>(supplements Reg. No.  TX179160) | 2002-10-24 |
| International Trading Representative, LLC | "Bikram Yoga" (Registration No. TX6555860) | 2007-04-07 |

---

[2] The copyright is listed in Debtor BYCOI's Schedule B of its bankruptcy petition.  Seller cannot independently verify the existence of the copyright with the U.S. Copyright Office.  Seller is selling any right to, title or interest in such copyright that the BYCOI Estate may have to the extent such right, title and interest exist.

**EXHIBIT 2.1(b)(i)**

**Adversary Actions**

**Robbin L. Itkin, Chapter 11 Trustee (Plaintiff)**

Lead Case: In re: Bikram Yoga College of India LP, *et al.*
(9:17-bk-12045-DS)

JUDGE: Hon. Deborah J. Saltzman

| AP No. | Defendants |
|---|---|
| **9:19-ap-01066-DS** | Organizacion Ideal dba PRINCESS MUNDO IMPERIAL HOTEL |
| **9:19-ap-01067-DS** | 1) Smana Hotel Al Raffa |
| | 2) Rajesh Baheti (Hotel Director of Finance) |
| **9:19-ap-01068-DS** | Zen Co., Ltd. |
| **9:19-ap-01069-DS** | 1) ELO, an individual |
| | 2) 3E Eight LLC |
| | 3) 3E One LLC |
| | 4) Miami SuperCar Rooms |
| | 5) Elo Trustees Ltd |
| **9:19-ap-01070-DS** | 1) Monica Shigenaga |
| | 2) CocoJor Hawaii, LLC |
| | 3) Jadoo, LLC |
| **9:19-ap-01071-DS** | 1) Sumanta Bhattachriya, Director and CEO of BHY |
| | 2) Bikram HotYoga Co. Ltd. |
| **9:19-ap-01075-DS** | Bikram Choudhury |

**EXHIBIT 2.1(b)(ii)**

**Excluded Adversary Actions**

**Robbin L. Itkin, Chapter 11 Trustee
(Plaintiff)**

Lead Case
In re: Bikram Yoga College of India LP, et al.
(9:17-bk-12045-DS)

JUDGE:  Hon. Deborah J. Saltzman

| | |
|---|---|
| **9:19-ap-01072-DS** | Lajwanti Choudhury |
| **9:19-ap-01073-DS** | Anurag Choudhury |
| **9:19-ap-01074-DS** | 1) Rajashree Choudhury<br><br>2) The Rajashree Choudhury Family Trust Dated March 1, 2016 |

**EXHIBIT 2.2**

**BUYER'S ALLOCATION OF PURCHASE PRICE**

| Debtor | Asset Sold | Buyer's Allocated Purchase Price |
|---|---|---|
| Bikram Choudhury Yoga, Inc. | Trademarks Identified in APA | $100,000.00 |
| International Trading Representative, LLC | Trademarks, Copyrights and Domain Name Identified in APA | $100,000.00 |
| Bikram, Inc. | Domain Name: bikraminc.com | $100,000.00 |
| Bikram's Yoga College of India, LP | Domain Name: purebikramyoga.net | $50,000.00 |
| Bikram's Yoga College of India, LP | Copyright: Bikram Yoga dialogue (originally copyrighted in 1979 NUMBER EOR 599 and supplemented in 2002 EOR 631-33 and EOR 212.1) | $50,000.00 |
| Bikram's Yoga College of India, LP | Adversary Actions Identified in the APA | $300,000.00 |

**EXHIBIT 7.2**

**FORM OF INTELLECTUAL PROPERTY BILL OF SALE AND
ASSIGNMENT AGREEMENT**

THIS INTELLECTUAL PROPERTY BILL OF SALE AND ASSIGNMENT AGREEMENT (this "**Bill of Sale and Assignment**"), dated as of [_____], 2022 (the "**Effective Date**"), is entered into between Dr. Kali P. Chaudhuri, an individual, or his designee ("**Assignee**") and Robbin L. Itkin, Chapter 7 Trustee, solely in her capacity as Chapter 7 trustee ("**Assignor**" or "**Trustee**") for the jointly administered bankruptcy estates ("**Estates**") of Bikram's Yoga College of India, LP, Bikram, Inc. International Trading Representative, LLC and Bikram Choudhury Yoga, Inc.. Capitalized terms used but not otherwise defined herein shall have the respective meanings set forth in that certain Asset Purchase Agreement dated as of [_____], 2022 by and between Assignor and Assignee ("**APA**"). Hereinafter, Assignor and Assignee, may be referred to individually as a "**Party**", and  collectively as the "**Parties**".

**RECITALS**

**WHEREAS,** pursuant to the APA Assignor has agreed to sell, assign, convey, transfer and deliver to Assignee, and Assignee has agreed to purchase and acquire from Assignor, certain rights, title, claims, and interests in and to the intellectual property rights ("**IP**") owned by the Estates (as defined in the APA) and as listed on **Schedule A** hereto.

**WHEREAS,** pursuant to the APA, Assignor has agreed to execute this Bill of Sale and Assignment in order to effectively assign, transfer, and convey to Assignee such assets.

**NOW THEREFORE,** in consideration of the foregoing and the representations, warranties and agreements herein set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee, intending to be legally bound, hereby agree as follows:

1.    Assignment of Intellectual Property Rights. Upon the terms set forth in the APA, Assignor hereby sells, conveys, assigns, transfers, delivers and sets over to Assignee and its successors and assigns all of the Estates' right, title, claim, and interest in and to any and all of the IP, and including all goodwill associated therewith, to be held and enjoyed by Assignee for its own use and benefit and for the use and benefit of its subsidiaries, affiliates, successors, assigns, licensees and legal representatives, including all rights to sue for any past infringement or unauthorized use of any of the foregoing and to recover all damages therefrom for its own use and behalf and for the use and behalf of its successors and assigns or other legal representatives as such rights would have been held and enjoyed by Assignor had this Bill of Sale and Assignment not been made. In order to enable the use by Assignee of the website names and addresses set forth on **Schedule A** hereto ("**Domain Names**"), Assignor agrees to provide Assignee, on the Effective Date, with any account information with which the Domain Names are registered,  including any user names and passwords relating thereto.

2.    Further Assurances. Assignor and Assignee agree to execute and deliver such other assignment agreements and other instruments of conveyance and assignment and will do such other acts and things, at the requesting Party's expense, in each case as that Party may reasonably request, as shall be reasonably necessary to vest in Assignee such title to such

6

IP, and to fulfill and discharge each Party's obligations of conveyance and discharge hereunder and under the APA.

3.    <u>Governing Law</u>. This Bill of Sale and Assignment shall be governed by and construed and enforced in accordance with the laws of the State of California without giving effect to conflict of law provisions thereof.

4.    <u>Purchase Agreement</u>. This Bill of Sale and Assignment is executed and delivered pursuant to Section 7.2 of the APA, and is subject to the terms of the APA, and nothing contained herein is intended to alter, modify, expand or diminish the terms set forth in the APA.

5.    <u>Counterparts</u>. This Bill of Sale and Assignment may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Copies (including delivery by facsimile, electronic mail (PDF) or other electronic transmission or original) of signatures to this Bill of Sale and Assignment shall be deemed to be originals and shall be binding to the same extent as original signatures.

**IN WITNESS WHEREOF,** the Parties hereto have executed this Bill of Sale and Assignment as of the date first written above.

**ASSIGNOR:**

Dated: _____, 2022       _____

                                        Robbin L. Itkin, solely in her capacity as Chapter 7 Trustee for the bankruptcy estates of Bikram's Yoga College of India, LP,  Bikram Choudhury Yoga, Inc., Bikram, Inc., Yuz, Inc. and International Trading Representative, LLC

**ASSIGNEE:**

Dated: _____, 2022       _____

                                        Dr. Kali P. Chaudhuri

# **EXHIBIT C**

## **REDLINE VERSION OF ASSET PURCHASE AGREEMENT**

## **ASSET PURCHASE AGREEMENT**

THIS ASSET PURCHASE AGREEMENT (this "**APA**") is entered into as of February ~~___~~ 11, 2022 (the "**Execution Date**"), by and between Bikram's Yoga College of India, LP, Bikram, Inc. International Trading Representative, LLC and Bikram Choudhury Yoga, Inc. (collectively, the "Selling Debtors"),[‡] by and through Robbin L. Itkin, Chapter 7 Trustee ("**Seller**"), solely in her role as chapter 7 trustee for the jointly administered bankruptcy estates ("**Estates**") of the Selling Debtors and debtor Yuz, Inc., and ~~[INSERT NAME]~~Dr. Kali P. Chaudhuri, an individual, or his designee ("**Buyer**").

### **RECITALS**

A.     The following entities (collectively, the "**Debtors**") commenced their respective voluntary bankruptcy cases (the "**Bankruptcy Cases**") in the United States Bankruptcy Court for the Central District of California (the "**Court**") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. 101 *et seq.* (the "**Bankruptcy Code**") on November 9, 2017 ("**Petition Date**") under the following case number designations: Bikram's Yoga College of India, LP (17-bk-12045 DS); Bikram, Inc. (17- bk-12047 DS); Yuz, Inc. (17-bk-12048 DS); International Trading Representative, LLC (17-bk-12049 DS); and Bikram Choudhury Yoga, Inc. (17-bk-12046 DS). The Bankruptcy Cases are administered jointly pursuant to the Court's order of November 17, 2017 under the lead case 9:17-bk-12045 DS. [Dkt. No. 11]

B.     Pursuant to the order entered on March 23, 2018, the Court ordered the appointment of a chapter 11 trustee and on April 4, 2018, the United States Trustee appointed Seller to serve as the chapter 11 trustee for the Estates. [Dkt. Nos. 107 & 108] On September 28, 2020, the Court entered an order converting the chapter 11 case to one under chapter 7. [Dkt. No. 436] The United States Trustee appointed the Seller as the chapter 7 trustee on October 1, 2020. [Dkt. No. 441]

C.     Pursuant to the Bid Procedures Order (defined below), the Buyer submitted a bid by the bid deadline of February 8, 2022.  The Buyer's bid was considered a qualified bid and at the auction held on February 10, 2022, the Buyer was selected as the successful bidder on the terms provided for in this APA.

~~C~~D.     Seller has agreed to sell and Buyer has agreed to purchase the Assets (defined below) in accordance with the terms and conditions of this APA, and subject to the Bid Procedures Order (as defined below), as well as pursuant to an order of the Court under § 363 of the Bankruptcy Code approving the APA and the transactions contemplated herein (the "**Sale Order**").

NOW, THEREFORE, in consideration of Purchase Price (defined below) and the mutual covenants and agreements of each party to the other hereinafter set forth, the adequacy and

---

[‡] *[Note to Bidders: Selling Debtors should be limited to only those Debtors that own Assets, so if Bidder is taking less than all Assets, the definition of Selling Debtors needs to be adjusted accordingly].*

sufficiency of which are hereby acknowledged, the parties do hereby mutually covenant and agree as follows:

## ARTICLE I

### DEFINED TERMS

The following terms shall have the meanings ascribed to them below when used in this APA:

1.1   <u>Bid Procedures Order</u>:  The order entered by the Court approving, *inter alia*, the bidding procedures and auction process for the Assets, entered in Debtors' lead bankruptcy case as Docket No. ___.570.

1.2   <u>Closing</u>: The consummation of the transaction contemplated hereby.

1.3   <u>Deposit</u>: An amount equal to ten percent (10%) of the Purchase Price payable in readily available funds in United States currency.

## ARTICLE II

### PURCHASE AND SALE; PURCHASE PRICE; DEPOSIT

2.1   <u>Assets</u>.  Subject to the terms and conditions herein contained, Seller agrees to sell, transfer, assign and deliver to Buyer, and Buyer agrees to purchase and accept from Seller on the Closing Date (as hereinafter defined) free and clear of all claims, liens, interests and encumbrances, all of Seller's and any and all of applicable Selling Debtors' right, title and interest in and to the following assets (collectively, the "**Assets**"):[2]

(a)   the trademarks, domain names and copyrights identified and set forth in **Exhibit 2.1(a)** (collectively, the "**IP**"), including, to the extent applicable, any related service marks, tradenames, brand names, logos, trade dress and other similar designations of source or origin, registrations, applications, and/or common law rights for the IP, together with passwords and all of the goodwill of the applicable Selling Debtors' businesses symbolized by or associated with the IP,  any contracts related to such IP, and any and all income, royalties, damages and payments now or hereafter due and/or payable

---

[2] *[Note to Bidders: As drafted, the proposed purchaser is buying all of the Selling Debtors' remaining Assets.  If a bidder proposes to take less than all Assets, Trustee reserves all rights in evaluating such bid, including whether such bid is the highest and best offer for such Assets and/or whether such bid is a Qualified Bid, and may reject any bid(s), in the Trustee's discretion, to the extent that multiple buyers seek to buy different Assets but portions of some of the same Assets, and such competing bids cannot be reconciled.  A buyer modifying this APA to purchase less than all of the Assets must amend the APA to clearly identify what Assets the buyer is purchasing, and what portion, if any, of the Assets are excluded from the sale transaction.]*

with respect thereto including without limitation, damages and payments for past, present or future infringements;

(b)    each of the adversary actions pending in the Court identified on **Exhibit 2.1(b)(i)** (collectively, the "**Adversary Actions**"); provided, however, that the Assets shall not include any rights, claims or other interests in the adversary actions identified on **Exhibit 2.1(b)(ii)** (the "**Excluded Adversary Actions**"), which Exhibit 2.1(b)(ii) may be amended and modified by Seller, in her sole discretion, at or prior to Closing to add the Adversary Proceeding No. 9:10-ap-01070-DS filed against Monica Shigenaga and other affiliated defendants; and

(c)    all of the Debtors' books and records, documents and other files being held in storage related to the Assets (the "Documents"), for which Buyer shall be solely responsible for any and all storage costs after Closing and for the removal or disposal of such Documents, at Buyer's sole cost and expense, and ~~Trustee~~ Seller shall have no further liability with respect thereto on and after Closing. Notwithstanding the foregoing, if, after the Closing, Buyer discovers any books, records, documents and other files being held in storage that do not relate to the Assets (the "Other Documents"), Buyer shall immediately notify the Seller and arrange for the prompt return of such Other Documents, or at the Trustee's discretion, the prompt destruction of the Other Documents, all at the Buyer's sole cost and expense.  In the event Seller inadvertently turns over any Documents in storage that contain personal or confidential information of any employee or other person affiliated with the Bikram Yoga facilities and program to Buyer, Buyer agrees not to utilize or disclose such information to any third-parties and to destroy such information upon its discovery.[3]

2.2    Purchase Price.  The purchase price for the Assets shall be payable in cash or other readily available funds by Buyer to Seller at Closing in the aggregate amount of ~~Seven Hundred Thousand Dollars ($            )~~. ($700,000.00) (the "Purchase Price").  The Purchase Price shall be paid by Buyer to Seller at the Closing by wire transfer of immediately available funds to the account or accounts designated in writing by Seller. Buyer's allocation of the Purchase Price is set forth on **Exhibit 2.2**.

2.3    Deposit.  On or before the Execution Date, Buyer shall deposit with the ~~Trustee~~ Seller the Deposit by wire transfer of immediately available funds to the account or accounts designated in writing by Seller.  Upon Closing, the Deposit shall be applied against the Purchase Price, or, if the transaction contemplated hereby is not consummated, delivered to Seller or Buyer as provided herein.

2.4    Free and Clear.  Except with respect to obligations and liabilities relating to and arising on and after the Closing, Buyer is not assuming any liability, debt or obligations of Seller,

---

[3] ~~*[Note to Bidders: To the extent that the bid is not for all Assets, this provision will need to be modified so that bidder cooperates with other bidders to remove documents relevant to only the assets they purchase (or for copying any documents that might overlap), and that the costs of storage, removal and disposal shall be borne by such bidders.]*~~

Selling Debtors, or their bankruptcy Estates attributable to the Assets prior to Closing, and Buyer shall have no obligation or responsibility therefor. All of the Assets being sold hereunder shall be sold and assigned by Seller to Buyer free and clear of all liens and interests, in accordance with 11 U.S.C. § 363(f).

ARTICLE III

COURT APPROVAL

3.1    Court Approval Required. Buyer acknowledges that the sale of the Assets may be made, at the Seller's discretion and exercising her business judgment, as a private sale or subject to overbid at auction in accordance with the Bid Procedures Order and agrees to be bound by the terms and conditions of the Bid Procedures Order. Buyer further acknowledges and agrees to that this APA is subject to the approval of the Court, the hearing on which shall be in accordance with the Bid Procedures Order. In the event that Seller accepts this APA, the Parties will in good faith exercise all reasonable efforts required to obtain the entry of the Sale Order, including executing and delivering any motions, declarations or other items of support reasonably required in connection therewith.

3.2    Effect of Non-Approval. In the event that the Trustee Seller does not accept this APA and/or the Court does not approve this APA, this APA shall be deemed null and void and of no further force and effect, and the Trustee Seller shall return the Deposit to Buyer within ten (10) business days following Trustee's Seller's rejection of, or the Court's denial of a motion to approve, the APA.

3.3    Backup Bidder. In the event that Buyer is designated as the "Backup Bidder" in accordance with and as defined in the Bid Procedures Order, Buyer agrees that it will keep the Backup Bid (as defined in the Bid Procedures Order) open and irrevocable until the earlier of 5:00 p.m. (prevailing Pacific Time) on the date that is thirty (30) days after the date of entry of the Sale Order or the closing of a sale transaction of the Assets with another buyer.

3.4    Bid Procedures Order. Buyer agrees to comply with and be bound by the terms of the Bid Procedures Order.

ARTICLE IV

WAIVER OF CONTINGENCIES, CLOSING; CONDITIONS PRECEDENT

4.1    Waiver of Contingencies. Buyer's due diligence has been completed prior to Buyer's execution of this APA, and Buyer hereby waives any and all contingencies to consummation of the transactions contemplated herein, including, without limitation, all due diligence and financing contingencies. Buyer expressly disclaims, and this transaction shall not be conditioned on, any right of Buyer to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, unless expressly agreed to by Seller in writing in accordance with the Bid Procedures Order.

4.2    Closing.  Provided that this APA has not been terminated, the Closing shall occur on or before two (2) business days following the date on which all the closing conditions set forth in Sections 4.3 and 4.4 of this APA have been satisfied, but in any event, by no later than March 11, 2022 or a later date agreed upon in writing by the Parties.  The date on which this Closing occurs shall be the "**Closing Date**."  The Closing shall occur at the offices of Sklar Kirsh, LLP, 1880 Century Park East, Ste. 300, Los Angeles, California 90067, or such other place or other method, including electronically, as may be determined by Seller, with notice to Buyer at least one (1) business day prior to Closing.

4.3    Closing Conditions of Buyer.    The obligation of Buyer to consummate the transactions contemplated hereunder is subject to the satisfaction or written waiver of each of the following conditions precedent (except that the condition in Section 4.3(c)(b) cannot be waived):

(a)    Seller shall not be in default under this APA in any material respect.

(b)    The Court shall have entered the Sale Order, which shall be final and non-appealable.

(c)    Seller shall have delivered the Seller's Deliverables to Buyer.

4.4    Closing Conditions of Seller.    The obligation of Seller to consummate the conveyance of the Assets hereunder is subject to the satisfaction or written waiver of each of the following conditions precedent (except that the condition in Section 4.4(c) cannot be waived):

(a)    Buyer's representations and warranties contained herein shall be true and correct in all material respects as of the Closing Date and any qualification as to Buyer's knowledge shall not apply for purposes of this Section.

(b)    Buyer shall not be in default under this APA in any material respect.

(c)    The Court shall have entered the Sale Order, which shall be final and non-appealable.

(d)    Buyer shall have delivered Buyer's Deliverables to Seller.

4.5    Post-Closing Use.    Buyer hereby acknowledges and agrees that upon consummation of the transactions contemplated hereby, Seller, the Selling Debtors and their Estates shall be allowed to continue to use the name or marks included in the Assets transferred pursuant to this APA, or any derivatives thereof, as needed, to fully administer the Estates.

ARTICLE V

TERMINATION

5.1    Termination.  This APA may be terminated at any time prior to Closing by (i) mutual written consent of Buyer and Seller; (ii) Seller or Buyer, in the event of material breach by

the other that has not been cured within five (5) days of receipt of written notice thereof or not waived by the non-breaching party; (iii) by Seller, if the Closing does not occur on or before March 11, 2022 (or a later date agreed upon in writing by the Parties) through no fault of Seller; or (iv) Seller or Buyer if there is any law, regulation or court order that makes consummation of the transactions illegal or otherwise prohibited, including the Court's refusal to enter the Sale Order. In the event of termination, written notice thereof shall forthwith be given to the other party and this APA shall terminate without further action by Buyer or Seller.

5.2    Effect of Termination.  If this APA is terminated pursuant to Section 5.1, this APA shall terminate and be of no further force or effect (with the exception of those provisions that expressly survive termination), the Deposit shall be paid to Buyer (except where termination is a result of a material breach by Buyer pursuant to Section 5.1(ii) or the Closing fails to occur as per Section 5.1(iii)), and each party shall pay the costs and expenses incurred by it in connection with this APA; provided, however, that in the event this APA is terminated as result of a material breach by Buyer pursuant to Section 5.1(ii), pursuant to Section 5.1(iii), or in accordance with Section 5.3, the Deposit shall be paid to Seller.

5.3    Liquidated Damages.  If Buyer fails to complete this purchase because of Buyer's default or breach of this APA, including the failure to close on or before March 11, 2022 or a later date agreed upon in writing by the Parties (through no fault of Seller), Seller shall retain, as liquidated damages, the Deposit actually paid.  **SELLER AND BUYER AGREE THAT IT WOULD BE IMPRACTICAL AND EXTREMELY DIFFICULT TO ESTIMATE THE DAMAGES WHICH SELLER MAY SUFFER UPON A BUYER DEFAULT AND THAT THE DEPOSIT AND ANY INTEREST EARNED THEREON, AS THE CASE MAY BE, REPRESENTS A REASONABLE ESTIMATE OF THE TOTAL NET DETRIMENT THAT SELLER WOULD SUFFER UPON A BUYER DEFAULT. SUCH LIQUIDATED AND AGREED DAMAGES ARE NOT INTENDED AS A FORFEITURE OR A PENALTY WITHIN THE MEANING OF APPLICABLE LAW, BUT ARE INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671, 1676, AND 1677. BY PLACING ITS INITIALS BELOW, EACH PARTY SPECIFICALLY CONFIRMS THE ACCURACY OF THE STATEMENTS MADE ABOVE AND THE FACT THAT EACH PARTY WAS REPRESENTED BY LEGAL COUNSEL WHO EXPLAINED, AT THE TIME THIS APA WAS MADE, THE MEANING, THE EFFECT, AND THE CONSEQUENCES OF THIS LIQUIDATED DAMAGES PROVISION.**

Buyer's Initials: _____  Seller's Initials: _____

ARTICLE VI

REPRESENTATIONS AND WARRANTIES

6.1    As-Is, Where-Is.

(a)    IT IS UNDERSTOOD AND AGREED THAT SELLER (INCLUDING ANY OF SELLER'S PROFESSIONALS) IS NOT MAKING AND HAS NOT AT ANY TIME MADE

6

ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, AT LAW OR IN EQUITY, WITH RESPECT TO THE ASSETS, INCLUDING BUT NOT LIMITED TO ANY WARRANTIES OR REPRESENTATIONS AS TO: (I) MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE; (II) THE EXISTENCE, VALIDITY OR COMPLETENESS OF ANY OF THE IP ASSETS, THE STRENGTH OF THE ESTATES' CLAIMS OR THE RECOVERIES UNDER THE ADVERSARY ACTIONS; OR (III) OPERATING HISTORY OR PROJECTIONS, VALUATION, RECOVERIES, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE ASSETS WITH GOVERNMENTAL OR OTHER APPLICABLE LAWS, THE TRUTH, ACCURACY, OR COMPLETENESS OF ANY DOCUMENT RELATED TO THE ASSETS, OR ANY OTHER INFORMATION PROVIDED BY OR ON BEHALF OF SELLER TO BUYER, OR ANY OTHER MATTER OR THING REGARDING THE ASSETS.  NONE OF DOCUMENTS OR MATERIALS PROVIDED TO BUYER IN CONNECTION WITH THE SALE TRANSACTION CONSTITUTE AN OPINION WITH RESPECT TO THE NATURE, EXTENT, OR VALIDITY OF SUCH IP ASSETS OR CLAIMS.

(b)     BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER SHALL SELL AND CONVEY TO BUYER AND BUYER SHALL ACCEPT THE ASSETS "**AS IS, WHERE IS, WITH ALL FAULTS**." BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND NEITHER SELLER NOR THE DEBTORS ARE LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTEES, STATEMENTS, REPRESENTATION OR INFORMATION PERTAINING TO THE ASSETS OR RELATING THERETO MADE OR FURNISHED BY SELLER OR ITS REPRESENTATIVES, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, EXCEPT AS EXPRESSLY STATED HEREIN.  BUYER ALSO ACKNOWLEDGES THAT THE PURCHASE PRICE REFLECTS AND TAKES INTO ACCOUNT THAT THE ASSETS ARE BEING SOLD "AS IS, WHERE IS, WITH ALL FAULTS."

(c)     BUYER ACKNOWLEDGES TO SELLER THAT BUYER HAD AN OPPORTUNITY PRIOR TO EXECUTING THIS APA TO CONDUCT SUCH DUE DILIGENCE, INSPECTIONS AND INVESTIGATIONS OF THE ASSETS AS BUYER DEEMS NECESSARY OR DESIRABLE TO SATISFY ITSELF AS TO THE ASSETS AND ITS ACQUISITION THEREOF, AND THAT BUYER DID NOT RELY ON ANY OF SELLER'S OR ANY OF HER PROFESSIONALS' WRITTEN OR ORAL STATEMENTS, REPRESENTATIONS, PROMISES, WARRANTIES, OR GUARANTIES WHATSOEVER, WHETHER EXPRESS OR IMPLIED, BY OPERATION OF LAW OR OTHERWISE, REGARDING THE ASSETS, THE DEBTORS' BUSINESSES OR THE COMPLETENESS OF ANY INFORMATION PROVIDED IN CONNECTION THEREWITH.  BUYER HEREBY ASSUMES THE RISK THAT ADVERSE MATTERS MAY NOT HAVE BEEN REVEALED BY BUYER'S REVIEW AND INSPECTIONS AND INVESTIGATIONS, AND ~~TRUSTEE~~ SELLER AND HER PROFESSIONALS SHALL HAVE NO ~~LIBAILITY~~LIABILITY WHATSOEVER TO BUYER, ITS RELATED ENTITIES OR ANY OTHER PARTY FOR CLAIMS ARISING FROM, OR RELATED TO, THE DUE DILIGENCE DOCUMENTS AND MATERIALS PROVIDED.

7

6.2    <u>Buyer's Representations</u>.    Buyer hereby represents that Buyer has the power, authority, and ability to carry out the obligations assumed and promised hereunder. Without limiting the foregoing, Buyer specifically represents that Buyer has sufficient liquid funds to consummate the purchase of the Assets and to perform Buyer's obligations under this APA. ~~Buyer further agrees and represents that it shall use commercially reasonable best efforts to cause the Court to enter the Sale Order.~~

ARTICLE VII

<u>CLOSING DOCUMENTS; CLOSING STATEMENT</u>

7.1    <u>Buyer's Deliverables at Closing</u>.    On or before the Closing Date, Buyer shall deliver: (a) the balance of the Purchase Price to Seller, ~~(b) amended and updated Exhibits 2.1(a) and 2.1(b)(i) that include allocations of the Purchase Price among the Assets purchased,~~ and (~~e~~b) all other documents reasonably necessary to consummate the transactions contemplated by this APA (collectively, "**Buyer's Deliverables**").

7.2    <u>Seller's Deliverables at Closing</u>.    On or before the Closing Date, Seller shall deliver to Buyer (collectively, the "**Seller's Deliverables**"): (a) one or more assignment agreements, in form and substance reasonably agreed to by the parties and duly executed by Seller, transferring to Buyer all of Seller's right, title, and interest in and to the Assets, including an Intellectual Property Bill of Sale and Assignment Agreement in substantially similar form as **Exhibit 7.2**; (b) a copy of the Sale Order entered in the Bankruptcy Cases; and (c) all other documents reasonably necessary to consummate the transactions contemplated by this APA.

Formatted: Font: Bold

7.3    <u>Closing Costs and Fees</u>.    Buyer and Seller shall each be responsible for their own legal and professional fees and costs of attorneys and other consultants and agents retained by them, which costs and fees shall be paid by Seller and Buyer, respectively. Notwithstanding the foregoing, Buyer shall pay, to the extent applicable: (i) all applicable document recording charges, if any; (ii) all transfer taxes and other fees, if any, arising from or resulting from the transactions contemplated hereby; and (iii) all costs and expenses related to the Buyer's investigation, transfer and assignment of the Assets.

ARTICLE VIII

<u>MISCELLANEOUS</u>

8.1    <u>Entire Agreement</u>.    This APA and the schedules and exhibits attached hereto embody the entire agreement between the parties in connection with this transaction and there are no oral or parole agreements existing between the parties relating to this transaction which are not expressly set forth herein and covered hereby. This APA may not be modified except in writing signed by Seller and Buyer.

8.2    <u>No Waiver</u>.    Failure of either party to complain of any act or omission on the part of the other party, no matter how long the same may continue, shall not be deemed to be a waiver by such party to any of its rights hereunder. No waiver by any party at any time, expressed or implied, of any breach of any provision of this APA shall be deemed a waiver or a breach of any

8

other provision of this APA or a consent to any subsequent breach of the same or any other provision.  If any action by any party shall require the consent or approval of another party, such consent or approval of such action on any one occasion shall not be deemed a consent to or approval of said action on any subsequent occasion or a consent to or approval of any action on the same or any subsequent occasion.

8.3     <u>Captions</u>.  The captions, section numbers and article numbers appearing in this APA are inserted only as a matter of convenience, and do not define, limit, construe or describe the scope or intent of such sections or articles of this APA nor in any way affect this APA.

8.4     <u>No Third-Party Beneficiaries</u>.  No party other than Seller and Buyer and their successors and assigns, shall have any rights to enforce or rely upon this APA, which is binding upon and made solely for the benefit of Seller and Buyer and their successors and assigns, and not for the benefit of any other party.

8.5     <u>Notices</u>.  All notices provided for or permitted to be given pursuant to this APA must be in writing.  All notices to be sent hereunder shall be deemed to have been properly given or served: if hand delivered by courier, in hand when received; if mailed, on the third business day following the date upon which the same is deposited in the United States mail, addressed to the recipient of the notice, certified with return receipt requested; if by telecopy, on the date sent (or the next business day after the date of transmission if the transmission day is not a business day) provided that the facsimile was properly addressed and disclosed the number of pages transmitted on its front sheet and that the transmission report produced indicates that each of the pages of the telecopy was received at the correct telecopy number; if by electronic mail, on the date sent (or the next business day after the date of transmission if the transmission day is not a business day) provided that the electronic mail was properly addressed and that a duplicate notice was forwarded via nationally recognized overnight courier guarantying next day delivery; and, if by nationally recognized overnight courier guarantying overnight delivery, on the business day following the day such notice was deposited with such a courier, so long as the day of deposit was on a service day of such courier and prior to the last pick up for such day.

|  |  |
|---|---|
| If to Seller: | SKLAR KIRSH, LLP |
| | 1880 Century Park East, Ste. 300 |
| | Los Angeles, California 90067 |
| | Facsimile:  (310) 929-4469 |
| | Attn:  Lovee Sarenas, Esq. |
| | Email: lsarenas@sklarkirsh.com |
| | |
| With a copy to: | SKLAR KIRSH, LLP |
| | 1880 Century Park East, Ste. 300 |
| | Los Angeles, California 90067 |
| | Facsimile:  (310) 929-4469 |
| | Attn:  Robbin L. Itkin, as Trustee |
| | Email: ritkin@sklarkirsh.com |

9

If to Buyer:                                              SHULMAN
BASTIAN FRIEDMAN & BUI LLP

Spectrum Center Drive, Suite 600                          100

California 92618                                          Irvine,

                                  Facsimile: (949) 340-3000
                                  Attn: _____ Leonard M.
Shulman, Esq.

                                  Email:
_____ lshulman@shulmanbastian.com

     8.6   <u>Governing Law and Jurisdiction</u>.  This APA and the rights and obligations of the parties hereunder shall be construed, interpreted and enforced in accordance with the laws of the State of California.  The parties consent to the exclusive jurisdiction of, and venue in, the Court, for the purpose of resolving any claim, controversy or disagreement which may arise among the parties with regard to this APA and waive any objection that they may now or hereafter have to the laying of venue in such forum and agree not to plead or claim that any action in such forum would be inconvenient; provided, however, that: (a) if the Court declines to exercise such jurisdiction, then the courts of the State of California will have such jurisdiction; and (b) nothing in this Section will constitute a waiver by any party of the right to appeal any decision or action of the Court or any such state court.  THE PARTIES HEREBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR CLAIM BROUGHT IN CONNECTION WITH THIS APA.

     8.7   <u>Counterparts and Electronic Delivery</u>.  This APA may be executed in any number of counterparts, each of which, when taken together, shall be deemed to be one and the same instrument.  Executed copies of this APA may be delivered between the parties via telecopy or electronic mail.

     8.8   <u>Brokers</u>.  Buyer represents and warrants to Seller that it dealt with no broker in connection with, nor has any broker had any part in bringing about, this transaction.  Buyer shall indemnify, defend, and hold harmless the Seller from and against any claim of any broker, or any other person for any brokerage commissions, finder's fees, or other compensation in connection with this transaction if such claim is based in whole or in part by, through or on account of, any acts of Buyer or its agents, employees, or representatives and from all losses, liabilities, costs, and expenses in connection with such claim, including without limitation, reasonable attorneys' fees, court costs, and interest. The provisions of this Section shall survive the Closing, or the termination of this APA prior to the Closing.

     8.9   <u>Severability</u>.  If any term or provision of this APA is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect, invalidate, or render unenforceable any other term or provision of this APA. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the parties hereto shall negotiate in good faith to modify this APA so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions

contemplated by this APA be consummated as originally contemplated to the greatest extent possible.

8.10    <u>Further Assurances</u>.  Each of the parties hereto shall execute and deliver such additional documents, instruments, conveyances, and assurances and take such further actions as may be reasonably required to carry out the provisions of this APA and give effect to the transactions contemplated hereby, provided such documents are customarily delivered such transactions in the State of California and do not impose any material cost or obligation upon any party hereunder except as set forth in this APA.

8.11    <u>Time Is Of The Essence</u>.  Seller and Buyer acknowledge and agree that TIME IS OF THE ESSENCE with respect to each and every term, condition, obligation, and provision hereof and that failure to timely perform any of the terms, conditions, obligations, or provisions hereof by either party shall constitute a material breach of the APA by the party so failing to perform.

8.12    <u>Business Days</u>.  Wherever in this APA a time period shall end on a day which is a Saturday, Sunday or legal holiday, said time period shall automatically extend to the next date which is not a Saturday, Sunday or legal holiday.

8.13    <u>Advice of Counsel</u>.  Buyer and Seller represent and warrant that they each acted pursuant to the advice of independent legal counsel of their own choosing in connection with the negotiation, preparation and execution of this APA, or that they were advised to obtain the advice of such legal counsel, had ample opportunity to obtain the advice of such legal counsel, and willfully declined to obtain the advice of such legal counsel.

**[SIGNATURES ON FOLLOWING PAGES]**

Formatted: Justified

11

IN WITNESS WHEREOF, the parties hereto have executed this APA.

**SELLER:**

_____
ROBBIN L. ITKIN
Solely in her capacity as Chapter 7 Trustee for the Debtors'
Estates

**BUYER:**

_____
[INSERT NAME]DR. KALI P. CHAUDHURI

12

Exhibit List

| | |
|---|---|
| 2.1(a) | Schedule of IP |
| 2.1(b)(i) | Schedule of Adversary Actions |
| 2.1(b)(ii) | Schedule of Excluded Adversary Actions |
| 2.2 | Buyer's Allocation of Purchase Price |
| 7.2 | Form of Intellectual Property Bill of Sale and Assignment Agreement |

**EXHIBIT 2.1(a)**

**IP**

**Trademarks:**

| Debtor | Trademark | Application No. | Registration No. | Registration Date |
|---|---|---|---|---|
| Bikram Choudhury Yoga, Inc. | BIKRAM YOGA HAWAII | 79-401481 | HI 4147206 | 27-Jul-2015 |
| Bikram Choudhury Yoga, Inc. | BIKRAM YOGA-EAST OAHU | 79-401482 | HI 4147207 | 27-Jul-2015 |
| Bikram Choudhury Yoga, Inc. | BIKRAM YOGA-HAWAII KAI | 79-401480 | HI 4147205 | 27-Jul-2015 |
| International Trading Representative, LLC | BIKRAM | 85/406940 | 4236199 | 06-Nov-2012 |
| International Trading Representative, LLC | BIKRAM YOGA | 86/212110 | 4613771 | 30-Sep-2014 |
| International Trading Representative, LLC | BIKRAM'S BEGINNING YOGA CLASS | 76/378922 | 2829135 | 06-Apr-2004 |
| International Trading Representative, LLC | Design of Man | 76/975275 | 2775407 | 21-Oct-2003 |

**Domain Names:**

| Domain Name | Creation Date | Last Known Registrar | Registrant(s) |
|---|---|---|---|
| bikraminc.com | 4/15/2021 | Epik, Inc. | Bikram, Inc. |
| bikramyoga.com | 5/21/1996 Updated on 12/19/2016 | ZNet Technologies Pvt Ltd. | Bikram Yoga[4] |
| purebikramyoga.net | 4/15/2021 | Epik, Inc. | Bikram's Yoga College of India, LP |

---

[4] The non-debtor entity "Bikram Yoga" is the last known registrant of the domain name "Bikram Yoga" that is a trademark owned by the Debtor ITR. The Trustee Seller is selling any right to, claim, title or interest in the domain name that the ITR Estate may have to the extent such right, claim, title and interest exist, including, without limitation, whatever rights ITR may have in a UDRP action to gain control over the domain.

Copyrights:

| Debtor | Copyright Description/ Registration No. | Registration Date | |
|---|---|---|---|
| Bikram's Yoga College of India, LP | Bikram Yoga dialogue which was originally copyrighted in 1979 NUMBER EOR 599 and supplemented in 2002 EOR 631-33 and EOR 212.1[5] | | Formatted Table |
| International Trading Representative, LLC | "Bikram's Beginning Yoga Class" (Registration No. TX179160)<br><br>Supplemented by Reg. No. TX5624003 | 1979-01-17 | |
| International Trading Representative, LLC | "Bikram's Beginning Yoga Class" (Registration No. TX5259325) | 2000-09-01 | |
| International Trading Representative, LLC | "Bikram's Yoga College of India Beginning Yoga Dialog" (Registration No. TXu1022657) | 2002-03-04 | |
| International Trading Representative, LLC | "Bikram's Yoga College of India: Yoga Teacher Training Course: Curriculum Outline" (Registration No. TXu934417) | 2002-03-25 | |
| International Trading Representative, LLC | "Bikram's Beginning Yoga Class" (Registration No. TX5499662) | 2002-04-18 | |
| International Trading Representative, LLC | "Bikram's Advanced Yoga Class" (Registration No. TXu1323218) | 2006-10-25 | |
| International Trading Representative, LLC | "Bikram's Beginning Yoga Class" (Registration No. TX5624003)<br><br>(supplements Reg. No. TX179160) | 2002-10-24 | |
| International Trading Representative, LLC | "Bikram Yoga" (Registration No. TX6555860) | 2007-04-07 | |

---

[5] The copyright is listed in Debtor BYCOI's Schedule B of its bankruptcy petition. ~~The Trustee~~Seller cannot independently verify the existence of the copyright with the U.S. Copyright Office. ~~The Trustee~~Seller is selling any right to, title or interest in such copyright that the BYCOI Estate may have to the extent such right, title and interest exist.

**EXHIBIT 2.1(b)(i)**

**Adversary Actions**

**Robbin L. Itkin, Chapter 11 Trustee (Plaintiff)**

Lead Case: In re: Bikram Yoga College of India LP, *et al.*
(9:17-bk-12045-DS)

JUDGE:  Hon. Deborah J. Saltzman

| AP No. | Defendants |
|---|---|
| **9:19-ap-01066-DS** | Organizacion Ideal dba PRINCESS MUNDO IMPERIAL HOTEL |
| **9:19-ap-01067-DS** | 1) Smana Hotel Al Raffa |
| | 2) Rajesh Baheti (Hotel Director of Finance) |
| **9:19-ap-01068-DS** | Zen Co., Ltd. |
| **9:19-ap-01069-DS** | 1) ELO, an individual |
| | 2) 3E Eight LLC |
| | 3) 3E One LLC |
| | 4) Miami SuperCar Rooms |
| | 5) Elo Trustees Ltd |
| **9:19-ap-01070-DS** | 1) Monica Shigenaga |
| | 2) CocoJor Hawaii, LLC |
| | 3) Jadoo, LLC |
| **9:19-ap-01071-DS** | 1) Sumanta Bhattachriya, Director and CEO of BHY |
| | 2) Bikram HotYoga Co. Ltd. |
| **9:19-ap-01075-DS** | Bikram Choudhury |

Formatted Table

3

**EXHIBIT 2.1(b)(ii)**

**Excluded Adversary Actions**

**Robbin L. Itkin, Chapter 11 Trustee
(Plaintiff)**

Lead Case
In re: Bikram Yoga College of India LP, et al.
(9:17-bk-12045-DS)

JUDGE:  Hon. Deborah J. Saltzman

| | |
|---|---|
| **9:19-ap-01072-DS** | Lajwanti Choudhury |
| **9:19-ap-01073-DS** | Anurag Choudhury |
| **9:19-ap-01074-DS** | 1) Rajashree Choudhury<br><br>2) The Rajashree Choudhury Family Trust Dated March 1, 2016 |

4

**EXHIBIT 2.2**

**BUYER'S ALLOCATION OF PURCHASE PRICE**

| Debtor | Asset Sold | Buyer's Allocated Purchase Price |
|---|---|---|
| Bikram Choudhury Yoga, Inc. | Trademarks Identified in APA | $100,000.00 |
| International Trading Representative, LLC | Trademarks, Copyrights and Domain Name Identified in APA | $100,000.00 |
| Bikram, Inc. | Domain Name: bikraminc.com | $100,000.00 |
| Bikram's Yoga College of India, LP | Domain Name: purebikramyoga.net | $50,000.00 |
| Bikram's Yoga College of India, LP | Copyright: Bikram Yoga dialogue (originally copyrighted in 1979 NUMBER EOR 599 and supplemented in 2002 EOR 631-33 and EOR 212.1) | $50,000.00 |
| Bikram's Yoga College of India, LP | Adversary Actions Identified in the APA | $300,000.00 |

5

**EXHIBIT 7.2**

**FORM OF INTELLECTUAL PROPERTY BILL OF SALE AND
ASSIGNMENT AGREEMENT**

THIS INTELLECTUAL PROPERTY BILL OF SALE AND ASSIGNMENT AGREEMENT (this "**Bill of Sale and Assignment**"), dated as of [_____], 2022 (the "**Effective Date**"), is entered into between Dr. Kali P. Chaudhuri, an individual, or his designee ("**Assignee**") and Robbin L. Itkin, Chapter 7 Trustee, solely in her capacity as Chapter 7 trustee ("**Assignor**" or "**Trustee**") for the jointly administered bankruptcy estates ("**Estates**") of Bikram's Yoga College of India, LP, Bikram, Inc. International Trading Representative, LLC and Bikram Choudhury Yoga, Inc.. Capitalized terms used but not otherwise defined herein shall have the respective meanings set forth in that certain Asset Purchase Agreement dated as of [_____], 2022 by and between Assignor and Assignee ("**APA**"). Hereinafter, Assignor and Assignee, may be referred to individually as a "**Party**", and  collectively as the "**Parties**".

**RECITALS**

**WHEREAS,** pursuant to the APA Assignor has agreed to sell, assign, convey, transfer and deliver to Assignee, and Assignee has agreed to purchase and acquire from Assignor, certain rights, title, claims, and interests in and to the intellectual property rights ("**IP**") owned by the Estates (as defined in the APA) and as listed on **Schedule A** hereto.

**WHEREAS,** pursuant to the APA, Assignor has agreed to execute this Bill of Sale and Assignment in order to effectively assign, transfer, and convey to Assignee such assets.

**NOW THEREFORE,** in consideration of the foregoing and the representations, warranties and agreements herein set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee, intending to be legally bound, hereby agree as follows:

1.      Assignment of Intellectual Property Rights. Upon the terms set forth in the APA, Assignor hereby sells, conveys, assigns, transfers, delivers and sets over to Assignee and its successors and assigns all of the Estates' right, title, claim, and interest in and to any and all of the IP, and including all goodwill associated therewith, to be held and enjoyed by Assignee for its own use and benefit and for the use and benefit of its subsidiaries, affiliates, successors, assigns, licensees and legal representatives, including all rights to sue for any past infringement or unauthorized use of any of the foregoing and to recover all damages therefrom for its own use and behalf and for the use and behalf of its successors and assigns or other legal representatives as such rights would have been held and enjoyed by Assignor had this Bill of Sale and Assignment not been made. In order to enable the use by Assignee of the website names and addresses set forth on **Schedule A** hereto ("**Domain Names**"), Assignor agrees to provide Assignee, on the Effective Date, with any account information with which the Domain Names are registered,   including any user names and passwords relating thereto.

2.      Further Assurances. Assignor and Assignee agree to execute and deliver such other assignment agreements and other instruments of conveyance and assignment and will do such other acts and things, at the requesting Party's expense, in each case as that Party may reasonably request, as shall be reasonably necessary to vest in Assignee such title to such

6

IP, and to fulfill and discharge each Party's obligations of conveyance and discharge hereunder and under the APA.

3.      Governing Law. This Bill of Sale and Assignment shall be governed by and construed and enforced in accordance with the laws of the State of California without giving effect to conflict of law provisions thereof.

4.      Purchase Agreement. This Bill of Sale and Assignment is executed and delivered pursuant to Section 7.2 of the APA, and is subject to the terms of the APA, and nothing contained herein is intended to alter, modify, expand or diminish the terms set forth in the APA.

5.      Counterparts. This Bill of Sale and Assignment may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Copies (including delivery by facsimile, electronic mail (PDF) or other electronic transmission or original) of signatures to this Bill of Sale and Assignment shall be deemed to be originals and shall be binding to the same extent as original signatures.

**IN WITNESS WHEREOF,** the Parties hereto have executed this Bill of Sale and Assignment as of the date first written above.

**ASSIGNOR:**

Dated: _____, 2022    _____

_____    Robbin L. Itkin, solely in her capacity as Chapter 7 Trustee for the bankruptcy estates of Bikram's Yoga College of India, LP,  Bikram Choudhury Yoga, Inc., Bikram, Inc., Yuz, Inc. and International Trading Representative, LLC

**ASSIGNEE:**

Dated: _____, 2022    _____

_____    Dr. Kali P. Chaudhuri

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT D**
**SUMMARY OF ESTIMATED SALE COSTS INCURRED AS OF 2/14/2022**

**EXHIBIT D**

**SUMMARY OF ESTIMATED SALE COSTS INCURRED AS OF 2/14/2022**

| | Total Expenses | Expenses Allocated to Adversary Actions Only | Expenses Allocated to IP for All Selling Debtors | Add'l Expenses Allocated to ITR Only | Add'l Expenses Allocated to BYCOI Only |
|---|---|---|---|---|---|
| *Professionals* | | | | | |
| Hilco (10% IP) | $40,000.00 | | $40,000.00 | | |
| Hilco (5% Adversary Actions) | $15,000.00 | $15,000.00 | | | |
| Hilco Expenses ($5k Cap) | $5,000.00 | $2,481.56 | $2,500.00 | | $18.44 |
| SBG&B IP Counsel | $3,500.00 | | | $3,500.00 | |
| SBG&B UDRP Action Costs | $555.00 | | | $555.00 | |
| *Other Sale Costs* | | | | | |
| Williams Data Services (Data Room Document Retrieval) | $1,695.00 | $847.50 | $847.50 | | |
| Domain Name Transfers | $17.00 | | | $17.00 | |
| Ct Reporter/Auction Zoom Operator (Estimated) | $2,000.00 | $1,000.00 | $1,000.00 | | |
| Sklar Kirsh, LLP (Postage Costs for Service of Sale Pleadings) | $3,152.00 | $1,576.00 | $1,576.00 | | |
| Summit Reprographics (Copy Charges for Notice of Sale) | $2,233.00 | $1,116.50 | $1,116.50 | | |
| Petosevic IP Search | $300.00 | | $300.00 | | |
| Pocketknife (Changes to BYCOI Teacher Sites) | $1,050.00 | | | | $1,050.00 |
| Spruson & Ferguson Pty Lmt. (Preserving IP) | $1,378.00 | | $1,378.00 | | |
| **TOTAL EXPENSES:** | **$75,880.00** | **$22,021.56** | **$48,718.00** | **$4,072.00** | **$1,068.44** |
| **TOTAL Adversary Action Expenses (BYCOI)** | | **$22,021.56** | | | |
| **TOTAL IP Expenses (Pro-Rata Per Selling Debtor)** | | | **$12,179.50** | | |
| **Add'l IP Expense Allocations (ITR & BYCOI)** | | | | **$4,072.00** | **$1,068.44** |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

SKLAR KIRSH, LLP, 1880 Century Park East, Suite 300, Los Angeles, California 90067

A true and correct copy of the foregoing document entitled: **TRUSTEE'S MOTION FOR AN ORDER: (I) APPROVING THE SALE OF CERTAIN ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) DETERMINING THAT THE BUYER IS A GOOD FAITH PURCHASER UNDER 11 U.S.C. § 363(m); AND (III) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF ROBBIN L. ITKIN, RICHELLE KALNIT AND DR. KALI P. CHAUDHURI** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **February 14, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*)_____I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **February 14, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 14, 2022 | MAYRA DURAN | /s/ Mayra Duran |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Jacob Beiswenger on behalf of Interested Party Evolution Capital Investments LLC
jbeiswenger@omm.com, jacob-beiswenger-5566@ecf.pacerpro.com;swarren@omm.com

Martin J Brill on behalf of Debtor Bikram Choudhury Yoga Inc., a California corporation
mjb@lnbrb.com

Larry Butler on behalf of Creditor American Express Bank, FSB
notices@becket-lee.com

Russell Clementson on behalf of U.S. Trustee United States Trustee (ND)
russell.clementson@usdoj.gov

Christopher Cramer on behalf of Creditor AMERICAN EXPRESS BANK, FSB
secured@becket-lee.com

Andrew L Ellis on behalf of Creditor Cheryl Baldinger
rgalvan@alelaw.com

Brian D Fittipaldi on behalf of U.S. Trustee United States Trustee (ND)
brian.fittipaldi@usdoj.gov

Maria L Garcia on behalf of Creditor Public Storage
Maria.L.Garcia@lewisbrisbois.com, Nancy.jasso@lewisbrisbois.com

Karen L Grant on behalf of Creditor Jill Lawler
kgrant@silcom.com

Robbin L Itkin (TR)
ritkin@sklarkirsh.com, cbullock@sklarkirsh.com

David S Kupetz on behalf of Interested Party Courtesy NEF
dkupetz@sulmeyerlaw.com,
dperez@sulmeyerlaw.com;dperez@ecf.courtdrive.com;dkupetz@ecf.courtdrive.com

Ian Landsberg on behalf of Attorney Ian S. Landsberg
ilandsberg@sklarkirsh.com,
lskaist@sklarkirsh.com;yalarcon@sklarkirsh.com;mmadden@sklarkirsh.com;ilandsberg@ecf.inf
oruptcy.com;kfrazier@sklarkirsh.com;cbullock@sklarkirsh.com

David W. Meadows on behalf of Attorney David W. Meadows
david@davidwmeadowslaw.com

Krikor J Meshefejian on behalf of Debtor Bikram Choudhury Yoga Inc., a California corporation
kjm@lnbyb.com

Carla V Minnard on behalf of Attorney Carla V Minnard
carlaminnard@minnardlaw.com, shifta@aol.com

David M Riley on behalf of Plaintiff Robbin L Itkin
david.riley@morganlewis.com, davidzriley@gmail.com

Victor A Sahn on behalf of Creditor Petra Starke Smeltzer vsahn@sulmeyerlaw.com,
pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                F 9013-3.1.PROOF.SERVICE

@sulmeyerlaw.com;cblair@ecf.inforuptcy.com

Lovee D Sarenas on behalf of Plaintiff Robbin L Itkin
lsarenas@sklarkirsh.com

Leonard M Shulman on behalf of Interested Party Latham Management & Consulting Services,
Inc.
lshulman@shulmanbastian.com

United States Trustee (ND)
ustpregion16.nd.ecf@usdoj.gov


3. **SERVED BY EMAIL:**

Nick Pujji on behalf of Bikram Yoga College of India LP
nick.pujji@dentons.com

Carol Yur on behalf of Bikram Yoga College of India LP
carol.yur@dentons.com

Crystal Jones Oswald on behalf of American Express
cjones@becket-lee.com

Minakshi Jafa-Bodden
mjbconsulting05@gmail.com

Daniel J. Weintraub on behalf of Minakshi Jafa-Bodden
dan@wsrlaw.net

Carla Minnard on behalf of Minakshi Jafa-Bodden
carlaminnard@minnardlaw.com

Gabe Fried on behalf of Hilco Streambank
gfried@hilcostreambank.com

Monica Shigenaga, on behalf of Jadoo LLC and CocoJor Hawaii, LLC
monicashigenaga@gmail.com

Steven Haver
Steven@teachfromlove.yoga

Petra Starke Smeltzer aka Petra Starke
PetraSmeltzer@gmail.com; petra@sweatnglow.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

3.  **OVERNIGHT MAIL:**

Bikram Choudhury
3172 Toppington Dr.
Beverly Hills, CA 90210


Bikram HotYoga Co. Ltd
~~Unit C 4/F China Insurance Building~~
~~48 Cameron Rd.~~
~~Tsim Sha Tsui, Kowloon~~
~~HONG KONG~~
*(Returned Mail)*


Ms. Petra Starke Smeltzer aka Petra Starke
212 Cosmopolitan Court
Sarasota, Florida 34236

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.